**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SS&C TECHNOLOGIES HOLDINGS, INC. | : | Civil Action No.: 19-cv-7859 |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| AIG SPECIALTY INSURANCE COMPANY, | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

SS&C Technologies Holdings, Inc. ("SS&C"), by and through its undersigned attorneys, as and for its Complaint against AIG Specialty Insurance Company ("AIG"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This action is for breach of contract, declaratory relief, and breach of the implied covenant of good faith and fair dealing, arising out of AIG's unjustified refusal to provide coverage under an insurance policy it sold to SS&C.

2. As a financial services company that is a global provider of software and software-enabled services to thousands of clients, principally within the institutional asset and wealth management, alternative investment management, healthcare, brokerage, retirement, financial advisory, and financial institutions vertical markets, SS&C carries insurance to protect against losses that arise out of the provision of its professional services. The Risk Protector Policy No. 01-274-16-88 (the "Policy"), purchased from AIG is one such policy. The Policy specifically provides coverage for losses resulting from claims against SS&C due to SS&C's negligence or errors or omissions relating to the performance of its professional services.

3.  In March 2016, unknown third parties used stolen credentials to initiate a series of fraudulent wire transfers from a bank account owned by Tillage Commodities Fund, L.P. ("Tillage").  Criminals used "spoofed" e-mail addresses to send forged transfer requests to SS&C, which Tillage had hired to assist with various record-keeping and other administrative functions.  SS&C received the wire transfer requests and—believing them to be from Tillage—processed them according to the terms of its contract with Tillage.  Over the course of three weeks, over $5.9 million was stolen from Tillage's accounts.  Although SS&C ultimately discovered the fraudulent scheme, alerted authorities, foiled an additional transfer attempt, and cooperated with Tillage in an effort to recover the stolen funds, Tillage filed suit against SS&C in New York Supreme Court, styled *Tillage Commodities Fund, L.P. v. SS&C Technologies, Inc.*, No. 654765/2016 (Sup. Ct., N.Y. Cnty.)(the "Tillage Action").  Tillage alleged that SS&C was grossly negligent in handling Tillage's funds and consequently breached its services contract.

4.  SS&C purchased the Policy, and the Policy is designed to protect SS&C against precisely the type of loss it incurred as a result of the fraudulent wire transfer and subsequent lawsuit.  Despite acknowledging that the suit falls within the definition of Loss[1] and paying Defense Costs related to the same, AIG refused to fund any settlement, regardless of how reasonable.

5.  AIG's refusal is predicated on a pretextual reliance on various exclusions in the Policy, all of which are baseless.  The exclusions cited either: (i) do not apply to settlements; (ii) relate to dismissed claims; or (iii) are facially inapplicable under the plain meaning of the exclusion language.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Policy.

2

6. AIG's refusal to pay is not based on any fair reading of the Policy but is instead intended to further its own economic interests at the expense of SS&C, and constitutes a breach of AIG's contractual obligations, including the implied covenant of the duty of good faith and fair dealing.

## THE PARTIES

7. Plaintiff SS&C is a Delaware corporation with its principal place of business in Windsor, Connecticut.

8. Upon information and belief, Defendant AIG is an insurance company organized under the laws of the State of Illinois with its principal place of business in New York, New York. Upon information and belief, AIG is authorized to sell or write insurance in New York and, at all material times, has conducted and continues to conduct substantial insurance business in the State of New York, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

**I.    The Policy**

11. In consideration for significant premiums paid to cover exactly the type of loss at issue in the Tillage Action, AIG sold the Policy to SS&C, insuring SS&C for claims brought against it during the policy period from April 30, 2015 to April 30, 2016.

12. The Policy identifies SS&C and its subsidiaries as the Insured.

13. The Policy provides coverage for a wide variety of activities, including protection for allegations of negligent acts made in connection with SS&C provision of professional services, which was the central claim of the Tillage Action. *See* Policy at Special Professional Liability ("SPL") Coverage Section, § 1. A copy of the Policy is attached as **Exhibit A**.

14. The Policy provides a "Limit of Liability" for its Specialty Professional Liability Insurance of $10,000,000, subject to a $1,250,000 retention. *Id.* at p. 2.

15. The Policy's Special Professional Liability Insuring Agreement provides: "The **Insurer** shall pay on an **Insured's** behalf all **Loss** in excess of the applicable Retention that such **Insured** is legally obligated to pay resulting from a **Claim** alleging a **Wrongful Act**." *Id.* at SPL Coverage Section, § 1[2]

16. **Loss** is defined as "compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages." *Id.* at § 2(e).

17. **Claim** is defined to include a **Suit**, which means "a civil proceeding for monetary, non-monetary, or injunctive relief, which is commenced by service of a complaint or similar pleading." *Id.* at § 2(b).

18. **Wrongful Act** is defined as "any negligent act, error or omission, misstatement or misleading statement in an **Insured's** performance of **Professional Services** for others occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**." *Id.* at § 2(k).

---

[2] All emphasized terms appear in boldface in the Policy.

4

## II. The Tillage Action

19. SS&C is a financial technology company that provides, among other things, business processing management. Since 2012, SS&C acted as fund administrator for Tillage, an investment fund started in that year. Pursuant to a services agreement, SS&C was responsible for holding Tillage's funds and dispersing the same under the direction of Tillage. SS&C possessed no authority or discretion over Tillage's funds, and was only permitted to disperse funds at Tillage's direction.

20. Beginning on March 3, 2016, SS&C was the victim of a fraudulent scheme by a third party, which used "spoof" email domains disguised to look as if they were coming from Tillage, to request wire transfers from Tillage's bank account. Over twenty-one days, six fraudulent requests for transfers were made in this fashion, and as a result, SS&C transferred approximately $5.9 million of funds from Tillage's account to third-party bank accounts in Hong Kong.

21. After the fraudulent scheme was uncovered, SS&C alerted Hong Kong authorities, submitted a report to the Hong Kong Police Force, and cooperated with Tillage and the relevant authorities to recover the stolen funds.

22. Despite these efforts, on September 16, 2016, Tillage filed the Tillage Action. Tillage alleged breach of the Services Agreement, breach of the implied covenant of good faith and fair dealing, and violation of New York General Business Law §§ 349, 350, and 350a, which pertain to deceptive trade practices and false advertising. Specifically, Tillage alleged that, by allowing itself to be deceived, SS&C failed to live up to financial services industry standards and was grossly negligent in performing its fund administration services. The Complaint filed in the Tillage Action is attached as **Exhibit B**.

23. On December 30, 2016, Justice Barry R. Ostrager dismissed Tillage's claims alleging breach of New York General Business Law §§ 349, 350, and 350a, but denied SS&C's motion to dismiss with regard to the breach of contract claims. After over two years of discovery, SS&C moved for summary judgment on the remaining claims. On March 1, 2019, Justice Ostrager denied SS&C's motion for summary judgment. On June 4, 2019, two weeks before trial was set to begin, the Tillage Action settled on confidential terms without any admission of liability or wrongdoing on the party of any party.

### III. AIG's Denial of Coverage

24. On March 28, 2016, four days after the fraudulent scheme was uncovered, SS&C timely notified AIG of the fraudulent scheme and indicated that the same may give rise to a covered Loss under the Policy (the "Claim").

25. After acknowledging receipt &C's claim for coverage for the Tillage Action, by letter dated September 28, 2016, Kris Ann Cappelluti, Claims Analyst at AIG, denied indemnity coverage for the same (the "Denial Letter"). In the Denial Letter, AIG acknowledged that the Tillage Action fell within the Specialty Professional Liability provisions, and agreed to cover SS&C's defense costs related to the Tillage Action. However, AIG denied indemnity coverage for any settlement or judgment relating to the Tillage Action, asserting that the claims alleged by Tillage implicated several Exclusions that barred coverage. Specifically, AIG asserted that Exclusions 3(a); 3(h); 3(j)(5); 3(j)(7); 3(j)(10); 3(p) and INV(a) of Endorsement #5 all preclude indemnity coverage of the Tillage Action.

26. Despite that all of the Exclusions cited by AIG in its Denial Letter are facially inapplicable to the settlement of the Tillage Action, AIG agreed only to pay SS&C's defense

costs, but refused to a provide coverage for any potential settlement, regardless of whether such settlement was within Policy limits or otherwise reasonable.

27. SS&C has set forth in numerous correspondence and calls with AIG why none of the Exclusions are applicable, including:

(a) Exclusion 3(a) excludes losses in connection with claims "alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law[.]" Regardless of the allegations in the Tillage Action, Exclusion 3(a) also requires a final adjudication establishing fraudulent conduct as a basis to deny coverage. As a settlement is not a final factual adjudication, Exclusion 3(a) is indisputably inapplicable to coverage of the settlement of the Tillage Action.

(b) Exclusions 3(h) and 3(p) exclude losses in connection with claims "alleging, arising out of, based upon or attributable to . . . deceptive business practices [and] . . . false advertising and misrepresentation in advertising," respectively. As Tillage's claims alleging violation of New York General Business Law §§ 349, 350, and 350a have been dismissed, no part of the settlement can be attributed to these claims, rendering Exclusions 3(h) and 3(p) indisputably inapplicable.

(c) Exclusion 3(j)(7) precludes coverage for costs related to compliance with injunctive relief. The settlement with Tillage did not entail the issuance of any injunction, making this Exclusion inapplicable.

(d) Exclusion 3(j)(5) precludes coverage for losses relating to "the monetary value of any electronic fund transfer or transaction by an Insured or on an Insured's behalf, which is lost or diminished during transfer into, out of or between an Insured's [SS&C's] accounts." This exclusion is likewise inapplicable, as Tillage alleged losses related to unauthorized transfers from Tillage's account, not SS&C's accounts.

(e) Exclusion j(10) precludes coverage for amounts SS&C agrees to pay pursuant to a contract, such as liquidated damages, setoffs, or penalties. This Exclusion is indisputably inapplicable, as Tillage did not assert that SS&C owes it any amounts pursuant to a previous agreement. Exclusion j(10) does not preclude coverage for amounts owed due to a breach of contract, the central allegation in the Tillage Action.

(f) Exclusion INV(a) of Endorsement #5 precludes coverage for losses "alleging, arising out of, based upon or attributable to the exercise of any authority or discretionary control by an Insured with respect to any client's funds or accounts. Provided, however, that this exclusion shall not apply to any Claim arising out of your performance of Professional Services. Notwithstanding the foregoing sentence, it is expressly understood and agreed that there shall be no coverage for the monetary value of any funds lost due to the Insured's exercise of such authority or discretionary control."

This Exclusion is also inapplicable because (i) SS&C did not exercise any authority or discretion over Tillage's bank account; (ii) the Tillage Action arises out of SS&C's performance of Professional Services; and (iii) Tillage alleges that its monies were stolen by a third party via deceptive means, not lost. Even if Exclusion INV(a) were found to apply, it would only apply in part to the settlement, as the Exclusion would be limited to Tillage's recovery of the funds transferred from its account, and would not prohibit coverage for the compensatory damages asserted by Tillage.

28. Throughout the pendency of the Tillage Action and despite AIG's denial of coverage, SS&C regularly provided information requested by AIG, as well as written and oral status updates regarding the Tillage Action. SS&C also provided notice of all settlement offers received from the plaintiffs and sought consent for all counteroffers to be made by SS&C, including reasonable settlement offers within policy limits. AIG's ongoing refusals to provide coverage for any settlement were premised on the same litany of inapplicable exclusions it raised in the Denial Letter.

29. Despite having explained why each of the proffered Exclusions has no applicability to the Tillage Action, AIG has consistently refused to modify its ultimate coverage position. Nor has it been able to offer any explanation beyond what it stated in its Denial Letter as to why SS&C's interpretation of these Exclusions as being facially inapplicable is incorrect. AIG's inability to articulate any substantive basis for continuing to rely upon these exclusions underscores that AIG's continued reliance on the Exclusions to deny coverage is wholly pretextual, and its refusal to pay SS&C's Claim is not fairly debatable. By denying coverage when the Claim was covered under the Policy and all prerequisites to coverage were met, AIG has breached its contractual and common law obligations to SS&C.

30. Section 15 of the Policy requires disputes arising under the Policy to be submitted to non-binding mediation. Section 15 of the Policy further prohibits any judicial or arbitration proceeding regarding such dispute to be commenced "until at least 90 days after the date the non-binding mediation shall be deemed concluded or terminated."

31. SS&C and AIG mediated their dispute on May 21, 2019. Despite SS&C's good faith best efforts to reach a resolution, the mediation did not result in a settlement, and more than 90 days has passed since the conclusion of the mediation.

## FIRST CAUSE OF ACTION

(Breach of Contract)

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. The Policy constitutes a valid and enforceable contract between AIG and SS&C because SS&C was the named insured under the Policy.

34. SS&C has paid all premiums, provided prompt notice of the claim, and otherwise performed all obligations required of it under the Policy.

35. Under the terms of the Policy, AIG must pay up to $10,000,000 for a claim that satisfies the insuring agreement of the Policy and is not otherwise excluded from coverage.

36. As detailed above, the facts of the Claim come within the insuring agreement of the Policy and coverage for the Claim is not otherwise excluded in the Policy.

37. AIG has denied coverage and not paid any amounts to SS&C in connection with indemnity coverage of the Claim. By failing to provide indemnity coverage for the Claim, AIG has breached the terms of the Policy.

38. As a direct and proximate result of AIG's breach of the Policy, SS&C has suffered damages not less than $75,000, in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Pursuant to the terms of the Policy, AIG is obligated to pay, up to the $10,000,000 limit of liability, for a claim that satisfies the insuring agreements of the Policy and is not otherwise excluded from coverage.

41. As detailed above, the facts of the Claim come within the insuring agreements of all of the Policy and coverage for the Claim is not otherwise excluded in the Policy.

42. AIG disputes its legal obligation to pay the Claim.

43. Pursuant to 28 U.S.C. § 2201, SS&C is entitled to a declaration by this Court of AIG's obligations under the Policy.

44. An actionable and justiciable controversy exists between SS&C and AIG concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to the Claim for the settlement of the Tillage Action.

45. Pursuant to 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of SS&C and against AIG, declaring that there is coverage available for SS&C's Claim under the Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. There is an implied covenant of good faith and fair dealing in every insurance contract. This covenant obligates each party to the contract to refrain from taking any action or

litigation position that would deprive the other of the benefits of the contract or cause undue hardship or harm to the other party. It also requires the insurer to investigate claims in good faith and to reasonably and promptly pay covered claims.

48. SS&C has paid all premiums, provided prompt notice of the claim, and otherwise performed all obligations required of it under the Policy.

49. By wrongfully denying coverage for the Claim, AIG breached the Policy, causing damages, including consequential damages.

50. AIG breached its duty to deal fairly and in good faith by engaging in conduct deliberately calculated to further its own economic interests at the expense of SS&C, denying SS&C the benefits of the Policy.

51. This conduct includes denying indemnity coverage and refusing to approve reasonable settlement offers within Policy limits and pay for the ultimate settlement of the Tillage Action. This conduct also includes relying on undisputedly inapplicable Exclusions as a pretext for denial of coverage and refusing to approve reasonable settlement offers.

52. AIG's denial of coverage and refusal to approve reasonable settlement offers within Policy limits and pay for the settlement was not due to negligence or mistake, but rather was deliberate and calculated to further AIG's own economic interests at the expense of SS&C, denying SS&C the benefits of the Policy.

53. AIG has no fairly debatable basis to deny coverage to SS&C. AIG's actions were in bad faith.

54. As a result of the foregoing, AIG is liable to SS&C for compensatory, consequential, and punitive damages, including attorneys' fees in an amount SS&C may prove at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a) On the First Cause of Action, Plaintiff requests that the Court enter judgment against AIG, awarding Plaintiff damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of SS&C against AIG, declaring that AIG is obligated to pay SS&C, up to the applicable limits of the Policy, for the Claim; and

(c) On the Third Cause of Action, Plaintiff requests that this Court enter judgment against AIG, awarding Plaintiff compensatory, consequential, and punitive damages, including attorneys' fees, in an amount to be determined at trial;

(d) Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
August 21, 2019

        MCKOOL SMITH, P.C.

        By: /s/ Robin L. Cohen
        Robin L. Cohen
        James H. Smith
        MCKOOL SMITH, P.C.
        One Bryant Park, 47th Floor
        New York, New York 10036
        212-402-9801
        rochen@mckoolsmith.com
        jsmith@mckoolsmith.com

*Attorneys for Plaintiff SS&C Technologies Holdings, Inc.*