# EXHIBIT A

Dear Insured:

Congratulations on purchasing CyberEdge®. We look forward to providing your company with the insurance coverage and access to tools that will help you to prepare for, prevent, and control cyber risk.

As an eligible CyberEdge policyholder, you have access to the value-added loss-control services, CyberEdge RiskTool, AutoShun®, and an IBM infrastructure vulnerability scan. Together, the custom portal, hardware device and IBM vulnerability scan can help your organization stay ahead of the curve by managing and automating risk mitigation.

- CyberEdge RiskTool, provided by RiskAnalytics, a leader in cyber-risk management, is a web-based platform that helps to streamline the risk management process. The platform's content is highly customizable and can be tailored specifically to meet a number of risk management needs. With security best-practices, pre-populated training modules and more, CyberEdge RiskTool can assist in a compliance initiative, educating employees on regulatory requirements, or training staff on security protocols to help prevent human error from causing a future breach.

- AutoShun®, provided by RiskAnalytics, is a simple proactive way of improving your company's security through a hardware device. Operating in real-time, AutoShun stops an attack by blocking inbound and outbound communication with known "bad" IP addresses, thus keeping them out of your network. The device then sends the attack information to the accompanying CyberEdge RiskTool account where the dashboard updates in real-time and outlines the known "bad" IP addresses that have been shunned.

- The IBM vulnerability scan is a remote search of the Named Entity's web-facing external infrastructure, including up to 49 public-facing IP addresses. The scan identifies and prioritizes potential vulnerabilities that could be exploited by a remote hacker and provides the Named Entity with a report which identifies threats and suggests responses.

These tools are available, at no additional cost, to eligible CyberEdge policyholders. Go to www.aig.com/cyberedgeregistration to register and enter your contact information and policy number. A representative from Risk Analytics will contact you within five business days with additional instructions.

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business. We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, an AIG representative or email us at mailto:CyberEdge@aig.com.

Sincerely,

Mark Camillo

Mark Camillo
Head of Network Security and Privacy for the Americas
Mark.Camillo@aig.com

INSERT DISCLAIMER. All products are written by insurance company subsidiaries or affiliates of AIG. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)





# eRisk Hub®

When a breach event occurs, time is of the essence. Having a breach response plan in place with access to the third-party resources you need can help you efficiently and cost-effectively respond to and recover from the breach.

As a CyberEdge® policyholder, you will receive complimentary access to the eRisk Hub® portal, powered by NetDiligence®. eRisk Hub provides tools and resources to help you understand your exposures, establish a response plan and minimize the effects of a breach on your organization.

### Key Features of the eRisk Hub Portal

- **Incident Roadmap:** includes suggested steps to take following a network or data breach incident, free consultation with a Breach Coach® and access to a breach response team

- **News Center:** cyber risk stories, security and compliance blogs, security news, risk management events and helpful industry links

- **Learning Center:** best-practices articles, white papers and webinars from leading technical and legal practitioners

- **Risk Manager Tools:** assists you in managing your cyber risk including a self-assessment and state breach notification laws

- **eRisk Resources:** a directory to quickly find external resources with expertise in pre- and post-breach disciplines

The eRisk Hub portal is an effective way to help your organization combat cyber losses with minimal, controlled and predictable costs.

---

To learn more about eRisk Hub portal and CyberEdge:

| E-mail: | Visit: | Contact: |
|---------|--------|----------|
| **CyberEdge@aig.com** | **www.aig.com/us/CyberEdge** | **Your insurance broker** |

American International Group, Inc. (AIG) is a leading international insurance organization serving customers in more than 130 countries and jurisdictions. AIG companies serve commercial, institutional, and individual customers through one of the most extensive worldwide property-casualty networks of any insurer. In addition, AIG companies are leading providers of life insurance and retirement services in the United States. AIG common stock is listed on the New York Stock Exchange and the Tokyo Stock Exchange.

AIG is the marketing name for the worldwide property-casualty, life and retirement, and general insurance operations of American International Group, Inc. For additional information, please visit our website at **www.aig.com**. Products and services are written or provided by subsidiaries or affiliates of American International Group, Inc. Not all products and services are available in every jurisdiction, and insurance coverage is governed by actual policy language. Certain products and services may be provided by independent third parties. Insurance products may be distributed through affiliated or unaffiliated entities. Certain property-casualty coverages may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.



**AIG Specialty Insurance Company**

A capital stock company

POLICY NUMBER: 01-274-16-88          REPLACEMENT OF POLICY NUMBER: 06-530-05-17

Specialty Risk Protector®

**DECLARATIONS**

**NOTICES**

THIS POLICY CONTAINS ONE OR MORE COVERAGE SECTIONS. CERTAIN COVERAGE SECTIONS ARE LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER AS REQUIRED BY THE TERMS OF THE POLICY. DEFENSE COSTS SHALL REDUCE THE APPLICABLE LIMITS OF LIABILITY AND SUBLIMITS OF LIABILITY AND ARE SUBJECT TO APPLICABLE RETENTIONS.

PLEASE READ THIS POLICY CAREFULLY AND REVIEW IT WITH YOUR INSURANCE AGENT OR BROKER.

| ITEMS | | | | | |
|---|---|---|---|---|---|
| 1 | NAMED ENTITY | Named Entity | | SS&C TECHNOLOGIES HOLDINGS INC | |
| | | Mailing Address | | 80 LAMBERTON ROAD WINDSOR, CT 06095 | |
| 2 | POLICY PERIOD | Inception Date | 04/30/2015 | Expiration Date | 04/30/2016 |
| | | 12:01 A.M. at the address stated in Item 1 | | | |
| 3 | PREMIUM | | | $ | $377,118 |

© All rights reserved.

| 4 | NAME AND ADDRESS OF INSURER | | | | |
|---|---|---|---|---|---|
| | AIG SPECIALTY INSURANCE COMPANY<br>175 Water Street<br>New York, NY 10038<br><br>This Policy is issued only by the insurance company indicated in this Item 4. | | | | |
| 5 | LIMIT OF LIABILITY $  10,000,000 | | | | |
| 6 | COVERAGE SUMMARY | | | | |

| | COVERAGE SECTION | | SUBLIMIT OF LIABILITY | RETENTION | RETROACTIVE DATE | CONTINUITY DATE |
|---|---|---|---|---|---|---|
| | SPL | Specialty Professional Liability Insurance | $10,000,000 | $1,250,000 | 09/21/1988 | 09/09/2001 |
| | MC | Media Content Insurance | $10,000,000 | $1,250,000 | Not Applicable | 11/30/2008 |
| | S&P | Security and Privacy Liability Insurance | $10,000,000 | $1,250,000 | 09/30/2006 | 09/30/2006 |
| | | Regulatory Action Sublimit of Liability | $2,000,000 | | | |
| | NI | Network Interruption Insurance | $10,000,000 | $1,250,000 | Not Applicable | 11/30/2008 |
| | | Waiting Hours Period | 8 hours | | | |
| | EM | Event Management Insurance | Refer to Event Management/ Sub Limits Endorsement | $100,000 | Not Applicable | 11/30/2008 |
| | CE | Cyber Extortion Insurance | $10,000,000 | $1,250,000 | Not Applicable | 11/30/2008 |
| | CF | CrisisFund® Insurance | $50,000 | $0 | Not Applicable | 03/31/2012 |

© All rights reserved.

| | | | | | |
|---|---|---|---|---|---|
| BPL | Bankers Professional Liability Insurance | $2,000,000 | $150,000 | 11/30/2008 | 11/30/2008 |
| CCP | Corporate Counsel Premier Insurance | $2,000,000 | $0 | 11/30/2008 | 11/30/2008 |
| | | | Non-Indemnifiable Loss | | |
| | | | $50,000 | | |
| | | | Indemnifiable Loss | | |

© All rights reserved.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

**PRESIDENT**
**AIG Specialty Insurance**
**Company**

**SECRETARY**
**AIG Specialty Insurance**
**Company**

**AUTHORIZED REPRESENTATIVE**

**COUNTERSIGNED AT**          **DATE**          **COUNTERSIGNATURE**

WILLIS OF CONNECTICUT, LLC
185 ASYLUM STREET
25TH FLOOR
HARTFORD, CT 06103-3708

7171534

© All rights reserved.

**General Terms and Conditions**
**("General Terms and Conditions")**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, the **Insurer** agrees as follows:

## 1. TERMS AND CONDITIONS

These **General Terms and Conditions** shall be applicable to all **Coverage Sections**. Terms appearing in bold in these **General Terms and Conditions** and not defined in Clause 2. **DEFINITIONS** of these **General Terms and Conditions** shall have the meaning provided for such terms in any applicable **Coverage Section** for purposes of coverage provided under such **Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this policy.

## 2. DEFINITIONS

(a) " **Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other statements, information, representations of any **Insured** or documents submitted by any **Insured** in connection with the underwriting of this policy or the underwriting of any other policy providing the same or similar coverage issued by the **Insurer**, or any of its affiliates, of which this policy is in whole or part a renewal or replacement or which it succeeds in time.

With respect to publicly held companies, **Application** shall also include each and every public filing by or on behalf of any **Insured** made with the SEC including, but not limited to, any **Company's** Annual Report(s), 10-Ks, 10-Qs, 8-Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the period of time:

(i) beginning at the start of the twelve (12) month period immediately preceding the first submission to the **Insurer** in connection with the underwriting of this policy; and

(ii) ending at the inception of the **policy period**.

(b) " **Claims-Made and Reported Coverage Section**" means any **Coverage Section** designated as such.

(c) " **Company**" means the **Named Entity** and any **Subsidiary** thereof.

(d) " **Continuity Date**" means the date set forth in Item 6 of the Declarations with respect to each **Coverage Section**.

© All rights reserved.

(e) " **Coverage Section**" means each **Coverage Section** that is purchased by the **Named Entity** as indicated in Item 6 of the Declarations.

(f) " **Discovery Coverage Section**" means any **Coverage Section** designated as such.

(g) " **Discovery Period**" means any **Automatic Discovery Period** or **Optional Discovery Period**, as such terms are defined in Clause 9. of these **General Terms and Conditions**.

(h) " **Domestic Partner**" means any natural person legally recognized as a domestic or civil union partner under: (i) the provisions of any applicable federal, state or local law; or (ii) the provisions of any formal program established by a **Company**.

(i) " **First Party Coverage Section**" means any **Coverage Section** designated as such.

(j) " **First Party Event**" means the event(s) or circumstance(s) contained in the definition of **First Party Event** in a **First Party Coverage Section**.

(k) " **Insurer**" means the insurance company indicated in the Declarations.

(l) " **Limit of Liability**" means the amount stated in Item 5 of the Declarations.

(m)" **Management Control**" means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

(n) " **Named Entity**" means the entity listed in Item 1 of the Declarations.

(o) " **Occurrence Coverage Section**" means any **Coverage Section** designated as such.

(p) " **Policy Period**" means the period of time from the inception date stated in Item 2 of the Declarations to the earlier of the expiration date stated in Item 2 of the Declarations or the effective date of cancellation of this policy.

(q) " **Related Acts**" means **First Party Events** and **Third Party Events** which are the same, related or continuous, or **First Party Events** and **Third Party Events** which arise from a common nucleus of facts or legal causes of action. All **Related Acts** shall be considered to have occurred at the time the first such **Related Act** occurred.

© All rights reserved.

(r) " **Retroactive Date**" means the date set forth in Item 6 of the Declarations as such for each **Coverage Section**.

(s) " **Sublimit of Liability**" means the applicable amount, if any, stated in Item 6 of the Declarations as such for each **Coverage Section**.

(t) " **Subsidiary**" means:

   (1) any for-profit entity of which the **Named Entity** has or had **Management Control** (" **Controlled Entity**") on or before the inception date of the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**;

   (2) any for-profit entity of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of this policy do not exceed ten percent (10%) of the aggregate gross revenues of the **Companies** for the most recent fiscal year prior to the inception date of this policy;

   (3) any for-profit entity of which the **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of this policy exceed ten percent (10%) of the aggregate gross revenues of the **Companies** for the most recent fiscal year prior to the inception date of this policy, but only once (a) the **Named Entity** shall have provided the **Insurer** with full particulars of such entity and agreed to any additional premium and amendments to this policy relating to such entity; and (b) the **Insurer** has ratified its acceptance of such entity as a **Subsidiary** by endorsement to this policy; and

   (4) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Company**.

   Notwithstanding the foregoing, coverage afforded under this policy shall only apply to **Loss** arising out of **First Party Events** and **Third Party Events** occurring or allegedly occurring after the effective time that the **Named Entity** obtained **Management Control** of such **Subsidiary** and prior to the time that such **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

(u) " **Third Party Event**" means the event(s) or circumstance(s) contained in the definition of **Third Party Event** in a **Third Party Coverage Section**.

(v) " **Third Party Coverage Section**" means any **Coverage Section** designated as such.

MNSCPT                                  3

© All rights reserved.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover **Loss** arising from any **Claim** made against (i) the estates, heirs, or legal representatives of deceased natural person **Insureds**, and the legal representatives of natural person **Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Insureds** at the time the **Third Party Events** upon which such **Claims** are based occurred; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of a natural person **Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of a natural person **Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the natural person **Insured** and the spouse or **Domestic Partner**, or property transferred from the natural person **Insured** to the spouse or **Domestic Partner**; provided, however, that this extension shall not afford coverage for any **Claim** for any actual or alleged **Third Party Event** committed by or directly involving the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Third Party Event** committed by or directly involving a natural person **Insured**, subject to the policy's terms, conditions and exclusions.

## 4. LIMIT OF LIABILITY

The **Limit of Liability** is the **Insurer's** maximum liability for all **Loss** under all **Coverage Sections** combined and the **Insurer** shall not be responsible to pay any **Loss** upon exhaustion of the **Limit of Liability**.

If a **Sublimit of Liability** is stated in Item 6 of the Declarations with respect to a **Coverage Section**, then such **Sublimit of Liability** shall be the **Insurer's** maximum liability for all **Loss** with respect to such **Coverage Section** and the **Insurer** shall not be responsible to pay any **Loss** under such **Coverage Section** upon exhaustion of such **Sublimit of Liability**. Each **Sublimit of Liability** shall be part of and not in addition to the **Limit of Liability** and shall in no way serve to increase the **Limit of Liability**.

The **Limit of Liability** and any applicable **Sublimits of Liability** for any **Discovery Period** shall be part of, and not in addition to, the **Limit of Liability** and such **Sublimits of Liability** for the **Policy Period**.

Solely with respect to any **Claims-Made and Reported Coverage Sections**, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** pursuant to Clauses 6(b) and 6(c) respectively, which is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the **Limit of Liability** and any applicable **Sublimit of Liability**.

© All rights reserved.

**5. RETENTION**

The **Insurer** shall only be liable for the amount of **Loss** arising from each **Claim** or **First Party Event** that exceeds the Retention stated in Item 6 of the Declarations as applicable to the **Coverage Section** affording coverage to such **Claim** or **First Party Event**. Such Retention amounts must be borne by the **Insureds** and remain uninsured.

(a) For **Third Party Coverage Sections**

If a **Claim** triggers more than one **Third Party Coverage Section**, the highest applicable Retention amount shall apply to such **Claim**.

A single Retention amount shall apply to all **Claims** alleging **Related Acts**.

(b) For **First Party Coverage Sections**

If a **First Party Event** triggers more than one **First Party Coverage Section**, all applicable Retention amounts shall apply to such **First Party Event**.

A separate Retention amount shall apply to each respective **First Party Coverage Section** for **First Party Events** involving **Related Acts**.

(c) For **First Party Coverage Sections** and **Third Party Coverage Sections**

If a **First Party Event** or a **Third Party Event** and any **Related Acts** trigger coverage under one or more **First Party Coverage Sections** and one or more **Third Party Coverage Sections**, all **First Party Coverage Section** Retentions shall apply pursuant to (b) above, in addition to the applicable **Third Party Coverage Section** Retention pursuant to (a) above.

**6. NOTICE**

(a) The **Insureds** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **First Party Event** as soon as practicable after:

(1) any personnel in a **Company's** office of the: (i) Chief Executive Officer; (ii) Chief Financial Officer; (iii) Chief Security Officer; (iv) Chief Technology Officer; (v) Chief Information Officer; (vi) Risk Manager; or (vii) General Counsel; (or equivalent positions) first becomes aware of the **Claim**; or

(2) any **First Party Event** commences or, solely with respect to a **Discovery Coverage Section**, is discovered.

© All rights reserved.

Notwithstanding the foregoing and regardless of whether any personnel described in (1) above has become aware, in all events each **Claim** under a **Claims-Made and Reported Coverage Section** must be reported no later than either:

(1) forty-five (45) days after the end of the **Policy Period**; or

(2) the end of any applicable **Discovery Period**.

(b) If written notice of a **Claim** or a **First Party Event** has been given to the **Insurer** pursuant to Clause (a) above, then:

(1) any subsequent **Claim** made against an **Insured**; or

(2) any subsequent **First Party Event**;

arising out of, based upon or attributable to the facts giving rise to such **Claim** or **First Party Event** for which such notice has been given, or alleging any **Related Act** thereto, shall be considered made at the time such notice was given; and

(c) Solely with respect to any **Claims-Made and Reported Coverage Section**, if during the **Policy Period** or during the **Discovery Period** (if applicable), an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall choose to give written notice to the **Insurer** of such circumstances, the **Third Party Events**, allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Related Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

(d) Notice as described herein shall be given in writing, addressed as below and shall include reference this policy number and **Coverage Sections** under which an **Insured** is providing notice:

**AIG Property Casualty**
**Financial Lines Claims**
**P.O. Box 25947**
**Shawnee Mission, KS 66225**

The Policy Number set forth in the Declarations shall be referenced under the address on the envelope and in the notice itself.

If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

© All rights reserved.

7.    **INSURED'S OBLIGATIONS**

In connection with all **Claims** and **First Party Events** under this policy, each **Insured** agrees to the following:

(a) such **Insured** shall send the **Insurer** copies of all demands, suit papers, other related legal documents and invoices for **Defense Costs** received by such **Insured**, as soon as practicable;

(b) such **Insured** shall immediately record the specifics of any **Claim** and **First Party Event** and the date such **Insured** first received such **Claim** or **First Party Event**;

(c) such **Insured** shall cooperate with and help the **Insurer** and/or any counsel appointed pursuant to the terms of this policy, including, without limitation, as follows:

  (1) by not admitting liability;
  (2) in making settlements;
  (3) in enforcing any legal rights any **Insured** may have against anyone who may be liable to any **Insured**;
  (4) by attending depositions, hearings and trials;
  (5) by securing and giving evidence, and obtaining the attendance of witnesses;
  (6) by furnishing any and all documentation within the possession of such **Insured** that may be required; and
  (7) by taking such actions that such **Insured** and the **Insurer** agree are necessary and practicable to prevent or limit **Loss** arising from any **First Party Event** or **Third Party Event**.

(d) unless required to do so by law, **Insureds** shall not, without the **Insurer's** prior written consent:

  (1) assume any financial obligation or incur any cost unless specifically allowed to settle any **Claim** on behalf of all **Insureds** within the retention pursuant to a **Coverage Section**.
  (2) take any action, or fail to take any required action which prejudices the **Insurer's** rights under this policy.

8. **CANCELLATION**

  (a) *By **Named Entity***: This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer's** authorized agent or to the **Insurer**.

© All rights reserved.

(b) *By the Insurer*: This policy may be canceled by the **Insurer's** delivering to the **Named Entity** by registered, certified, other first class mail or other reasonable delivery method, at the address of the **Named Entity** set forth in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter (ten (10) days in the event of cancellation for non-payment of premium), the cancellation shall be effective. Proof of mailing or delivery of such notice as aforesaid shall be sufficient proof of notice and this policy shall be deemed canceled as to all **Insureds** at the date and hour specified in such notice.

(c) *Return of Premium*: If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium hereon. If this policy shall be canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the premium hereon.

## 9. DISCOVERY

The below provisions of this Clause are applicable solely to **Claims-Made and Reported Coverage Section** of this policy but are not applicable in the event of cancellation for non-payment of premium:

(a) *Automatic Discovery Period*: If the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right following the effective date of such cancellation or nonrenewal to a period of sixty (60) days (the "**Automatic Discovery Period**") in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Automatic Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. The **Automatic Discovery Period** shall not apply where an **Optional Discovery Period** has been purchased or to **Claims** that are covered under any subsequent insurance an **Insured** purchases or that is purchased for an **Insured's** benefit, or that would be covered by any subsequent insurance but for the exhaustion of the amount of insurance applicable to such **Claims** or any applicable Retention amount.

(b) *Optional Discovery Period*: Except as indicated below, if the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right to a period of up to three years following the effective date of such cancellation or nonrenewal (an "**Optional Discovery Period**"), upon payment of an additional premium amount of up to:

    (i) one hundred percent (100%) of the full annual premium, for a period of one (1) year,

    (ii) one hundred and seventy-five percent (175%) of the full annual premium, for a period of two (2) years, or

© All rights reserved.

(iii) two hundred percent (200%) of the full annual premium, for a period of three (3) years,

in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Optional Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

If the **Named Entity** exercises its right to purchase an **Optional Discovery Period**, that period incepts at the end of the **Policy Period** and there shall be no **Automatic Discovery Period**.

As used herein, "full annual premium" means the premium amount set forth in the Declarations as such, plus an additional premium charged for any endorsements to this policy.

The right to purchase an **Optional Discovery Period** shall terminate unless written notice of election, together with any additional premium due, is received by the **Insurer** no later than thirty (30) days after the effective date of the cancellation, nonrenewal or **transaction**.

Any **Discovery Period** cannot be canceled and any additional premium charged for an **Optional Discovery Period** shall be fully earned at inception.

This Clause shall not apply to any cancellation resulting from non-payment of premium.

## 10. TRANSACTIONS

(a) If during the **Policy Period**:

(1) the **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(either of the above events herein referred to as the " **Transaction**"), then this policy shall continue in full force and effect only as to those **First Party Events** and **Third Party Events** occurring prior to the effective time of the **Transaction**.

This policy may not be canceled after the effective time of the **Transaction**.

(b) Notwithstanding the foregoing, this policy may continue in full force and effect as to those **First Party Events** and **Third Party Events** occurring subsequent to the effective time of the **Transaction** if:

© All rights reserved.

(1) within thirty (30) days of such **Transaction** the **Insurer** has been provided with full particulars of the **Transaction**, the related or acquiring person(s) or entity(ies) and any other information requested by the **Insurer**; and

(2) the **Insurer** waives the restrictions set forth in Paragraph 10(a) above with respect to such **Transaction** by written endorsement to this policy and the **Named Entity** or its successor has paid any additional premium and accepted any amendments to this policy required by the **Insurer**.

## 11. SUBROGATION

An **Insured** may be able to recover all or part of **Loss** from someone other than the **Insurer**. Such **Insured** must do all that is possible after a **First Party Event** or **Third Party Event** to preserve any, and all, rights of recovery. As a condition of any payment by the **Insurer** under this policy, an **Insured's** rights to recovery will be transferred to the **Insurer**. Each **Insured** will do whatever is necessary, including signing documents, to help the **Insurer** obtain that recovery.

A **Company** may waive an **Insured's** rights to recovery against others if such **Company** does so in writing and before the **First Party Event** or **Third Party Event** occurred.

## 12. OTHER INSURANCE

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the **Limit of Liability** or any applicable **Sublimit of Liability** provided by this policy.

## 13. NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Section 6 of these **General Terms and Conditions**, all notices required under this policy to be given by an **Insured** to the **Insurer** shall be given in writing to the **Insurer** at the address stated in Item 4(a) of the Declarations. It is agreed that the **Named Entity** shall act on behalf of all **Insureds** with respect to the giving of notice of a **Claim**, the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

© All rights reserved.

**14. ASSIGNMENT**

This policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

**15. DISPUTE RESOLUTION PROCESS**

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's (" **AAA**") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(a) either party shall have the right to commence a judicial proceeding; or

(b) either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows: (i) the implicated **Insureds** shall select one (1) arbitrator; (ii) the **Insurer** shall select one (1) arbitrator; and (iii) said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then-prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least 90 days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation.

© All rights reserved.

The non-binding mediation may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding and/or the selection of mediators or arbitrators.

## 16. ACTION AGAINST INSURER

Except as provided in Clause 15 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of such **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against an **Insured** or a **Company** to determine an **Insured's** liability, nor shall the **Insurer** be impleaded by an **Insured** or a **Company** or their legal representatives.

## 17. BANKRUPTCY

Bankruptcy or insolvency of any **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 18. WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to **First Party Events** and **Third Party Events** occurring, **Claims** made or **Losses** suffered anywhere in the world.

## 19. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

© All rights reserved.

## 20. SERVICE OF SUIT

Subject to Clause 15,  it is agreed that  in the event of  the **Insurer's** failure  to pay any amount claimed to be due under this  policy, the **Insurer**, at the request  of any **Insured**, will submit  to the jurisdiction of  a court  of  competent jurisdiction  within the  United States of  America.  Nothing  in this Clause  constitutes,  or  should  be  understood  to constitute, a  waiver of  the  **Insurer's** rights  to  commence  an  action  in any  court  of competent  jurisdiction  in the  United  States,  to remove  an action  to a  United  States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States of  America or of any state  in the United States of  America.  It is further agreed  that  service of  process may  be  made  upon  General Counsel,  Legal Department, [Chartis Specialty Insurance  Company **OR** Lexington Insurance  Company, 175 Water Street, New York,  NY 10038] or his  or her representative, and that  in any suit instituted against the **Insurer**  upon this contract, the **Insurer**  will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute  of any state, territory, or  district of the United  States of  America which makes  provision therefore, the **Insurer**  hereby  designates  the Superintendent, Commissioner, or  Director of  Insurance, or other  officer specified  for that purpose  in the statute,  or  his or  her  successor or  successors  in office as  the **Insurer's** true and lawful attorney upon whom may be served any lawful process in  any action, suit, or proceeding  instituted by or on  behalf of any **Insured**  or any beneficiary hereunder  arising  out  of  this  contract  of  insurance, and  hereby  designates  the above-named General Counsel as the  person to whom the  said officer is authorized to mail such process or a true copy thereof.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Corporate Counsel Premier Insurance**
**(" CCP Coverage Section")**

**This is a Claims Made and Reported Coverage Section and a Third Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of and are expressly applicable to this **CCP Coverage Section**, unless otherwise explicitly stated to the contrary in the **General Terms and Conditions** or in this **CCP Coverage Section**.

1.    **INSURING AGREEMENTS**

With respect to the **CCP INSURING AGREEMENTS**, the **DEFENSE** provisions and the **SETTLEMENT** provisions of this Clause 1., solely with respect to **Claims** first made against an **Insured Person** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, this **CCP Coverage Section** affords the following coverage:

**CCP INSURING AGREEMENTS**

   **COVERAGE A: INSURED PERSON PROFESSIONAL LIABILITY**

The **Insurer** shall pay on an **Insured Person's** behalf all **Loss** in excess of the applicable Retention that such **Insured Person** is legally obligated to pay resulting from a **Claim** alleging a **Wrongful Act**, except when and to the extent that a **Company** has indemnified such **Insured Person** for such **Loss**.

**COVERAGE B: COMPANY INDEMNIFICATION OF INSURED PERSONS**

The **Insurer** shall pay on a **Company's** behalf all **Loss** in excess of the applicable Retention that such **Company** is legally obligated to pay, but only to the extent such **Company** has indemnified an **Insured Person** for such **Loss** resulting from a **Claim** alleging a **Wrongful Act**.

**DEFENSE PROVISIONS**

*(a) The Insurer's Duty To Defend*:  The **Insurer** has the right and duty to defend a **Claim** brought against an **Insured Person** alleging a **Wrongful Act**, even if the **Claim** is groundless, false or fraudulent. The **Insurer** shall pay for **Defense Costs** incurred in the defense of a **Claim** for **Wrongful Acts**. The **Insurer** shall have no duty to defend a **Claim** insured by **Directors and Officers Coverage** or a **Securities Claim**.

© All rights reserved.

(b) *Defense Costs*:   The **Insurer** shall indemnify for **Defense Costs** incurred in: (1) any **Securities Claim**; or (2) in any **Claim** where the coverage afforded by this policy is excess of **Directors and Officers Coverage**, provided that such **Defense Costs** are incurred with the **Insurer's** prior written consent.

(c) *When The Insurer's Duty Ends*:  The **Insurer's** duty to defend and any obligation to indemnify an **Insured Person** shall end if such **Insured Person** or, if applicable, a **Company**, fails or refuses to consent to a settlement that the **Insurer** recommends pursuant to the **SETTLEMENT** provision below and that the claimant will accept. As a consequence of such failure or refusal to consent, the **Insurer's** liability for **Loss** shall not exceed the amount for which the **Insurer** could have settled such **Claim** had such **Insured Person** or, if applicable, such **Company**, consented, plus **Defense Costs** incurred prior to the time the **Insurer** made such recommendation, plus seventy percent (70%) of **Defense Costs** incurred with the **Insurer's** consent after the date of such **Insured's** refusal.

Provided, however, this Sub-paragraph (c) shall not apply to the settlement of the following proceedings that are brought in connection with a **Securities Claim** when such settlement would require an **Insured Person** to enter into a plea of guilty:

(1) criminal proceeding commenced by indictment, information, notice of charges or similar document;

(2) a civil, administrative or regulatory investigation of an **Insured Person** by the Securities and Exchange Commission (SEC), Department of Justice or a similar state or foreign government authority, commenced by the service of a subpoena on such **Insured Person**.

### SETTLEMENT

(a) The **Insurer** has the right, with the written consent of an **Insured**, which consent shall not be unreasonably withheld, to settle any **Claim** if the **Insurer** believes that it is proper.

(b) An **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

## 2.   DEFINITIONS

(a) " **Administrative Proceeding Claim**" means a judicial, administrative, bar association or other proceeding against a **Corporate Counsel**, which is concerning either:

(1) the eligibility or license of such **Corporate Counsel** to practice law; or
(2) compliance with the Sarbanes-Oxley Act of 2002 and any rule or regulations promulgated thereunder or pursuant thereto.

© All rights reserved.

(b) " **Bodily Injury**" means physical injury, sickness, disease, pain or death, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress.

(c) " **Claim**" means:

   (1) a written demand for monetary, non-monetary or injunctive relief;
   (2) a written request to toll or waive a statute of limitations relating to a potential **Claim** against an **Insured Person**;
   (3) a **Suit**;
   (4) an **Administrative Proceeding Claim**; or
   (5) a **Securities Claim**.

(d) " **Corporate Counsel**" means any attorney at law admitted to the bar in or otherwise licensed to practice of law in any of the United States of America or its territories, Canada or a **Foreign Jurisdiction**, but solely while an employee of a **Company**.

   Notwithstanding the foregoing, **Corporate Counsel** shall not mean a **Secondment Attorney**.

(e) " **Defense Costs**" means all reasonable and necessary fees charged by an attorney appointed by the **Insurer** (unless otherwise provided for by this policy), as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by the **Insurer** or by an **Insured** with the **Insurer's** written consent. **Defense Costs** shall not include: (i) compensation of an **Insured Person** or any employee of an **Insured**; or (ii) any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured Person**.

(f) " **Directors and Officers Coverage**" means any valid and collectible Directors and Officers liability insurance coverage available to an **Insured Person** (or any excess coverage thereto), including, but not limited to, such coverage as provided under any policy or self insurance program for managerial liability, directors and officers liability, general partner liability, employment practices liability, catastrophe coverage or similar insurance.

(g) " **Executive**" means any:

   (1) past, present or future duly elected or appointed director, officer, partner, trustee or governor of a **Company**, management committee member of a joint venture or member of the management board of a limited liability company (or equivalent position) of a **Company**;

© All rights reserved.

(2) past, present or future General Counsel or Risk Manager (or equivalent position) of the **Named Entity**; or

(3) past, present or future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Sub-paragraph (1) of this definition.

(h) " **Foreign Jurisdiction**" means any jurisdiction, other than the United States of America, any of its territories or possessions or Canada.

(i) " **Indemnifiable Loss**" means **Loss**, including the advancement of **Defense Costs,** for which a **Company** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of such **Company**.

For the purposes of determining whether **Loss** constitutes **Indemnifiable Loss**, unless a **Company** is unable to do so due to **Insolvency**, such **Company** shall be conclusively deemed to have indemnified an **Insured Person** to the maximum extent that such **Company** is permitted or required to provide such indemnification pursuant to law, common or statutory, or contract, or by the charter or by-laws of such **Company**, which are hereby deemed to incorporate the broadest provisions of the law which determines or defines such rights of indemnity.

(j) " **Insolvency**" means : (i) the appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**; (ii) a **Company** becoming a debtor-in-possession (or the equivalent) pursuant to the bankruptcy laws or insolvency laws of the United States of America or Canada; (iii) a bankruptcy petition is filed by or against a **Company**; or (iv) as to (i), (ii) or (iii), the equivalent status or event occurring in a **Foreign Jurisdiction**.

(k) " **Insured**" means each **Company** and each **Insured Person**.

2.

(a) " **Insured Person**" means any:

(1) past, present or future **Corporate Counsel**;

(2) past, present or future employee of a **Company** who supports a **Corporate Counsel** in the performance of **Legal Services**;

(3) licensed attorney provided by an employment contractor or agency, under a written agreement between a **Company** and the employment contractor or agency, to perform **Legal Services** for or on behalf of a **Company**; and

(4) any independent contractor that is an attorney at law admitted to the bar in or otherwise licensed to the practice of law in any of the United States of America or its territories, Canada or any **Foreign Jurisdiction**, who, pursuant to a written agreement with a **Company**, has been retained to provide **Legal Services** for or on behalf of a **Company**,

© All rights reserved.

Notwithstanding the foregoing, **Insured Person** shall not mean a **Secondment Attorney**.

(b) " **Legal Services** " means any professional legal services that are rendered by:

    (1) a **Corporate Counsel**, but solely in his or her capacity as such;
    (2) a **Corporate Counsel**, but solely while a full time, permanent employee of a **Company** (including **Moonlighting Services** and *pro bono* services); and
    (3) any **Insured Person**, but solely while acting under the supervision of and at the direction of a **Corporate Counsel**.

**Legal Services** shall also include notarizing, certifying or acknowledging any signature rendered by (1) through (3) above.

(c) " **Loss**" means damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages.

(d) " **Moonlighting services**" means professional legal services, including, but not limited to, notarizing, certifying or acknowledging any signature, that are rendered by a **Corporate Counsel** outside the scope of their employment with a **Company**; provided that **Moonlighting Services** shall not include such services performed by a **Corporate Counsel** in their capacity as owner, principal, partner or employee of an entity that is not a **Company**.

(e) " **Non-Indemnifiable Loss**" means **Loss** for which a **Company** has not indemnified an **Insured Person** either because of **Insolvency** or because such **Company** is not permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of a **Company**.

(f) " **Personal injury peril**" means any:

    (1) false arrest, detention or imprisonment;
    (2) malicious prosecution;
    (3) libel or slander or other defamatory or disparaging materials;
    (4) publication or an utterance in violation of an individual's right to privacy;
    (5) wrongful entry or eviction, or other invasion of the right to private occupancy; and
    (6) if arising out of (1) through (5) above, mental anguish, mental injury, shock, humiliation or emotional distress

© All rights reserved.

(g) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(h) "**Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(i) "**Secondment Attorney**" means an attorney employed by an outside law firm and temporarily assigned by agreement between such law firm and a **Company** to perform **Legal Services** at the direction of a **Company**.

(j) "**Securities Claim**" means a **Claim** made against an **Insured Person** arising from **Legal Services**:

   (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including, but not limited to, the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

      (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of a **Company**; or
      (ii) brought by a security holder, purchaser or seller of securities of a **Company** with respect to such security holder's, purchaser's or seller's interest in securities of such **Company**; or

   (2) brought derivatively on behalf of a **Company** by a security holder of such **Company**.

   "**Securities Claim**" also means the following in connection with (1) or (2) above:

   (1) a criminal proceeding which is commenced by indictment, information, notice of charges or similar document; or

   (2) a civil, administrative or regulatory investigation of an **Insured Person** by the Securities and Exchange Commission, Department of Justice or a similar state or foreign government authority, commenced by the service of a subpoena upon such **Insured Person**.

© All rights reserved.

(k) " **Suit**" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured Person** must submit or does submit with the **Insurer's** consent.

(l) " **Third Party Event**" means any **Wrongful Act**.

(m)" **Wrongful Act**" means any:

    (1) negligent act, error or omission, breach of duty, misstatement or misleading statement; or

    **(2) Personal Injury Peril;**

    committed or omitted by an **Insured Person** in the performance of **Legal Services**.

## 3.   EXCLUSIONS

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured Person**:

(a) alleging, arising out of, based upon or attributable to any:

    (1) with respect to all **Claims** other than **Securities Claims**: (i) dishonest, fraudulent, criminal or malicious act (other than malicious prosecution) or omission; (ii) intentional or knowing violation of the law; or (iii) commingling, misappropriation, or improper use of funds; however, the **Insurer** will defend a **Claim** (other than a **Securities Claim**) against an **Insured Person** that alleges any of the foregoing conduct, and that is not otherwise excluded, until there is a final judgment or final adjudication against such **Insured Person** in a **Suit**, adverse finding of fact against such **Insured Person** in a binding arbitration proceeding, or plea of guilty or no contest by such **Insured Person** as to such conduct, at which time such **Insured Person** or, if applicable, a **Company** shall reimburse the **Insurer** for **Defense Costs**; or

    (2) with respect to **Securities Claims**: deliberate criminal or deliberate fraudulent act; provided, however, the **Insurer** will defend a **Securities Claim** against an **Insured Person** that alleges any of the foregoing conduct, and that is not otherwise excluded, until there is a final judgment or final adjudication against such **Insured Person** in a **Suit**, adverse finding of fact against such **Insured Person** in a binding arbitration proceeding, or plea of guilty or no contest by such **Insured Person** as to such conduct, at which time such **Insured Person** or, if applicable, a **Company** shall reimburse the **Insurer** for **Defense Costs**.

© All rights reserved.

For the purpose of determining the applicability of this exclusion: (i) the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future Chairman of the Board, President, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer or General Counsel (or equivalent positions) of a **Company** shall be imputed to such **Company**.

(b) alleging, arising out of, based upon or attributable to any misappropriation of trade secret.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**, or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**; provided, however, this exclusion shall not apply to **Claims** alleging any of the foregoing where the underlying **Legal Services** performed by an **Insured Person** giving rise to such **Claim** were not the direct immediate cause of the foregoing.

(d) alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**.

(e) for violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein; provided, however, this exclusion shall not apply to **Claims** arising out of a **Corporate Counsel** providing **Legal Services** to an ERISA fiduciary.

(f) alleging, arising out of, based upon or attributable to an **Insured's** employment of any individual or any of an **Insured's** employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment related claim); provided, this exclusion shall not apply to the **Legal Services** provided by an **Insured Person** in connection with the employment of any individual or any employment practice, whether such **Legal Services** are provided to a third party or to a **Company**.

(g) that is brought directly or indirectly, by or on behalf of a **Company**; provided, however, this exclusion shall not apply to **Defense Costs** incurred in connection with such **Claims**.

MNSCPT                                      8

® All rights reserved.

(h) that is brought  by a security  holder or member of  a **Company**, whether  directly or derivatively, unless  such  security  holder  or member **Claim**  is instigated  and continued  totally  independent  of,  and  totally  without  the solicitation  of,  or assistance of,  or active participation  of,  or intervention  of an **Insured  Person**, a **Company** or any **Executive**  of a **Company**;   provided, however, this exclusion  shall not apply to:

    (1) any **Claim** brought by any past **Executive** of a **Company** who has not served as a duly  elected  or appointed director,  officer,  trustee,  governor,  management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for a **Company** for at least four (4) years prior to such **Claim** being first made against any person; or

    (2) any **Claim**  brought by  an **Executive**  of a  **Company**  formed and  operating in  a **Foreign Jurisdiction** against such  **Company** or  any **Executive**  thereof, provided that such **Claim** is brought and maintained outside the United States of America, Canada or any other common law country (including any territories thereof).

(i) alleging, arising  out of  or resulting  from any  services performed  by any  contract, seasonal, part-time or leased  lawyer other  than **Legal Services**  provided for  a **Company** at the direction of **Corporate Counsel**.

(j) for any of the following:

    (1)  the return of an **Insured's** fees or compensation;
    (2)   profit or advantage to which an  **Insured** is not legally entitled;
    (3)  an **Insured's** expenses  or charges,  including employee  compensation and benefits, overhead, over-charges or cost over-runs;
    (4)  an **Insured's**  cost of  providing, correcting,  re-performing or  completing any **Legal Services**;
    (5)  civil or  criminal fines or penalties  imposed by law against  an **Insured** and  any matters deemed uninsurable under the  law pursuant to which this  policy shall be construed;
    (6)  an **Insured's** costs  and expenses of  complying with any  injunctive or  other form of equitable relief;
    (7)  taxes incurred by an **Insured**; or
    (8)  the amounts for which all **Insureds** are  not financially liable or  which are without legal recourse to any **Insured**.

(k) for violation(s)  of any  of the  responsibilities,  obligations  or duties imposed  by the Fair Labor Standards Act  (except the Equal  Pay Act), the  National Labor Relations Act,  the Worker Adjustment and  Retraining Notification Act,  the Consolidated Omnibus Budget Reconciliation  Act, the  Occupational Safety and  Health Act, any rules or regulations promulgated  under any of the  foregoing, or any similar federal, state, local or foreign statute, regulation or common law.

© All rights reserved.

It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statute, regulation or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1) the refusal, failure or inability of any **Company** or **Insured Person** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2) improper deductions from pay taken by any **Company** or **Insured Person** from any employee(s) or purported employee(s); or

(3) failure to provide or enforce legally required meal or rest break periods.

(l) alleging, arising out of, based upon or attributable to any **Wrongful Act**, or any **Related Acts** thereto, alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **CCP Coverage Section** is a renewal or replacement or which it may succeed in time.

(m) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Retroactive Date** or any **Related Act** thereto, regardless of when such **Related Act** occurs.

(n) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Continuity Date**, or any **Related Act** thereto, if, as of the **Continuity Date**, an **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or would result in a **Claim** against such **Insured**.

(o) alleging, arising out of, based upon or attributable to, directly or indirectly, any **Insured Person** notarizing, certifying or acknowledging any signature not made in the presence of such **Insured Person** at the time of such notarization, certification or acknowledgment.

(p) alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of any entity is inadequate; provided, however, that this exclusion shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

© All rights reserved.

## 4. ORDER OF PAYMENTS

In the event of **Loss** for which payment is due under this **CCP Coverage Section**, the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A of the **CCP INSURING AGREEMENTS**; then

(b) only after payment of **Loss** has been made pursuant to Sub-paragraph (a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the Chief Executive Officer (or equivalent position) of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B of the **CCP INSURING AGREEMENTS**; and then

(c) in the event the **Insurer** withholds payment pursuant to Sub-paragraph (b) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the Chief Executive Officer (or equivalent position) of the **Named Entity** remit such payment to a **Company** or directly to or on behalf of an **Insured Person**.

The bankruptcy or **Insolvency** of any **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **CCP Coverage Section** pursuant to this Clause.

## 5.   RETENTION CLAUSE

The following provisions shall apply in addition to the provisions of Clause 5. RETENTION of the General Terms and Conditions:

Notwithstanding anything in the policy to the contrary, there shall be no Retention for **Securities Claim** that this policy only applies as excess pursuant to the **OTHER INSURANCE** provisions.

## 6.   SUBROGATION

The following provisions shall apply in addition to the provisions of Clause 11. SUBROGATION of the General Terms and Conditions:

The **Insurer** shall be subrogated to any **Insured Person's** rights to indemnification or advancement from a **Company**.

© All rights reserved.

7.  **OTHER INSURANCE**

The following provisions shall apply in addition to the provisions of Clause 12. OTHER INSURANCE of the General Terms and Conditions:

This policy shall apply specifically as excess to any **Securities Claims** also covered by **Directors and Officers Coverage**.

8.  **BANKRUPTCY**

The following provisions shall apply in addition to the provisions of Clause 17. BANKRUPTCY of the General Terms and Conditions:

The coverage provided under this **CCP Coverage Section** is intended to protect and benefit the **Insured Persons**. If a liquidation or reorganization proceeding is commenced by or against the **Named Entity** and/or any other **Company** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar law of any state, Canada or any **Foreign Jurisdiction** (collectively " **Bankruptcy Law** ") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and
(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

9. **TRANSACTIONS**

The following provision shall apply in addition to the provision of Clause 10. TRANSACTIONS of the General Terms and Conditions:

The cancellation or non-renewal of **Directors and Officers Coverage** shall also be deemed a " **Transaction**" where such cancellation or non-renewal results in a lapse of coverage.

© All rights reserved.

**10. APPLICATION**

(a) *Coverage A Non-Rescindable*: The **Insurer** shall not be entitled, under any circumstances, to rescind Coverage A of this **CCP Coverage Section**.

(b) ***Application*** *Severability*: With respect to the statements, warranties and representations contained in any **Application** for this policy, no knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining the availability of coverage with respect to any **Claim** made against such other **Insured Person**.

**11. SPECIAL RIGHTS AND DUTIES OF THE NAMED ENTITY**

The **Insured Persons** agree that the **Named Entity** may act on behalf of all **Insured Persons** as to:

(a) consenting or refusing to consent to any settlement;

(b)     the exercising or declining of any right to a **Discovery Period**;

(c)     the resolution of any dispute in connection with coverage afforded by this policy;

(d)     payment of premiums and receipt of return premiums, if any; and

(e)     acceptance of any endorsements or other changes to this policy.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Cyber Extortion Insurance**
**(" Cyber Extortion Coverage Section")**

**This is an Occurrence Coverage Section and a First Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms  and Conditions**, the **General Terms and Conditions** are incorporated by reference into,  made a part of and are  expressly applicable to this **Cyber Extortion Coverage Section**, unless otherwise explicitly stated to the contrary in either the **General Terms and Conditions** or in this **Cyber Extortion Coverage Section**.

## 1. INSURING AGREEMENTS

With respect  to  the **CYBER  EXTORTION  INSURING  AGREEMENT** of this Clause 1., solely with  respect to  a **Security  Threat**  first occurring  during the  **Policy  Period** and reported  to  the  **Insurer**  pursuant  to  the  terms  of  this policy,  this  **Cyber Extortion Coverage Section** affords the following coverage:

**CYBER EXTORTION INSURING AGREEMENT**

The **Insurer**  shall pay  all **Loss**  in  excess of  the applicable  Retention  that an  **Insured** incurs solely as a result of a **Security Threat**.

## 2. DEFINITIONS

(a) " **Bodily Injury**" means physical injury, sickness or  disease and, if  arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **Computer System**" means any computer  hardware, software  or any components thereof that are under the ownership, operation or  control of, or that are leased by, a **Company**  and are  linked  together  through a  network  of two  or more  devices accessible through the Internet, internal network or connected  with data storage or other peripheral devices.

(c) " **First Party Event**" means any **Security Threat**.

(d) " **Insured**" means a **Company**.

(e) " **Loss**" means:

(1)   monies paid by an **Insured** with the **Insurer's**  prior written  consent  to terminate or end a
**Security Threat** that would otherwise result in harm to an  **Insured**; and
(2) the costs  to  conduct  an investigation  to  determine  the  cause  of  a  **Security Threat**.

© All rights reserved.

(f) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(g) "**Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(h) "**Security Threat**" means any threat or connected series of threats to commit an intentional attack against a **Computer System** for the purpose of demanding money, securities or other tangible or intangible property of value from an **Insured**.

## 3.   EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss**:

(a) alleging, arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by any of the **Insured**'s:

(1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or

(2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by the **Insured** if any of those referenced in Sub-paragraph (1) above participated in, approved of, or knew or had reason to know prior to the act of, or acquiesced to the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured** or any other person.

(b) alleging, arising out of, based upon or attributable to any misappropriation or theft of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**; (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**; or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

© All rights reserved.

(d) for any **Bodily Injury** or **Property Damage**.

(e) alleging, arising out of, based upon or attributable to any:

    (1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;

    (2) war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions; or

    (3) satellite failure.

(f) alleging, arising out of, based upon or attributable to any **Security Threat** made by any government entity or public authority.

(g) alleging, arising out of, based upon or attributable to any **Security Threat** or **Related Act** thereto which has been reported, or in any circumstances of which notice has been given, under any policy of which this **Cyber Extortion Coverage Section** is a renewal or replacement or which it may succeed in time.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Security Failure/Privacy Event Management Insurance**
**("Event Management Coverage Section")**

**This is a Discovery Coverage Section and a First Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of and are expressly applicable to this **Event Management Coverage Section**, unless otherwise explicitly stated to the contrary in the **General Terms and Conditions** or in this **Event Management Coverage Section**.

1.   **INSURING AGREEMENTS**

   With respect to the **EVENT MANAGEMENT INSURING AGREEMENT** of this Clause 1., solely with respect to a **Security Failure** or **Privacy Event** first discovered during the **Policy Period** and reported to the **Insurer** pursuant to the terms of this policy, this **Event Management Coverage Section** affords the following coverage:

   **EVENT MANAGEMENT INSURING AGREEMENT**

   The **Insurer** shall pay all **Loss**, in excess of the applicable Retention, less the applicable Coinsurance percentage, that an **Insured** incurs solely as a result of an alleged **Security Failure** or **Privacy Event** that has actually occurred or is reasonably believed by such **Insured** and the **Insurer** to have occurred.

2.   **DEFINITIONS**

   (a) " **Bodily Injury**" means physical injury, sickness or disease and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

   (b) " **Computer System**" means any computer hardware, software or any components thereof that are under the ownership, operation or control of, or that are leased by, a **Company** and that are linked together through a network of two or more devices accessible through the Internet, internal network or connected with data storage or other peripheral devices.

   (c) " **Confidential Information**" means any of the following in a **Company's** or **Information Holder's** care, custody and control or for which a **Company** or **Information Holder** is legally responsible:

   (1) information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;

MNSCPT                                          1

© All rights reserved.

(2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations;

(3) information concerning an individual that would be considered "protected health information" within Health Insurance Portability and Accountability Act of 1996 (as amended) and its implementing regulations;

(4) information used for authenticating customers for normal business transactions;

(5) any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

(d) " **Electronic Data**" means any software or electronic data stored electronically on a **Computer System**, including without limitation **Confidential Information**.

(e) " **First Party Event**" means any **Privacy Event** or **Security Failure**.

(f) " **Information Holder**" means a third party that an **Insured** has provided **Confidential Information** to.

(g) " **Insured**" means a **Company**.

(h) " **Loss**" means the following reasonable and necessary expenses and costs incurred by an **Insured** within one year of the **Security Failure** or **Privacy Event**:

(1) to conduct an investigation (including a forensic investigation) to determine the cause of the **Security Failure** or **Privacy Event**;

(2) for a public relations firm, crisis management firm or law firm agreed to by the **Insurer** to advise an **Insured** on minimizing the harm to such **Insured**, including, without limitation, maintaining and restoring public confidence in such **Insured**;

(3) to notify those whose **Confidential Information** is the subject of the **Security Failure** or **Privacy Event** and advise of any available remedy in connection with the **Security Failure** or **Privacy Event**, including, without limitation, those expenses and costs for printing, advertising and mailing of materials;

(4) for identity theft education and assistance and credit file or identity monitoring;

(5) for any other services approved by the **Insurer** at the **Insurer's** sole and absolute discretion;

(6) to restore, recreate or recollect **Electronic Data**; or

(7) to determine whether **Electronic Data** can or cannot be restored, recollected or recreated.

Provided, however, **Loss** shall not include compensation, fees, benefits, overhead or internal charges of any **Insured**.

© All rights reserved.

(i) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(j) "**Privacy Event**" means any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise), including, without limitation, that which results in an identity theft or other wrongful emulation of the identity of an individual or corporation.

(k) "**Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(l) "**Security Failure**" means a failure or violation of the security of a **Computer System**, including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code. "**Security Failure**" includes any such failure or violation resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officers, director or employee of a **Company** by non-electronic means in direct violation of a **Company's** specific written security policies or procedures.

## 3.   EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss**:

(a) alleging, arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by any of an **Insured's**:

  (1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or

  (2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by an **Insured** if any of those referenced in Sub-paragraph (1) above participated in, approved of, acquiesced to, or knew or had reason to know prior to the act of, the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured** or any other person.

(b) alleging, arising out of, based upon or attributable to any infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

MNSCPT                                         3
© All rights reserved.

(c) alleging, arising out of, based upon or attributable to  any (1) presence of **Pollutants**; (2) the actual or threatened discharge, dispersal, release  or escape of **Pollutants**; or (3) direction  or  request to  test for,  monitor,  clean up,  remove, contain, treat, detoxify or neutralize pollutants, or  in any way respond  to or assess the  effects of **Pollutants**.

(d) for any **Bodily Injury** or **Property Damage**.

(e) alleging, arising out of, based upon or attributable to any:

    (1) fire, smoke, explosion, lightning,  wind, water, flood,  earthquake, volcanic eruption, tidal  wave,  landslide, hail,  act of God  or  any other  physical event, however caused;

    (2) war, invasion,  act of foreign  enemy, hostilities  or warlike  operations (whether declared  or not), civil war, mutiny,  civil commotion assuming the proportions  of or amounting  to  a popular  rising,  military  rising, insurrection,  rebellion, revolution, military or  usurped power,  or any  action taken  to hinder or  defend against these actions; or

    (3) satellite failure.

(f) alleging,  arising out of, based  upon  or  attributable to any  seizure, confiscation, nationalization, or destruction of a **Computer  System** or **Electronic Data** by order  of any governmental or public authority.

(g) alleging, arising out of, based upon or  attributable to any **Security Failure** or **Privacy Event**, or  any **Related  Acts**  thereto, which  has been  reported,  or in  any circumstances of which notice has been given, under any policy of which this **Event Management  Coverage  Section** is  a  renewal  or replacement  or which  it  may succeed in time.

(h) for any profit or advantage to which any **Insured** is not legally entitled.

(i) alleging,  arising out of,  based  upon  or  attributable to any amounts  for: (i)  the original creation of; (ii) diminution  of value of; (iii) lost  profits of; (iv) or  loss of use of, a trade secret, patent, copyright, trademark, trade dress or any other intellectual property.

## 5. COINSURANCE

The Coinsurance  percentage applicable  to this **Event Management  Coverage  Section** shall be borne  by the **Insureds** and  remain uninsured.  Payments of  any Coinsurance percentage by an **Insured** shall not reduce the **Sublimit of Liability** or **Limit of Liability**.

## 6. NOTICE

© All rights reserved.

In addition to the applicable items of Clause 6. **NOTICE** of the **General Terms and Conditions**, and before coverage will apply for **Loss** under this **Event Management Coverage Section**, each **Insured** must also:

(a) complete and sign a written, detailed and affirmed proof of loss within ninety (90) days after the discovery of any **Loss** (unless such period has been extended by the **Insurer** in writing) which shall include, among any other pertinent information:

    (1) a full description of such **Loss** and the circumstances surrounding such **Loss**, which shall include, among any other necessary information, the time, place and cause of the **Loss**;

    (2) a detailed calculation of any **Loss**; and

    (3) all underlying documents and materials that reasonably relate to or form any part of the proof of such **Loss**.

(b) upon the **Insurer's** request, submit to an examination under oath.

(c) immediately record the specifics of any **Loss**, **Security Failure** or **Privacy Event** and the date such **Insured** first became aware of such **Loss**, **Security Failure** or **Privacy Event**.

(d) provide the **Insurer** with any cooperation and assistance that the **Insurer** may request, including assisting the **Insurer** in:

    (1) any investigation of a **Security Failure**, **Privacy Event**, **Loss** or circumstance;

    (2) enforcing any legal rights an **Insured** or the **Insurer** may have against anyone who may be liable to an **Insured**; and

    (3) executing any documents that the **Insurer** deems necessary to secure its rights under this policy.

All adjusted claims shall be due and payable thirty (30) days after the presentation and written acceptance by the **Insurer** of satisfactory proof of **Loss** to the address set forth in the **General Terms and Conditions**. The costs and expenses of establishing or proving an **Insured's** **Loss** under this **Event Management Coverage Section**, including, without limitation, those connected with preparing a proof of loss, shall be such **Insured's** obligation, and are not covered under this policy.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Media Content Insurance**
**(" Media Content Coverage Section")**

**This is an Occurrence Coverage Section and a Third Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of and are expressly applicable to this **Media Content Coverage Section**, unless otherwise explicitly stated to the contrary in the **General Terms and Conditions** or in this **Media Content Coverage Section**.

## 1.   INSURING AGREEMENTS

With respect to the **MEDIA CONTENT INSURING AGREEMENT**, the **DEFENSE** provisions and the **SETTLEMENT** provisions of this Clause 1., solely with respect to **Claims** alleging a **Wrongful Act** first occurring during the **Policy Period** and reported to the **Insurer** pursuant to the terms of this policy (regardless of when such **Claim** is made), this **Media Content Coverage Section** affords the following coverage:

### MEDIA CONTENT INSURING AGREEMENT

The **Insurer** shall pay on an **Insured's** behalf all **Loss** in excess of the applicable Retention that such **Insured** is legally obligated to pay resulting from a **Claim** alleging a **Wrongful Act**.

### DEFENSE

(a) The **Insurer** has the  right and duty to defend a  **Suit** for a **Wrongful Act**,  even if the **Suit** is groundless, false or fraudulent.

(b) The **Insurer** has the right to investigate any **Claim**.

(c) The **Insurer's** duty  to defend ends if  an **Insured** refuses to consent  to a settlement that the  **Insurer** recommends  pursuant  to the  **SETTLEMENT**  provision below and that the  claimant will  accept.   As a consequence of  such **Insured's**  refusal, the **Insurer's** liability  shall  not exceed  the  amount  for which  the  **Insurer** could  have settled such **Claim** had such **Insured** consented, plus **Defense Costs** incurred prior to the date of such refusal plus 50% of **Defense Costs** incurred with the **Insurer's** prior written consent after the  date of such refusal.   This Clause  shall not apply  to  any settlement where the total  incurred **Loss** does not  exceed the applicable Retention amount.

© All rights reserved.

**SETTLEMENT**

(a) The **Insurer** has the right, with the written consent of an **Insured**, which consent shall not be unreasonably withheld, to settle any **Claim** if the **Insurer** believes that it is proper.

(b) An **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

2.  **DEFINITIONS**

(a) " **Bodily Injury**" means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **Claim**" means:

(1) a written demand for money, services, non-monetary relief or injunctive relief; or
(2) a **Suit**.

(c) " **Defense Costs**" means all reasonable and necessary fees charged by an attorney appointed by the **Insurer** (unless otherwise provided for by this policy) in connection with any **Suit** brought against an **Insured** alleging a **Wrongful Act**, as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by the **Insurer** or by an **Insured** with the **Insurer's** written consent. **Defense Costs** shall not include: (i) compensation of any natural person **Insured**; or (ii) any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(d) " **Insured**" means:

(1) a **Company**;
(2) any past, present or future officer, director, trustee or employee of a **Company** (and in the event that a **Company** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof), but only while acting within the scope of his or her duties in connection with the provision of **Material** for such **Company**;
(3) any independent contractors, agents, third-party distributors, licensees and sub-licensees, but only:
    (i)    with respect to **Material** that they provide to a **Company**; and

MNSCPT                                          2

© All rights reserved.

      (ii)    when such **Company** has, prior to the commission of a **Wrongful Act**, expressly agreed in writing to indemnify and defend such party against liability arising out of such **Wrongful Act;**

(4) any person or entity that a **Company** has expressly agreed in writing, prior to the commission of a **Wrongful Act**, to add as an **Insured** under this policy, but only for the **Wrongful Acts** of a **Company;** and

(5) any other person or entity listed as an **Insured** by endorsement to this policy, but only for the **Wrongful Acts** of a **Company**.

(e) " **Loss**" means compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages.

(f) " **Material**" means media content in any form, including, without limitation, advertising and written, printed, video, electronic, digital or digitized content, of:

(1) broadcasts, including without limitation, broadcasts via television, motion picture, cable, satellite television, radio, wireless devices or the Internet; or

(2) publications, including without limitation, publications via newspaper, newsletter, magazine, book and other literary, monograph, brochure, directory, screen play, film script, playwright and video publications.

*(g)* " **Pollutants** " means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(h) " **Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(i) " **Suit**" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured** must submit or does submit with the **Insurer's** consent.

(j) " **Third Party Event**" means any **Wrongful Act**.

© All rights reserved.

(k) "**Wrongful Act**" means any act, error, omission, negligent supervision of an employee, misstatement or misleading statement by an **Insured** in connection with **Material** (including without limitation, any of the foregoing conduct in the gathering, collection, broadcast, creation, distribution, exhibition, performance, preparation, printing, production, publication, release, display, research, or serialization of **Material** by an **Insured**) that results solely in:

(1) infringement of copyright, title, slogan, trademark, trade name, trade dress, mark, service mark, service name, infringement of domain name, deep-linking or framing, including, without limitation, unfair competition in connection with such conduct;

(2) plagiarism, piracy or misappropriation or theft of ideas under implied contract or other misappropriation or theft of ideas or information; including, without limitation, unfair competition in connection with such conduct;

(3) invasion, infringement or interference with rights of privacy or publicity, false light, public disclosure of private facts, intrusion and commercial appropriation of name, persona or likeness; including, without limitation, emotional distress or mental anguish in connection with such conduct;

(4) defamation, libel, slander, product disparagement or trade libel or other tort related to disparagement or harm to character or reputation; including, without limitation, unfair competition, emotional distress or mental anguish in connection with such conduct;

(5) wrongful entry or eviction, trespass, eavesdropping or other invasion of the right to private occupancy, or false arrest, detention or imprisonment or malicious prosecution; including, without limitation, any emotional distress or mental anguish in connection with such conduct;

(6) negligent or intentional infliction of emotional distress, outrage or *prima facie* tort in connection with **Material**; or

(7) **Loss** because a third party, which has no ownership relationship with any **Insured**, acts upon or makes a decision or decisions based on the content of the **Material** disseminated by an **Insured** or with an **Insured's** permission.

3. **EXCLUSIONS**

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

(a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law; provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit**, adverse finding of fact against an **Insured** in a binding arbitration proceeding, or plea of guilty or no contest by an **Insured** as to such conduct, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

© All rights reserved.

(b) alleging, arising out of, based upon or attributable to any misappropriation of trade secret or infringement of patent.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**, or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

(d) alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**.

(e) alleging, arising out of, based upon or attributable to any:

    (1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;
    (2) strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;
    (3) electrical or mechanical failures of infrastructure not under the control of an **Insured**, including any electrical power interruption, surge, brownout or blackout;
    (4) failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an **Insured**; or
    (5) satellite failure.

(f) alleging, arising out of, based upon or attributable to any:

    (1) purchase, sale, or offer or solicitation of an offer to purchase or sell securities;
    (2) violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law;
    (3) violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

© All rights reserved.

     (4) antitrust violations, restraint of trade, unfair competition, or violations of the Sherman Act, Clayton Act or the Robinson-Patman Act, as amended; provided, however, that this exclusion shall not apply to unfair competition as referenced in sub-paragraphs (1), (2) or (4) of the definition of **Wrongful Act**; or

     (5) violation of the Telephone Consumer Protection Act of 1991, as amended.

(g) alleging, arising out of, based upon or attributable to an **Insured's** employment of any individual or any of an **Insured's** employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim).

(h) alleging, arising out of, based upon or attributable to any unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection laws; provided, however, this exclusion shall not apply to **Claims** in connection with the collection of **Material**.

(i) brought by or on behalf of:

     (1) any **Insured**;

     (2) any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an **Insured**; or

     (3) any parent company, **Subsidiary**, successor or assignee of an **Insured**, or any person or entity affiliated with an **Insured** or such business entity through common **Management Control**;

   provided, however, this exclusion shall not apply to an **Insured** as described in Sub-paragraph (d)(4) or (d)(5) of the definition of **Insured**.

(j) for any of the following:

     (1)  the return of an **Insured's** fees or compensation;

     (2)     any profit or advantage to which an **Insured** is not legally entitled;

     (3)  an **Insured's** expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;

     (4)  civil or criminal fines or penalties imposed against an **Insured** and any matters deemed uninsurable under the law pursuant to which this policy shall be construed;

     (5)  an **Insured's** costs and expenses of complying with any injunctive or other form of equitable relief;

     (6)  taxes incurred by an **Insured**;

     (7)  the amounts for which an **Insured** is not financially liable or which are without legal recourse to any **Insured**;

     (8)  production costs or the cost of recall, reproduction, reprinting, return or correction of M aterial by any person or entity; or

© All rights reserved.

(9) amounts an **Insured** agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties.

(k) alleging, arising out of, based upon or attributable to any obligation that an **Insured** has under a contract other than liability from a **Wrongful Act** where such liability has been assumed by an **Insured** in the form of a written hold harmless or indemnity agreement that predates the first such **Wrongful Act.**

(l) alleging, arising out of, based upon or attributable to any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein.

(m) alleging, arising out of, based upon or attributable to (1) false advertising or misrepresentation in advertising of an **Insured's** products or services, (2) any failure of goods, products or services to conform with an advertised quality or performance, or (3) any infringement of trademark or trade dress by any goods, products or services displayed or contained in any **Material**.

(n) brought by or on behalf of: (i) ASCAP, SESAC, BMI, RIAA or other music licensing organizations; (ii) the Federal Trade Commission; (iii) the Department of Health and Human Services or Office of Civil Rights; (iv) the Federal Communications Commission; or (v) any other federal, state, local or foreign government, agency or office.

(o) brought by or on behalf of any independent contractor, third-party distributor, licensee, sub-licensee, joint venturer, venture partner, any employee of the foregoing, or any employee or agent of an **Insured** alleging, arising out of, based upon or attributable to disputes over the (i) ownership or exercise of rights in **Material**; or (ii) services supplied by such independent contractor, third-party distributor, licensee, sub-licensee, joint venturer, venture partner or employee or agent.

(p) alleging, arising out of, based upon or attributable to any infringement of copyright related to software, source code or software license; provided, however, that this exclusion shall not apply to any otherwise covered **Claim** alleging an infringement of copyright, trademark or servicemark with respect to **Material** generated or displayed in a publication or broadcast by the use of software.

(q) alleging, arising out of, based upon or attributable to the failure to protect information used for authenticating or identifying an **Insured's** customers, vendors, suppliers or independent contractors in the normal course of an **Insured's** business.

(r) alleging, arising out of, based upon or attributable to any:

© All rights reserved.

(1) accounting or recovery of profits, royalties, fees or other monies claimed to be due from an **Insured**, or any **Claim** brought by any such party against an **Insured** claiming excessive or unwarranted fees, compensation or charges of any kind made by an **Insured**; or

(2) licensing fees or royalties ordered, directed or agreed to be paid by an **Insured** pursuant to a judgment, arbitration award, settlement agreement or similar order or agreement, for the continued use of a person or entity's copyright, title, slogan, trademark, trade name, trade dress, service mark, service name, or other intellectual property right.

## 4. RELATED ACTS

This policy shall not apply to any **Loss** arising out of, based upon or attributable to any **Wrongful Act** committed prior to the **Continuity Date** or after the **Last Termination Date**; however, if a **Claim** alleges **Wrongful Acts** involving the repeated or continuous dissemination, publication or broadcast of **Material** which was disseminated, published or broadcasted prior to the **Continuity Date** or after the **Last Termination Date**, and such **Material** was also disseminated, published or broadcasted (i.e., **Related Acts**) after the **Continuity Date** and prior to the **Last Termination Date**, this policy shall apply to **Related Acts**, and only **Related Acts**, which occur after the **Continuity Date** and prior to the **Last Termination Date**. The **Insurer's** maximum liability shall be limited to that portion of the total **Loss** which the number of **Related Acts** occurring after the **Continuity Date** and prior to the **Last Termination Date** bears to the total number of **Related Acts** upon which the **Claim** is made. For the purposes of this **Coverage Section** and any policy of the **Insurer** that this **Coverage Section** renews or replaces, all **Related Acts** occurring after the **Continuity Date** and prior to the **Last Termination Date** shall be deemed to have occurred at the time of the first such **Related Act**.

Solely for purposes of this Clause in this **Coverage Section**, (a) "**Insurer**" shall also include any insurance company affiliated with the **Insurer**, and (b) "**Last Termination Date**" means the expiration date of the policy period of the final policy issued by the **Insurer** which affords such coverage.

© All rights reserved.

Network Interruption Insurance
(" Network Interruption Coverage Section")

**This is an Occurrence Coverage Section and a First Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms and Conditions**, the **General Terms and Conditions** are incorporated by reference into, made a part of and are expressly applicable to this **Network Interruption Coverage Section**, unless otherwise explicitly stated to the contrary in the **General Terms and Conditions** or in this **Network Interruption Coverage Section**.

1.   **INSURING AGREEMENTS**

With respect to the **NETWORK INTERRUPTION INSURING AGREEMENT** of this Clause 1., solely with respect to a **Security Failure** first occurring during the **Policy Period** and reported to the **Insurer** pursuant to the terms of this policy, this **Network Interruption Coverage Section** affords the following coverage:

**NETWORK INTERRUPTION INSURING AGREEMENT**

The **Insurer** shall pay all **Loss** in excess of the **Remaining Retention** that an **Insured** incurs after the **Waiting Hours Period** and solely as a result of a **Security Failure**.

2.   **DEFINITIONS**

(a) " **Bodily Injury**" means physical injury, sickness or disease and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **Computer System**" means any computer hardware, software or any components thereof that are under the ownership, operation or control of a **Company** or an **Outsource Provider**, or leased by a **Company,** and linked together through a network of two or more devices accessible through the Internet, internal network or connected with data storage or other peripheral devices.

(c) " **First Party Event**" means any **Security Failure**.

(d) " **Insured**" means a **Company**.

(e) " **Loss**" means the below listed costs incurred within 120 days after the end of a **Material Interruption** (or 120 days after the **Material Interruption** would have ended if an **Insured** exercised due diligence and dispatch):

(1) costs that would not have been incurred but for a **Material Interruption**; and
(2)    the sum of all of following, which shall be calculated on an hourly basis:

© All rights reserved.

> (a) Net Income (Net Profit or Loss before income taxes) that would have been earned; and
>
> (b) Continuing normal operating expenses incurred, including payroll.

(f) " **Material Interruption**" means the actual and measurable interruption or suspension of an **Insured's** business directly caused by a **Security Failure**.

(g) " **Outsource Provider**" means an entity not owned, operated or controlled by an **Insured** that such **Insured** depends on to conduct its business.

(h) " **Pollutants** " means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(i) " **Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(j) " **Remaining Retention**" means the Retention set forth in Item 6 of the Declarations for this **Network Interruption Coverage Section** less the amount of **Loss** incurred by any **Insured** during the **Waiting Hours Period**. If the **Loss** incurred by any **Insured** during the **Waiting Hours Period** is greater than the applicable Retention set forth in the Declarations, the **Remaining Retention** equals zero.

(k) " **Security Failure**" means a failure or violation of the security of a **Computer System**, including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code. " **Security Failure**" includes any such failure or violation resulting from the theft of a password or access code from a **Company's** premises, a **Company's Computer System**, or an officer, director or employee of a **Company** by non-electronic means in direct violation of a **Company's** specific written security policies or procedures.

(l) " **Waiting Hours Period**" means the number of hours set forth in Item 6 of the Declarations that must elapse once a **Material Interruption** has begun.

© All rights reserved.

3.    **EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss**:

(a) alleging, arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by any of an **Insured's**:

    (1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or

    (2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by an **Insured** if any of those referenced in Sub-paragraph (1) above participated in, approved of, acquiesced to, or knew or had reason to know prior to the act of, the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured** or any other person.

(b) alleging, arising out of, based upon or attributable to any misappropriation or theft of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**; (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**; or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

(d) alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**.

(e) alleging, arising out of, based upon or attributable to any:

    (1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;

    (2) war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions; or

    (3) satellite failure.

© All rights reserved.

(f) alleging, arising out of, based upon or attributable to any seizure, confiscation, nationalization, or destruction of a **Computer System** by order of any governmental or public authority.

(g) alleging, arising out of, based upon or attributable to any **Security Failure** or **Related Act** thereto which has been reported, or in any circumstances of which notice has been given, under any policy of which this **Network Interruption Coverage Section** is a renewal or replacement or which it may succeed in time.

(h)　　for any profit or advantage to which any **Insured** is not legally entitled.

(i) alleging, arising out of, based upon or attributable to: (1) any liability to third-parties for whatever reason; (2) legal costs or legal expenses of any type; (3) updating, upgrading, enhancing, or replacing any **Computer System** to a level beyond that which existed prior to sustaining **Loss**; (4) unfavorable business conditions; or (5) the removal of software program errors or vulnerabilities.

## 4.　LIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. **LIMIT OF LIABILITY** of the **General Terms and Conditions**:

Notwithstanding anything in the policy to the contrary, the maximum liability of the **Insurer** for all **Loss** arising from a **Security Failure** of the **Computer System** of an **Outsource Provider** shall be $100,000. This amount shall be part of and not in addition to the **Limit of Liability** or any applicable **Sublimit of Liability**.

## 5. RETENTION

The following provisions shall apply in addition to the provisions of Clause 5. **RETENTION** of the **General Terms and Conditions**:

Solely with respect to this **Network Interruption Coverage Section**, the applicable Retention shall be the **Remaining Retention**.

## 6. NOTICE

In addition to the applicable items of Clause 6. **NOTICE** of the **General Terms and Conditions**, and before coverage will apply for **Loss** under this **Network Interruption Coverage Section**, each **Insured** must also:

© All rights reserved.

(a) complete and sign  a written, detailed and  affirmed proof of loss  within ninety (90) days after the discovery of any  **Loss** (unless such period has been  extended by the **Insurer** in writing) which shall include, among any other pertinent information:

   (1)   a full  description of such **Loss**  and the circumstances  surrounding such **Loss**, which shall include,  among any  other necessary information,  the time,  place and cause of the **Loss**;

   (2)   a detailed calculation of any **Loss**; and

   (4)   all underlying documents and materials that reasonably  relate to or form a part of the basis of the proof of such **Loss.**

(b)     upon the **Insurer's** request, submit to an examination under oath.

(c) immediately record the  specifics of any **Loss**  or **Security Failure** and  the date such **Insured** first became aware of such  **Loss** or **Security Failure**.

(d) provide  the  **Insurer**  with any  cooperation  and  assistance that the  **Insurer**  may request, including assisting the **Insurer** in:

   (1)   any investigation of a **Security Failure**, **Loss** or circumstance;

   (2)   enforcing any  legal rights an  **Insured** or the  **Insurer** may have  against anyone who may be liable to an **Insured;**

   (3)   executing any documents that  the **Insurer** deem necessary to secure  its rights under this policy; and

   (4)   any calculation or  appraisal conducted by or on  behalf of the **Insurer** pursuant to this **Network Interruption Coverage Section.**

All adjusted claims shall be due and payable thirty (30)  days after the presentation and written acceptance by the **Insurer** of satisfactory proof of **Loss** to the  address set forth in the **General Terms and Conditions**.  The costs and  expenses of establishing or proving an **Insured's Loss** under this  **Network Interruption Coverage Section**, including, without limitation, those connected with preparing a proof of loss, shall be such **Insured's** obligation, and are not covered under this policy.

## 7. NET PROFIT CALCULATIONS

© All rights reserved.

In determining the amount of net profit (or net loss) and charges and expenses covered hereunder for the purpose of ascertaining the amount of **Loss** (and otherwise) under this **Network Interruption Coverage Section**, due consideration shall be given to the prior experience of an **Insured's** business before the beginning of the **Security Failure** and to the probable business an **Insured** could have performed had no **Security Failure** occurred. Provided, however, that such net profit (or net loss) calculations shall not include, and this policy shall not cover, net income that would likely have been earned as a result of an increase in volume of business due to favorable business conditions caused by the impact of **Security Failures** on other businesses. All such net profit (or net loss) and charges and expenses shall be calculated on an hourly basis and based on such an **Insured's** actual net profit (or net loss) and charges and expenses.

8.   **APPRAISAL**

If any **Insured** and the **Insurer** disagree on the amount of **Loss**, either may make a written demand for an appraisal of such **Loss**. If such demand is made, each party will select a competent and impartial appraiser. The appraisers will then jointly select an umpire. If the appraisers cannot agree on an umpire, they may request that selection be made by a judge of a court having jurisdiction. Each appraiser will separately state the amount of **Loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two of these three will be binding.

Such **Insured** and the **Insurer** will:

   (1)   pay their respective chosen appraiser; and
   (2)   bear the expenses of the umpire equally.

Any appraisal of **Loss** shall be calculated in accordance with all terms, conditions and exclusions of this policy.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Security and Privacy Liability Insurance**
**(" Security and Privacy Coverage Section")**

**This is a Claims Made and Reported Coverage Section and a Third Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms  and Conditions**, the **General Terms and Conditions** are incorporated by reference into,  made a part of and are  expressly applicable to this **Security and  Privacy Coverage  Section**, unless  otherwise explicitly  stated to the contrary in  the **General  Terms  and Conditions**  or in  this **Security and  Privacy Coverage Section**.

## 1.    INSURING AGREEMENTS

With respect to  the **SECURITY AND  PRIVACY INSURING AGREEMENT**,  the **DEFENSE** provisions and  the **SETTLEMENT**  provisions of  this Clause  1., solely  with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period**  (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, this **Security and Privacy Coverage Section** affords the following coverage:

**SECURITY AND PRIVACY INSURING AGREEMENT**

The **Insurer**  shall  pay on an  **Insured's** behalf all **Loss** in excess  of the  applicable Retention that such **Insured** is legally obligated  to pay resulting from a **Claim** alleging  a **Security Failure** or a **Privacy Event**.

**DEFENSE**

(a) The **Insurer** has the  right and duty to  defend a **Suit** or **Regulatory  Action** alleging a **Security Failure**  or a **Privacy Event**, even if the **Suit**  or  **Regulatory Action** is groundless, false or fraudulent.

(b) The **Insurer** has the right to investigate any **Claim**.

(c) The **Insurer's** duty  to defend ends if  an **Insured** refuses to consent  to a settlement that the  **Insurer** recommends  pursuant to the  **SETTLEMENT**  provision below and that the claimant  will accept.    As a consequence  of such  **Insured's** refusal, the **Insurer's** liability  shall  not exceed  the amount  for which  the  **Insurer** could have settled such **Claim** had such **Insured** consented, plus **Defense Costs** incurred prior to the date  of such  refusal, plus  50% of  **Defense Costs**  incurred with  the **Insurer's** prior written consent after the  date of such refusal.   This Clause shall not apply  to any  settlement where  the  total incurred  **Loss** does  not exceed  the applicable Retention amount.

MNSCPT                                1

© All rights reserved.

**SETTLEMENT**

(a) The **Insurer** has the right, with the written consent of an **Insured**, which consent shall not be unreasonably withheld, to settle any **Claim** if the **Insurer** believes that it is proper.

(b) An **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

## 2.    DEFINITIONS

(a) " **Bodily Injury**" means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **Claim**" means:

(1)    a written demand for money, services, non-monetary relief or injunctive relief;

(2)    a **Suit**; or

(3)    a **Regulatory Action**.

(c) " **Computer System**" means any computer hardware, software or any components thereof that are under the ownership, operation or control of, or that is leased by, a **Company** and are linked together through a network of two or more devices accessible through the Internet, internal network or connected with data storage or other peripheral devices.

(d) " **Confidential Information**" means any of the following in a **Company's** or **Information Holder's** care, custody and control or for which a **Company** or **Information Holder** is legally responsible:

(1) information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;

(2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations;

(3) information concerning an individual that would be considered "protected health information" within Health Insurance Portability and Accountability Act of 1996 (as amended) and its implementing regulations;

(4) information used for authenticating customers for normal business transactions;

© All rights reserved.

(5) any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

(e) " **Defense Costs**" means all reasonable and necessary fees charged by an attorney appointed by the **Insurer** (unless otherwise provided for by this policy) in connection with any **Suit** or **Regulatory Action** brought against an **Insured**, as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by the **Insurer** or by an **Insured** with the **Insurer's** written consent. **Defense Costs** shall not include: (i) compensation of any natural person **Insured**; or (ii) any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(f) " **Information Holder**" means a third party that a **Company** has provided **Confidential Information** to.

(g) " **Insured**" means:

(1) a **Company**;
(2) any past, present or future officer, director, trustee or employee of a **Company** acting in their capacity as such (and in the event a **Company** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof acting in their capacity as such); and
(3) any entity which a **Company** is required by contract to add as an **Insured** under this **Security and Privacy Coverage Section**, but only for the acts of such **Company** that result in a **Security Failure** or a **Privacy Event**.

(h) " **Loss**" means compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including without limitation:

(1) punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages; and
(2) any monetary amounts an **Insured** is required by law or has agreed to by settlement to deposit into a consumer redress fund.

(i) " **Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

© All rights reserved.

(j)  **"Privacy Event"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period:**

    (1) any failure to protect **Confidential Information** (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which results in an identity theft or other wrongful emulation of the identity of an individual or corporation;

    (2) failure to disclose an event referenced in Sub-paragraph (1) above in violation of any **Security Breach Notice Law**; or

    (3) violation of any federal, state, foreign or local privacy statute alleged in connection with a **Claim** for compensatory damages, judgments, settlements, pre-judgment and post-judgment interest from Sub-paragraphs (1) or (2) above.

(k)  **" Property Damage"** means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(l)  **" Regulatory Action"** means a request for information, civil investigative demand or civil proceeding brought by or on behalf of a governmental agency, including requests for information related thereto.

(m) **" Security breach notice law"** means any statute or regulation that requires an entity storing **Confidential Information** on its **Computer System**, or any entity that has provided **Confidential Information** to an **Information Holder**, to provide notice of any actual or potential unauthorized access by others to **Confidential Information** stored on such **Computer System**, including but not limited to, the statute known as California SB 1386 (§1798.82, *et. Al.* of the California Civil Code).

(n)  **" Security Failure"** means the following occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period:**

    (1) a failure or violation of the security of a **Computer System** including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code;

    (2) physical theft of hardware controlled by a **Company** (or components thereof) on which electronic data is stored, by a person other than an **Insured**, from a premises occupied and controlled by a **Company**; or

    (3) failure to disclose an event referenced in Sub-paragraphs (1) or (2) above in violation of any **Security Breach Notice Law.**

© All rights reserved.

" **Security Failure**" includes any such failure or violation, resulting from the theft of a password or access code from an **Insured's** premises, the **Computer System**, or an officer, director or employee of a **Company** by non-electronic means in direct violation of a **Company's** specific written security policies or procedures.

(o) " **Suit**" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured** must submit or does submit with the **Insurer's** consent.

(p) " **Third Party Event**" means a **Security Failure** or **Privacy Event**.

### 3.   EXCLUSIONS

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

(a) alleging, arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by an **Insured's** or **Information Holder's**:

(1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or

(2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by an **Insured** or an **Information Holder** if any of those referenced in Sub-paragraph (1) above knew or had reason to know prior to the act of, participated in, approved of or acquiesced to the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured**, **Information Holder** or any other person;

provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct by such person, and that are not otherwise excluded, until there is a final judgment or final adjudication against such person in a **Suit**, adverse finding of fact against such person in a binding arbitration proceeding or plea of guilty or no contest by such person as to such conduct, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

(b) alleging, arising out of, based upon or attributable to any infringement of patent.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**, or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

© All rights reserved.

(d) alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**.

(e) alleging, arising out of, based upon or attributable to any:

    (1) fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;

    (2) strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

    (3) electrical or mechanical failures of infrastructure not under the control of an **Insured**, including any electrical power interruption, surge, brownout or blackout; provided, however, this Sub-paragraph (3) shall not apply to a **Security Failure** or a **Privacy Event** that is caused by such electrical or mechanical failure;

    (4) failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an **Insured**; provided, however, this Sub-paragraph (4) shall not apply to a **Security Failure** or a **Privacy Event** that is caused by such failure of telephone lines, data transmission lines or other infrastructure comprising or supporting the Internet; or

    (5) satellite failure.

(f) alleging, arising out of, based upon or attributable to any:

    (1) purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

    (2) violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; provided, however, this exclusion does not apply to a **Claim** alleging a **Privacy Event** in violation of Regulation S-P (17 C.F.R. § 248); provided further, however, this exclusion does not apply to a **Claim** alleging a failure to disclose a **Security Failure** or **Privacy Event** in violation of any **Security Breach Notice Law**; or

    (3) violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

© All rights reserved.

(g) alleging, arising out of, based upon or attributable to an **Insured's** employment of any individual or any of an **Insured's** employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim).

(h) alleging, arising out of, based upon or attributable to antitrust, unfair competition, restraint of trade, including, without limitation, violations of any local, state or federal laws governing same, or that is brought by or on behalf of the Federal Trade Commission ("FTC") or any other federal, state or local government agency, or foreign government agency; provided, however, solely with respect to unfair competition, and notwithstanding Clause 3. **EXCLUSIONS**, Sub-paragraphs (j)(5) and (j)(6), this Paragraph (h) shall not apply to any **Defense Costs** arising out of a covered **Regulatory Action**.

(i) brought by or on behalf of:

   (1) any **Insured**;
   (2) any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an **Insured**; or
   (3) any parent company, **Subsidiary**, successor or assignee of an **Insured**, or any person or entity affiliated with an **Insured** or such business entity through common **Management Control**;

   provided, however, this exclusion shall not apply to (i) an **Insured** as described in Sub-paragraph (g)(3) of the definition of **Insured**; or (ii) an **Insured** as described in Sub-paragraph (g)(2) of the definition of **Insured** but only to the extent such **Insured** is alleging a **Privacy Event** or a failure to disclose a **Security Failure** or **Privacy Event** in violation of any **Security Breach Notice Law**.

(j) for any of the following:

   (1) the return of an **Insured's** fees or compensation;
   (2) any profit or advantage to which an **Insured** is not legally entitled;
   (3) an **Insured's** expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;
   (4) an **Insured's** cost of providing, correcting, re-performing or completing any services;
   (5) civil or criminal fines or penalties imposed by law against an **Insured** and any matters deemed uninsurable under the law pursuant to which this policy shall be construed; provided, however, this Sub-paragraph (5) shall not apply to any monetary amounts an **Insured** is required by law or has agreed to by settlement to deposit into a consumer redress fund;
   (6) an **Insured's** costs and expenses of complying with any injunctive or other form of equitable relief;
   (7) taxes incurred by an **Insured**;

© All rights reserved.

(8) the amounts for which an **Insureds** is not financially liable or which are without legal recourse to any **Insured**;

(9) amounts an **Insured** agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties.

(k) alleging, arising out of, based upon or attributable to any obligation an **Insured** has under contract; provided, however, this exclusion shall not apply to:

   (1) the obligation to prevent a **Security Failure** or a **Privacy Event**, including without limitation, whether same is in violation of an implied or statutory standard of care;

   (2) liability an **Insured** would have in the absence of such contract or agreement; or

   (3) with respect to a **Privacy Event**, any liability or obligation under a confidentiality or non-disclosure agreement;

(l) alleging, arising out of, based upon or attributable to any **Security Failure** or **Privacy Event**, or any **Related Acts** thereto, alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **Security and Privacy Coverage Section** is a renewal or replacement or which it may succeed in time.

(m) alleging, arising out of, based upon or attributable to any **Security Failure** or **Privacy Event** occurring prior to the **Retroactive Date** or any **Related Acts** thereto, regardless of when such **Related Act** occurs.

(n) alleging, arising out of, based upon or attributable to any **Security Failure** or **Privacy Event** occurring prior to the **Continuity Date**, or any **Related Act** thereto (regardless of when such **Related Act** occurs), if, as of the **Continuity Date**, an **Insured** knew or could have reasonably foreseen that such **Security Failure** or a **Privacy Event** did or would result in a **Claim** against an **Insured.**

(o) alleging, arising out of, based upon or attributable to any seizure, confiscation, nationalization, or destruction of a **Computer System** by order of any governmental or public authority.

(p) for (1) the theft of money or securities from an **Insured**; or (2) the transfer or loss of money or securities from or to an **Insured's** accounts or accounts under an **Insured's** control, including customer accounts. For purposes of this Sub-paragraph (q), the term "accounts" shall include, but are not limited to, deposit, credit, debit, prepaid and securities brokerage accounts.

4.   **LIMIT OF LIABILITY**

© All rights reserved.

The following provisions shall apply in addition to the provisions of Clause 4. **LIMIT OF LIABILITY** of the **General Terms and Conditions**:

Notwithstanding anything in the policy to the contrary, the maximum liability of the **Insurer** for all **Loss** arising from a **Regulatory Action** shall be the **Regulatory Action Sublimit of Liability** set forth in Item 6 of the Declarations. This amount shall be part of and not in addition to the **Limit of Liability** and any applicable **Sublimit of Liability**.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**Specialty Professional Liability Insurance**
**(" SPL Coverage Section")**

**This is a Claims Made and Reported Coverage Section and a Third Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms  and Conditions**, the **General Terms and Conditions** are incorporated by reference into,  made a part of and are  expressly applicable to this **SPL Coverage Section**, unless otherwise  explicitly  stated  to  the contrary  in  the **General Terms and Conditions** or in this **SPL Coverage Section**.

1.    **INSURING AGREEMENTS**

With respect to the **ERRORS  AND OMISSIONS INSURING AGREEMENT,**  the **DEFENSE** provisions and  the **SETTLEMENT**  provisions  of  this  Clause  1.,  solely  with respect  to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period**  (if applicable) and reported  to the  **Insurer** pursuant  to the terms  of this  policy, this **SPL Coverage Section** affords the following coverage:

**ERRORS  AND OMISSIONS INSURING AGREEMENT**

The **Insurer** shall  pay  on  an  **Insured's**  behalf  all  **Loss**  in  excess  of the  applicable Retention that such **Insured** is legally obligated  to pay resulting from a **Claim** alleging  a **Wrongful Act.**

**DEFENSE**

(a) The **Insurer** has the  right and duty to defend a  **Suit** for a **Wrongful Act**,  even if the **Suit** is groundless, false or fraudulent.

(b) The **Insurer** has the right to investigate any **Claim**.

(c) The **Insurer's** duty  to defend ends if  an **Insured** refuses to consent  to a settlement that the  **Insurer** recommends  pursuant  to the **SETTLEMENT**  provision below and that the  claimant will accept.   As a consequence  of  such **Insured's**  refusal, the **Insurer's** liability  shall  not exceed  the  amount  for which  the  **Insurer** could  have settled such **Claim** had such **Insured** consented, plus **Defense Costs** incurred prior to the  date  of such  refusal, plus  50% of  **Defense Costs**  incurred with  the **Insurer's** prior written consent after the  date of such refusal.   This Clause shall not apply  to any  settlement  where  the  total  incurred  **Loss**  does  not  exceed  the  applicable Retention amount.

**SETTLEMENT**

© All rights reserved.

(a) The **Insurer** has the right, with the written consent of an **Insured**, which consent shall not be unreasonably withheld, to settle any **Claim** if the **Insurer** believes that it is proper.

(b) An **Insured** may settle any **Claim** on behalf of all **Insureds** to which this insurance applies and which are subject to one Retention amount where the total incurred **Loss** does not exceed the Retention amount.

2.  **DEFINITIONS**

(a) " **Bodily Injury**" means physical injury, sickness or disease, and, if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **Claim**" means:

(1)    a written demand for money, services, non-monetary relief or injunctive relief; or
(2)    a **Suit**.

(c) " **Defense Costs**" means all reasonable and necessary fees charged by an attorney appointed by the **Insurer** (unless otherwise provided for by this policy), as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by the **Insurer** or by an **Insured** with the **Insurer's** written consent. **Defense Costs** shall not include: (i) compensation of any natural person **Insured**; or (ii) any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

(d) " **Insured**" means:

(1)    a **Company**;
(2) any past, present or future officer, director, trustee, employee or leased worker of a **Company** acting in their capacity as such (and in the event a **Company** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof acting in their capacity as such); and
(3) any entity which a **Company** is required by contract to add as an **Insured** under this **SPL Coverage Section**, but only for the **Wrongful Acts** of a **Company**.

(e) " **Loss**" means compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages.

© All rights reserved.

(f) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(g) "**Professional Services**" means those services described and set forth by endorsement to this **SPL Coverage Section**.

(h) "**Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(i) "**Suit**" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured** must submit or does submit with the **Insurer's** consent.

(j) "**Third Party Event**" means any **Wrongful Act**.

(k) "**Wrongful Act**" means any negligent act, error or omission, misstatement or misleading statement in an **Insured's** performance of **Professional Services** for others occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

## 3.   EXCLUSIONS

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

(a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law; provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit**, adverse finding of fact against an **Insured** in a binding arbitration proceeding or plea of guilty or no contest by an **Insured** as to such conduct, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

(b) alleging, arising out of, based upon or attributable to any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

© All rights reserved.

(c) alleging, arising out of, based upon or attributable to  any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release  or escape of **Pollutants**, or (3) direction  or  request  to  test  for,  monitor,  clean  up,  remove,  contain,  treat, detoxify or neutralize pollutants, or  in any way respond  to or assess the  effects of **Pollutants**.

(d) alleging, arising out  of, based upon  or attributable  to any **Bodily  Injury** or **Property Damage**;

(e) alleging, arising out of, based upon or attributable to any:

(1) fire,  smoke,  explosion,  lightning,  wind,  water,  flood,  earthquake,  volcanic eruption, tidal  wave,  landslide, hail,  act of God  or  any other  physical  event, however caused;

(2) strikes or similar labor action,  war, invasion, act of foreign  enemy, hostilities or warlike operations (whether declared  or  not), civil war, mutiny, civil  commotion assuming  the  proportions of  or  amounting to  a  popular rising,  military  rising, insurrection, rebellion, revolution, military or usurped power, or any action  taken to hinder or defend against these actions;

(3) electrical or  mechanical  failures of  infrastructure not  under  the control  of  an **Insured**, including any electrical power interruption, surge, brownout or blackout;

(4) failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an **Insured**; or

(5) satellite failure.

(f) alleging, arising out of, based upon or attributable to any:

(1) purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

(2) violation of any securities  law, including  the Securities  Act of 1933,  as amended,  or  the Securities  Exchange  Act of 1934, as  amended, or  any regulation promulgated  under the foregoing  statutes,  or any federal,  state or local laws similar to the foregoing statutes (including "Blue Sky"  laws), whether such law is statutory, regulatory or common law; or

(3) violation of  the  Organized  Crime Control  Act  of 1970 (commonly  known  as Racketeer  Influenced And  Corrupt Organizations Act,  or "RICO"),  as  amended, or any  regulation  promulgated  thereunder  or  any federal,  state or local  law similar to the  foregoing, whether  such law is  statutory, regulatory  or common law.

(g) alleging, arising  out of, based  upon or  attributable to  an **Insured's** employment  of any individual  or any  of an **Insured's** employment  practices (including,  without limitation, wrongful dismissal, discharge or termination,  discrimination, harassment, retaliation or other employment-related claim).

© All rights reserved.

(h) alleging, arising out of, based upon or attributable to antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection laws.

(i) brought by or on behalf of:

   (1) any **Insured**;
   (2) any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an **Insured**; or
   (3) any parent company, **Subsidiary**, successor or assignee of an **Insured**, or any person or entity affiliated with an **Insured** or such business entity through common **Management Control**.

provided, however, this exclusion shall not apply to an **Insured** as described in Sub-paragraph (d)(3) of the definition of **Insured**.

(j) for any of the following:

   (1) the return of an **Insured's** fees or compensation;
   (2) any profit or advantage to which an **Insured** is not legally entitled;
   (3) an **Insured's** expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;
   (4) an **Insured's** cost of providing, correcting, re-performing or completing any **Professional Services**;
   (5) the monetary value of any electronic fund transfer or transaction by an **Insured** or on an **Insured's** behalf, which is lost or diminished during transfer into, out of or between an **Insured's** accounts;
   (6) civil or criminal fines or penalties imposed by law against an **Insured** and any matters deemed uninsurable under the law pursuant to which this policy shall be construed;
   (7) an **Insured's** costs and expenses of complying with any injunctive or other form of equitable relief;
   (8) taxes incurred by an **Insured**;
   (9) the amounts for which an **Insured** is not financially liable or which are without legal recourse to any **Insured**;
   (10) amounts an **Insured** agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties.

(k) alleging, arising out of, based upon or attributable to any obligation an **Insured** has under contract; provided, however, this exclusion shall not apply to:

   (1) the obligation to perform **Professional Services**; or
   (2) liability an **Insured** would have in the absence of a contract, including without limitation, the obligation to conform **Professional Services** to any implied or statutory standards of care.

© All rights reserved.

(l) alleging, arising out of, based upon or attributable to any **Wrongful Act**, or any **Related Acts** thereto, alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **SPL Coverage Section** is a renewal or replacement or which it may succeed in time.

(m) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Retroactive Date,** or any **Related Act** thereto, regardless of when such **Related Act** occurs.

(n) alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Continuity Date,** or any **Related Act** thereto (regardless of when such **Related Act** occurs), if, as of the **Continuity Date**, an **Insured** knew or could have reasonably foreseen that such **Wrongful Act** did or would result in a **Claim** against such **Insured.**

(o) alleging, arising out of, based upon or attributable to any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein.

(p) alleging, arising out of, based upon or attributable to false advertising or misrepresentation in advertising.

(q) brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; provided, however, this exclusion shall not apply where the **Claim** is alleging a **Wrongful Act** in an **Insured's** performance of **Professional Services** for such entity.

(r) alleging, arising out of, based upon or attributable to:

    (1)    false arrest, detention or imprisonment;
    (2)    libel, slander or defamation of character;
    (3)    wrongful entry or eviction;
    (4)    malicious prosecution; or
    (5)    invasion of any right of privacy.

(s) alleging, arising out of, based upon or attributable to an **Insured's** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance.

[The balance of this page is intentionally left blank.]

© All rights reserved.

**CrisisFund® Insurance**
**(" CrisisFund Coverage Section")**

**This is an Occurrence Coverage Section and a First Party Coverage Section**

Notice: Pursuant to Clause 1 of the **General Terms  and Conditions**, the **General Terms and Conditions** are incorporated by reference into,  made a part of and are  expressly applicable to this **CrisisFund  Coverage Section**, unless  otherwise explicitly  stated to the  contrary in the **General Terms and Conditions** or in this **CrisisFund Coverage Section**.

1.   **INSURING AGREEMENTS**

With respect to the **CRISISFUND INSURING AGREEMENT** of this  Clause 1., solely with respect to a **CrisisFund Event** first occurring during the **Policy Period** and reported to the **Insurer** pursuant to  the terms of  this policy,  this **CrisisFund Coverage  Section** affords the following coverage:

**CRISISFUND INSURING AGREEMENT**

The **Insurer** shall pay  all **Loss** that  an **Insured** incurs  solely as  a  result of a  **CrisisFund Event**.

2.   **DEFINITIONS**

(a) " **Bodily Injury**" means physical injury, sickness or disease, and,  if arising out of  the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

(b) " **CrisisFund Event**" means any of the following:

(1) **Management Crisis**: The death,  incapacity or  criminal indictment  of any directors, trustees or officers, including, but not  limited to, the executive director, or any employee on whom an **Insured**  maintains key person life insurance.
(2) **Bankruptcy**:   The public announcement that an **Insured** intends to file for bankruptcy protection under the bankruptcy laws or that third  parties are seeking to file for involuntary bankruptcy on behalf of such **Insured**.
(3) **Contribution Revocation**: The withdrawal  or return  of any  non-governmental grant, contribution or bequest to  an **Insured** in excess of  five hundred thousand dollars ($500,000).
(4) **Regulatory Crisis**:  The public announcement of  the commencement or threat of commencement of litigation or governmental, regulatory  or criminal proceedings against an **Insured**.

© All rights reserved.

(5) **Mass Tort**: The public announcement or accusation that an **Insured**, in the conduct of its business, has caused the **Bodily Injury** of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(6) **Publicity Event**: The publication of materially unfavorable information in a newspaper (or other general circulation) or on a radio or television news report regarding an **Insured** that can reasonably be considered to lessen public confidence in the competence, integrity or viability of such **Insured** to conduct business.

(c) " **First Party Event**" means a **CrisisFund Event**.

(d) " **Insured**" means a **Company**.

(e) " **Loss**" means the following reasonable expenses necessitated by or in connection with an **Insured's** response to a **CrisisFund Event**, and incurred by an **Insured** during a **CrisisFund Event**, within ninety (90) days prior to and in anticipation of a **CrisisFund Event**, and/or within one year of the end of a **CrisisFund Event**:

(1) for a public relations firm, crisis management firm or law firm agreed to by the **Insurer** to advise an **Insured** on minimizing the harm to such **Insured**, including, but not limited to, maintaining and restoring public confidence in such **Insured**;

(2) for printing, advertising, mailing of materials intended to inform or educate the general public about the **CrisisFund Event**;

(3)      for travel;

provided, however, **Loss** shall not include compensation, fees, benefits, overhead or internal charges of any **Insured**.

(f) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

## 3.    EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss**:

(a) arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by an **Insured's**:

© All rights reserved.

(1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or

(2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by an **Insured** if any of those referenced in Sub-paragraph (1) above participated in, approved of or acquiesced to, or knew or had reason to know prior to the act of, the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured** or any other person.

(b) alleging, arising out of, based upon or attributable to any **CrisisFund Event** related to (1) any pending or prior litigation as of the **Continuity Date** for this **CrisisFund Coverage Section**, or (2) any **Related Act** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **CrisisFund Coverage Section** is a renewal or replacement or which it may succeed in time.

(c) alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**; (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**; or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

## 4. OTHER CRISISFUND INSURANCE

In the event that an **Insured** has purchased another insurance policy from the **Insurer** providing similar coverage to this **CrisisFund Coverage Section**, then the highest applicable limit of insurance for such coverage among this policy and such other policies shall apply, and in all circumstances, the Insurer's maximum liability for such coverage shall not be greater than the highest limit of insurance for such coverage among all such policies.

[The balance of this page is intentionally left blank.]

MNSCPT                                        3

© All rights reserved.

**Bankers Professional Liability Insurance**
**(" BPL Coverage Section")**

**This is a Claims Made and Reported Coverage Section and a Third Party Coverage Section**

<u>Notice</u>: Pursuant to Clause 1 of the **General Terms  and Conditions**, the **General Terms and Conditions** are incorporated by reference into,  made a part of and are  expressly applicable to this **BPL Coverage  Section**, unless otherwise  explicitly  stated  to the contrary  in  the **General Terms and Conditions** or in this **BPL Coverage Section**.

1.  **INSURING AGREEMENTS**

With respect to the **ERRORS AND OMISSIONS INSURING AGREEMENT**, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the  **Insurer** pursuant to the terms of this policy, this **BPL Coverage Section** affords the following coverage:

**ERRORS AND OMISSIONS INSURING AGREEMENT**

The **Insurer**  shall pay  on an  **Insured's** behalf  all  **Loss** in excess of  the applicable Retention that such  **Insured**  is legally obligated to pay resulting from a  **Claim** alleging a **Wrongful Act**.  The  **Insurer** may, in its sole discretion,  and in accordance with and subject to Clause 4, **DEFENSE COSTS,  SETTLEMENTS AND JUDGMENTS (INCLUDING THE ADVANCEMENT  OF DEFENSE  COSTS)**, advance  **Defense Costs** of such **Claim** prior to its final disposition.

2.  **DEFINITIONS**

(a)  " **Bodily Injury**" means physical injury, sickness or disease, and, if arising  out of the foregoing, mental  anguish, mental injury,  shock, humiliation or  death at any time.

(b)  " **Claim**" means:

(1)  a written  demand  for  money, services,  non-monetary  relief or injunctive relief; or

(2)  a **Suit**.

(c)  " **Defense Costs**" means all  reasonable  and necessary  fees  charged by  an attorney appointed  by  the  **Insurer**  (unless  otherwise provided  for  by this policy), as  well  as  all  other  reasonable  and necessary fees,  costs  and expenses (including  premiums  for  any  appeal bond,  attachment  bond  or similar bond arising out of a covered judgment, but without  any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a **Claim** by  the **Insurer** or  by an **Insured**  with the **Insurer's**  written consent. **Defense Costs**  shall  not  include:  (i)  compensation of any  natural  person **Insured**; or (ii) any  fees, costs or expenses  incurred prior to  the time that  a **Claim** is first made against an **Insured**.

MNSCPT                                    1

© All rights reserved.

(d)   " **Insured**" means:

    (1)   a **Company**;

    (2)   any past, present or future officer, director, trustee, employee or leased worker of a **Company** acting in their capacity as such (and in the event a **Company** is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof acting in their capacity as such); and

    (3)   any entity which a **Company** is required by contract to add as an **Insured** under this **BPL Coverage Section**, but only for the **Wrongful Acts** of a **Company**.

(e)   " **Loss**" means compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**, including punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages.

(f)   "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(g)   " **Professional Services**" means the following services:

    (1)   transfer agent services;

    (2)   proxy administration services;

    (3)   stock option administration services;

    (4)   direct stock registration services; and

    (5)   retirement plan administration services.

(h)   " **Property Damage**" means damage to, loss of use of or destruction of any tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

(i)   " **Suit**" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding to which an **Insured** must submit or does submit with the **Insurer's** consent.

(j)   " **Third Party Event**" means any **Wrongful Act**.

(k)   " **Wrongful Act**" means any negligent act, error or omission, misstatement or misleading statement in an **Insured's** performance of **Professional Services** for others occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

© All rights reserved.

3.     **EXCLUSIONS**

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

(a)     alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any conflict of interest, acting in bad faith or intentional or knowing violation of the law; provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit**, adverse finding of fact against an **Insured** in a binding arbitration proceeding or plea of guilty or no contest by an **Insured** as to such conduct, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

(b)     alleging, arising out of, based upon or attributable to any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right.

(c)     alleging, arising out of, based upon or attributable to any (1) presence of **Pollutants**, (2) the actual or threatened discharge, dispersal, release or escape of **Pollutants**, or (3) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of **Pollutants**.

(d)     alleging, arising out of, based upon or attributable to any **Bodily Injury** or **Property Damage**;

(e)     alleging, arising out of, based upon or attributable to any:

    (1)     fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused;

    (2)     strikes or similar labor action, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular rising, military rising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

    (3)     electrical or mechanical failures of infrastructure not under the control of an **Insured**, including any electrical power interruption, surge, brownout or blackout;

    (4)     failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an **Insured**; or

    (5)     satellite failure.

(f)     alleging, arising out of, based upon or attributable to any:

© All rights reserved.

(1)    purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

(2)    violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

(3)    violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law.

(g)    alleging, arising out of, based upon or attributable to an **Insured's** employment of any individual or any of an **Insured's** employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim).

(h)    alleging, arising out of, based upon or attributable to antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including, without limitation, violations of any local, state or federal consumer protection laws.

(i)    brought by or on behalf of:

(1)    any **Insured**;

(2)    any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an **Insured**; or

(3)    any parent company, **Subsidiary**, successor or assignee of an **Insured**, or any person or entity affiliated with an **Insured** or such business entity through common **Management Control**;

provided, however, this exclusion shall not apply to an **Insured** as described in Sub-paragraph (d)(3) of the definition of **Insured**.

(j)    for any of the following:

(1)    the return of an **Insured's** fees or compensation;

(2)    any profit or advantage to which an **Insured** is not legally entitled;

(3)    an **Insured's** expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;

(4)    an **Insured's** cost of providing, correcting, re-performing or completing any **Professional Services**;

© All rights reserved.

    (5)    the monetary value of any electronic fund transfer or transaction by an **Insured** or on an **Insured's** behalf, which is lost or diminished during transfer into, out of or between an **Insured's** accounts;

    (6)    civil or criminal fines or penalties imposed by law against an **Insured** and any matters deemed uninsurable under the law pursuant to which this policy shall be construed;

    (7)    an **Insured's** costs and expenses of complying with any injunctive or other form of equitable relief;

    (8)    taxes incurred by an **Insured**;

    (9)    the amounts for which an **Insured** is not financially liable or which are without legal recourse to any **Insured**; or

    (10)    amounts an **Insured** agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties.

(k)    alleging, arising out of, based upon or attributable to any obligation an **Insured** has under contract; provided, however, this exclusion shall not apply to:

    (1)    the obligation to perform **Professional Services**; or

    (2)    liability an **Insured** would have in the absence of a contract, including without limitation, the obligation to conform **Professional Services** to any implied or statutory standards of care.

(l)    alleging, arising out of, based upon or attributable to any **Wrongful Act**, or any **Related Acts** thereto, alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **BPL Coverage Section** is a renewal or replacement or which it may succeed in time.

(m)    alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Retroactive Date**, or any **Related Act** thereto, regardless of when such **Related Act** occurs.

(n)    alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring prior to the **Continuity Date**, or any **Related Act** thereto (regardless of when such **Related Act** occurs), if, as of the **Continuity Date**, any personnel in a **Company's** office of the (i) Chief Executive Officer; (ii) Chief Financial Officer; (iii) Risk Manager; (iv) General Counsel; (v) Chief Information Officer; or (vi) Chief Security Officer knew or could have reasonably foreseen that such **Wrongful Act** did or would result in a **Claim** against an **Insured**.

© All rights reserved.

(o)   alleging, arising out of, based upon or attributable to any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein.

(p)   alleging, arising out of, based upon or attributable to false advertising or misrepresentation in advertising.

(q)   brought by or on behalf of any federal, state or local government agency, quasi-governmental or self-regulatory entity, or professional or trade licensing organizations, whether directly or indirectly, and whether brought in its capacity as receiver, conservator, liquidator, security holder or assignee of an **Insured**, an **Insured's** security holders, an **Insured's** depositors or creditors or in any other capacity and whether brought in its own name or in the name of any other entity; provided, however, this exclusion shall not apply where the **Claim** is alleging a **Wrongful Act** in an **Insured's** performance of **Professional Services** for such entity.

(r)   alleging, arising out of, based upon or attributable to:

    (1)   false arrest, detention or imprisonment;

    (2)   libel, slander or defamation of character;

    (3)   wrongful entry or eviction;

    (4)   malicious prosecution; or

    (5)   invasion of any right of privacy.

(s)   alleging, arising out of, based upon or attributable to an **Insured's** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance.

(t)   alleging, arising out of, based upon or attributable to the bankruptcy of, or suspension of payment by, any broker or dealer in securities or commodities, or any bank or banking firm other than the **Company**.

(u)   brought by or on behalf of or in the right of any other insurer providing coverage to an **Insured** to recoup all or a portion of any amounts paid by such insurer whether by subrogation, assignment or otherwise.

(v)   brought by or on behalf of or in the right of any security holder of an **Insured** when such **Claim** is based upon, arises out of, or pertains to any interest in said security or when such **Claim** is brought derivatively on the behalf of or in the right of an **Insured**.

© All rights reserved.

(w)   arising out of, alleging or in any way involving, directly or indirectly the purchase, sale, participation, grant, commitment, restructure, termination, transfer, repossession or foreclosure of any loan, lease or extension of credit, or any failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease or extension of credit.

(x)   arising out of, alleging or in any way involving, directly or indirectly, the underwriting, syndicating or promotion of any debt or equity security, or any investment banking activity, or the rendering of advice or recommendations regarding such debt or equity securities or regarding any actual, attempted or threatened: merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, reorganization (voluntary or involuntary), capital restructuring, recapitalization, spin-offs, primary or secondary offerings of securities (regardless of whether the offering is a public offering or private placement), dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity, or the rendering of a "fairness opinion" regarding the valuation of any assets or business entity not held by an **Insured** as trustee, or any acquisition or sale of securities by an **Insured** for an **Insured's** own account, or any disclosure requirements in connection with any of the foregoing.

(y)   arising out of or alleging any use by an **Insured** of, or actual of alleged aiding or abetting by an **Insured's** in the use of, or actual or alleged participation after the fact by an **Insured** in the use of, non-public information in a manner prohibited by the laws of the United States including but not limited to the Insider Trading and Securities Fraud Enforcement Act of 1988 (as amended), Section 10(b) of the Securities Exchange Act of 1934 (as amended) and Rule 10(b)(5) thereunder, any state, commonwealth, territory or subdivision thereof, or the laws of any other jurisdiction, or any rules or regulations promulgated under any of the foregoing.

(z)   arising out of, alleging, or in any way involving, directly or indirectly, the hazardous properties of nuclear material including but not limited to the actual, alleged, threatened or potential ionizing radiations or contamination by radioactive, toxic, explosive or hazardous properties of any explosive nuclear assembly or nuclear component thereof. Hazardous properties include but are not limited to radioactive, toxic or explosive properties.

**4.   DEFENSE COSTS, SETTLEMENTS AND JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

© All rights reserved.

(a)     The **Insurer** does not have the duty to defend any **Suit** or investigate any **Claim**. The **Insurer** may, in its absolute discretion, assume the defense of any **Suit** or investigate any **Claim**. In the event the **Insurer** elects to assume the defense of a **Suit** or investigate a **Claim**, (1) the **Insurer** shall pay the **Defense Costs** of such **Suit** or **Claim**, subject to the **Sublimit of Liability** for this **Coverage Section** and the applicable Retention and (2) the **Insurer** shall not be obligated to continue to defend any **Suit** or investigate any **Claim** upon the exhaustion of the **Limit of Liability** or the **Sublimit of Liability** for this **Coverage Section..** The **Insured** shall reimburse the **Insurer** for any **Defense Costs** incurred by the **Insurer** to the extent of the applicable Retention or which the **Insured** is not otherwise entitled under the terms and conditions of this policy to payment of such **Loss**.

(b)     The **Insurer** does not have the duty to advance **Defense Costs** prior to the final disposition of a **Suit**; provided, however, the **Insurer** may, in its absolute discretion, advance all or part of any **Defense Costs** prior to the final disposition of a **Suit**. If the **Insurer** elects to advance such **Defense Costs**, the **Insureds** agree to repay such **Defense Costs** in the event that the **Insured** is not otherwise entitled under the terms and conditions of this policy to payment of such **Defense Costs**.

(c)     The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with an **Insured** in the defense and settlement of any **Claim**. The **Insured** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

(d)     Neither **Insurer** nor any **Insured** shall admit or assume any liability, enter into any settlement or stipulate to any judgment without the prior written consent of the other. If the **Insurer** recommends the settlement of a **Claim**, which is agreeable to the claimant, and an **Insured** refuses to consent to such settlement: (1) the **Insurer's** liability shall not exceed the amount for which the **Insurer** could have settled such **Claim** had such **Insured** consented, plus **Defense Costs** incurred prior to the date of such refusal, plus 50% of **Defense Costs** incurred with the **Insurer's** prior written consent after the date of such refusal and (2) the **Insurer** shall withdraw from the defense of such **Suit** or **Claim**, provided, that the **Insurer** had elected to assume the defense of such **Suit** or **Claim**.

(e)     The **Insurer** shall not be liable for any **Loss** in connection with any settlements, stipulated judgments or **Defense Costs**, which have not been consented to by the **Insurer**. The **Insurer's** consent shall not be unreasonable withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense and negotiation of any settlement of any **Claim**, or, in the **Insurer's** absolute discretion, assume the defense and/or investigation of any **Claim** that appears reasonably likely to exceed the Retention amount.

[The balance of this page is intentionally left blank.]

MNSCPT                                   8

© All rights reserved.

## ENDORSEMENT# *1*

This endorsement, effective at *12:01 am    April 30, 2015*        forms a part of
Policy No. *01-274-16-88*
Issued to: *SS&C TECHNOLOGIES HOLDINGS INC*

By: *AIG Specialty Insurance Company*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay
any claim or provide any benefit hereunder to the extent that the provision of such cover,
payment of such claim or provision of such benefit would expose the Insurer, its parent
company or its ultimate controlling entity to any sanction, prohibition or restriction under
United Nations resolutions or the trade or economic sanctions, laws or regulations of the
European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
*END 001*
Page 1 of 1

89644 (6/13)

ENDORSEMENT# *2*

This endorsement, effective *12:01 am*      *April 30, 2015*      forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

## CONNECTICUT CANCELLATION/NONRENEWAL
## AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the
insurance company which issued this policy;  and 2) "you", "your", "named Insured", and
"Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named
Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all
other persons or entities afforded coverage under the policy.

The cancellation condition is deleted in its entirety and replaced by the following:

A.    CANCELLATION

1.    The Named Insured may cancel this policy by mailing or delivering to the
Insurer advance written notice of cancellation.

2.    Cancellation of policies in effect for less than sixty (60) days.

a.    If this policy has been in effect for less than sixty (60) days and is not
a renewal of a policy the Insurer issued, the Insurer may cancel this
policy for any reason by giving the Insured written notice of
cancellation at least:

(1)    Ten (10) days before the effective date of cancellation if the
Insurer cancels for nonpayment of premium; or
(2)    Thirty (30) days before the effective date of cancellation if the
Insurer cancels for any other reason.

b.    Notice of cancellation will state the reasons for cancellation.

3.    Cancellation of policies in effect for sixty (60) days or more.

a.    If this policy has been in effect for sixty (60) days or more or this is a
renewal of a policy the Insurer issued, the Insurer may cancel this
policy by giving the Named Insured written notice of cancellation at
least:

(1)    Ten (10) days before the effective date of cancellation if the
Insurer cancels for one or more of the following reasons:

(a)    Nonpayment of premium;

◊ All rights reserved.

### *END 002*

**ENDORSEMENT#** *2*   (continued)

(b)   Conviction of a crime arising out of acts increasing the hazard insured against;

(c)   Discovery of fraud or material misrepresentation by the Named Insured  or Other Insured(s) in obtaining the policy or in perfecting any claim under the policy;

(d)   Discovery of any willful or reckless act or omission by the Named Insured or Other Insured(s) increasing the hazard insured against; or

(e)   Determination by the Commissioner that continuation of policy would violate/place the Insurer in violation of the law;

(2)   Sixty (60) days before the effective date of cancellation if the Insurer cancels for:

(a)   Physical changes in the property which increase the hazard insured against;

(b)   Substantial loss of reinsurance by the Insurer affecting this line of insurance; or

(c)   A material increase in the hazard insured against.

b.   The Insurer may not cancel policies in effect for sixty (60) days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

4.   At least ninety (90) days advance notice of cancellation will be given for any professional liability policy.

5.   The Insurer will give notice to the Insured at the Insured's last mailing address known to the Insurer, sent by registered or certified mail, or mail evidenced by a United States Post Office certificate of mailing, or delivered by the Insurer to the Named Insured by the required date.

6.   Notice of cancellation will state the effective date of cancellation.   The policy period will end on that date.

7.   If this policy is cancelled, the Insurer will send the Named Insured any premium refund due.  If the Insurer cancels, the refund will be pro rata.  If the Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Insurer has not made or offered a refund.  Notice of Cancellation will state that the excess premium (if not tendered) will be refunded on demand.

8.   The Commissioner of Insurance will receive written notification at least sixty (60) days prior to the cancellation of a contractual policy that is used with warranty products.

B.   NONRENEWAL

1.   If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured a written notice of nonrenewal, stating the

◊ All rights reserved.
**END 002**

**ENDORSEMENT#** *2*   (continued)

reason for nonrenewal, at least sixty (60) days before the expiration date of this policy.  The notice will be sent to the address of the Named Insured last known to the Insurer .

2.   At least ninety (90) days advance notice of nonrenewal will be given for any professional liability policy.

3.   This notice will be delivered or sent by:

(a)   Registered mail;
(b)   Certified mail; or
(c)   Mail evidenced by a certificate of mailing.

If notice is mailed, proof of mailing is sufficient proof of notice.

4.   However, the Insurer is not required to send this notice if nonrenewal is due to non-payment of premium, or to the Named Insured's failure to pay any advance premium required for renewal.

All other terms, conditions and exclusions shall remain the same.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
**END 002**

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 am     April 30, 2015*      forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

**NOTICE OF CLAIM
(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
Claim Reporting under this policy, such notice may also be given in writing pursuant
to the policy's other terms and conditions to the Insurer by email at the following
email address:

c-claim@AIG.com

Your email must reference the policy number for this policy. The date of the
Insurer's receipt of the emailed notice shall constitute the date of notice.

In addition to Notice of Claim Reporting via email, notice may also be given to the
Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947,
Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

(a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
specifically ascribed in this policy as the insurance company or underwriter for
this policy.

(b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
loss" or other reference in the policy designated for reporting of claims, loss
or occurrences or situations that may give rise or result in loss under this
policy.

(c)   "Policy" means the policy, bond or other insurance product to which this
endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
***END 003***

## ENDORSEMENT# *4*

This endorsement, effective   *12:01 am   April 30, 2015*        forms a part of
Policy number   *01-274-16-88*
Issued to: *SS&C TECHNOLOGIES HOLDINGS INC*

By:     *AIG Specialty Insurance Company*

### CYBEREDGE LOSS PREVENTION SERVICES ENDORSEMENT

In consideration of your purchase of this policy, it is hereby understood and agreed that the **Named Entity** is eligible to:

    (1) subscribe to the CyberEdge RiskTool and AutoShun® loss control services; and
    (2) receive an IBM infrastructure vulnerability scan.

The **Named Entity** can begin the process of registering and activating the CyberEdge RiskTool, AutoShun and/or IBM vulnerability scan by visiting the following site: www.aig.com/cyberedgeregistration .

CyberEdge RiskTool is a web-based platform that can assist in streamlining a company's risk management process.  CyberEdge RiskTool is pre-populated with training modules to aid in educating staff on security protocols and preventing human error which might cause future security breaches.   The platform is also customizable and can be tailored to a business's risk management needs.

AutoShun is a device designed to provide an additional layer of security against various forms of malware.   The AutoShun thwarts attacks by blocking inbound and outbound communications with known "bad" IP addresses.   AutoShun works with RiskTool to provide the user with real time information on blocked IP addresses.

The IBM vulnerability scan is a remote search of the **Named Entity's** web-facing external infrastructure, including up to 49 public-facing IP addresses.   The scan identifies and prioritizes potential vulnerabilities that could be exploited by a remote hacker and provides the **Named Entity** with a report which identifies threats and suggests responses.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.

*END 004*

## ENDORSEMENT# *5*

This endorsement, effective  *12:01 am*      *April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to    *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

### MODIFIED INVESTMENT ADVISOR EXCLUSION ENDORSEMENT

#### This endorsement amends all Coverage Sections.

In consideration of the premium charged, it is hereby understood and agreed that Clause 3. **EXCLUSIONS** of each **Coverage Section** is amended  to include the following at the  end of the Clause:

This policy shall  not cover  **Loss** in connection  with a   **Claim** made  against an **Insured** alleging, arising out of, based upon or attributable to:

INV (a)  the  exercise  of  any  authority  or  discretionary  control  by  an  **Insured**  with respect  to  any  client's  funds  or  accounts.    Provided,  however,  that  this exclusion shall  not  apply  to any  **Claim**  arising  out of  your  performance  of **Professional Services.**   Notwithstanding the foregoing sentence, it is expressly understood and agreed that there shall be  no coverage for the monetary value of  any  funds  lost  due  to  the  **Insured's**  exercise  of  such  authority  or discretionary control;

INV (b)  the commingling of funds or monies;

INV (c)  an **Insured**  providing investment  advice or  selecting an  investment  manager, investment advisory or custodial firm;

INV (d)  an **Insured**  advising as  to, promising or  guaranteeing  the  future value  of any investment or any rate of return or interest; or

INV (e)  the failure of any investment to perform as expected or desired.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT                                                           *END 5*

## ENDORSEMENT# 6

This endorsement, effective *12:01 am*     *April 30, 2015*        forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*


by     *AIG Specialty Insurance Company*

### OPTIONAL DISCOVERY PERIOD AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector ®**
**General Terms and Conditions**

In consideration of the premium charged, it is hereby understood and agreed that in Clause **9. DISCOVERY** of the **General Terms and Conditions**, paragraph (b) is deleted in its entirety and replaced with the following:

(b)   ***Optional Discovery Period***: Except as indicated below, if the **Named Entity** or the **Insurer** shall cancel or refuse to renew this policy or in the event of a **Transaction** (as that term is defined in Clause 10. below), the **Named Entity** shall have the right to a period of up to three (3) years following the effective date of such cancellation or nonrenewal (an **"Optional Discovery Period"**), upon payment of an additional premium amount of up to:

(i)   *One hundred* percent (*100*%) of the full annual premium, for a period of one (1) year,

(ii)   *One hundred fifty* percent (*150*%) of the full annual premium, for a period of two (2) years, or

(iii)   *Two hundred* percent (*200*%) of the full annual premium, for a period of three (3) years,

in which to give written notice to the **Insurer** of **Claims** first made against an **Insured** during the **Optional Discovery Period** for any **Third Party Events** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

If the **Named Entity** exercises its right to purchase an **Optional Discovery Period**, that period incepts at the end of the **Policy Period** and there shall be no **Automatic Discovery Period**.

As used herein, "full annual premium" means the premium amount set forth in the Declarations as such, plus an additional premium charged for any endorsements to this policy.

© All rights reserved.
*END 006*

**ENDORSEMENT#** *6*    (continued)

The right to purchase an **Optional Discovery Period** shall terminate unless written notice of election, together with any additional premium due, is received by the **Insurer** no later than thirty (30) days after the effective date of the cancellation, nonrenewal or **Transaction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 006*

105168 (4/10)                    Page 2 of 2

## ENDORSEMENT# *7*

This endorsement, effective *12:01 am*      *April 30, 2015*          forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

### PERSONAL PERIL COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector ®**
**SPL Coverage Section**

In consideration of the premium charged it is hereby understood and agreed that the **SPL Coverage Section** is amended as follows:

1.   In Clause 2. **DEFINITIONS**, paragraph (k), the definition of **"Wrongful Act"**, is amended to include the following at the end thereof:

**"Wrongful Act"** includes any negligent act, error or omission, misstatement or misleading statement in an **Insured's** performance of **Professional Services** for others, occurring on or after the **Retroactive Date** and prior to the end of the **Policy Period**, which results in:

   1.   false arrest, detention or imprisonment;
   2.   libel, slander or defamation of character;
   3.   wrongful entry or eviction; or
   4.   invasion of any right of privacy.

2.   In Clause 3. **EXCLUSIONS**, paragraph (r) is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 007*

103519 (11/09)                  Page 1 of 1

## ENDORSEMENT# 8

This endorsement, effective  12:01 am      April 30, 2015        forms a part of
policy number   01-274-16-88
issued to     SS&C TECHNOLOGIES HOLDINGS INC

by      AIG Specialty Insurance Company

### LISTED SUBSIDIARIES ENDORSEMENT
### (Separate Retroactive Dates and Continuity Dates)

**This endorsement amends the General Terms and Conditions.**

In consideration of the premium charged, it is hereby understood and agreed that the definition of " **Subsidiary**" in paragraph (t) of Clause 2. **DEFINITIONS** of the **General Terms and Conditions** is amended to include the following entities:

| SUBSIDIARY | CONTINUITY DATE | RETROACTIVE DATE |
|---|---|---|
| GlobeOp Financial Services S.A. | 05/31/2012 | 05/31/2012 |

Notwithstanding any other terms and conditions of this policy, (1) with respect to each **Subsidiary** listed above, the terms " **Continuity Date**" and " **Retroactive Date**" defined in Clause 2., **DEFINITIONS**, paragraphs (d) and (r), respectively, shall mean the respective dates set forth above for each **Subsidiary** above and not the dates stated as such in Item 6 of the Declarations; and (2) this policy shall only cover **Loss** arising out of a **First Party Event** or **Third Party Event** against or involving a **Subsidiary** listed above occurring or allegedly occurring after the **Retroactive Date** set forth in this endorsement for such **Subsidiary** and prior to the time that the **Named Entity** ceases to have **Management Control** of such **Subsidiary**.

ALL OTHER TERMS CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT

**END 8**

ENDORSEMENT# *9*

This endorsement, effective *12:01 am    April 30, 2015*        forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by    *AIG Specialty Insurance Company*

### SUBSIDIARY THRESHOLD AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**
**General Terms and Conditions**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 2. **DEFINITIONS** of the **General Terms and Conditions**, paragraph (u)("**Subsidiary**"),
subparagraphs (2) and (3) are deleted in their entirety and replaced with the following:

(2)    any for-profit entity of which the **Named Entity** acquires **Management
Control** during the **Policy Period**, either directly or indirectly, whose gross
revenues for the most recent fiscal year prior to the inception of this policy
do not exceed *Fifteen* percent ( *15*%) of the aggregate gross revenues of the
**Companies** for the most recent fiscal year prior to the inception date of this
policy;

(3)    any for-profit entity of which the **Named Entity** acquires **Management
Control** during the **Policy Period**, either directly or indirectly, whose gross
revenues for the most recent fiscal year prior to the inception of this policy
exceed *Fifteen* percent ( *15*%) of the aggregate gross revenues of the
**Companies** for the most recent fiscal year prior to the inception date of this
policy, but only once (a) the **Named Entity** shall have provided the **Insurer**
with full particulars of such entity and agreed to any additional premium and
amendments to this policy relating to such entity; and (b) the **Insurer** has
ratified its acceptance of such entity as a **Subsidiary** by endorsement to this
policy; and

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
**END 009**

101641 (12/13)                      Page 1 of 1

ENDORSEMENT# *10*

This endorsement, effective  *12:01 am*      *April 30, 2015*       forms a part of
policy number   *01-274-16-88*
issued to    *SS&C TECHNOLOGIES HOLDINGS INC*

by    *AIG Specialty Insurance Company*

### PENDING AND PRIOR LITIGATION EXCLUSION ENDORSEMENT
### (EXCESS LIMITS)

### This endorsement amends the Media Content Coverage Section
### and the SPL Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.    With respect to the $3,000,000 in excess of $7,000,000   of the **Sublimit of Liability** of the **Media Content Coverage Section**  as set forth in Column 2 of Item 6 of the Declarations, the **Insurer** shall not  be liable for  any **Loss** in connection with any **Claim** made against any **Insured**:

    (1)    alleging, arising out of  or resulting, directly or  indirectly, from, as  of September 30, 2006 any pending  or prior: (1) **Claim**, demand,  **Suit**, arbitration, mediation or  litigation, or  (2) administrative, bankruptcy or regulating proceeding  or investigation, of which an  **Insured** had notice,  or alleging or derived from the same or  essentially the same facts as alleged  in such pending or prior **Claim**, demand, **Suit**, arbitration,  mediation or litigation or administrative, bankruptcy or regulating proceeding or investigation; or

    (2)    alleging, arising out of  or resulting, directly or  indirectly, from any  **Wrongful Act**, circumstance or  event committed, omitted or  occurring prior  to September 30, 2006 if on  or  before such  date **you** knew or  could have reasonably foreseen that such  **Wrongful Act**, circumstance or  event  could give rise to a **Claim** against an **Insured** or **Loss**.

2.    With respect to any **Wrongful Act** in connection  with **Internet Professional Services** or **Technology Services**, and  with respect to the  $3,000,000 in excess  of $7,000 000 of the **Sublimit of Liability** of  the **SPL Coverage Section** as set forth  in Column 2 of Item 6 of the  Declarations, the  **Insurer** shall  not be liable for any  **Loss** in connection with any  **Claim** made against any **Insured**:

    (1)    alleging, arising  out of  or resulting, directly or  indirectly, from, as  of September 30, 2006 any pending  or prior: (1) **Claim**, demand,  **Suit**, arbitration, mediation or  litigation, or  (2) administrative, bankruptcy or regulating proceeding  or investigation, of which an  **Insured** had notice,  or alleging or derived from the same or  essentially the same facts as alleged  in such pending or prior **Claim**, demand, **Suit**, arbitration,  mediation or litigation or administrative, bankruptcy or regulating proceeding or investigation; or

**END 10**

<u>ENDORSEMENT#</u> *10*   **(Continued)**

This endorsement, effective *12:01 am*     *April 30, 2015*        forms a part of
policy number   *01-274-16-88*
issued to   *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

   (2)   alleging, arising out of  or resulting, directly or  indirectly, from any  **Wrongful
         Act**, circumstance or  event  committed,  omitted or  occurring prior  to
         September 30,  2006 if on  or before such date **you** knew  or could  have
         reasonably foreseen  that such  **Wrongful Act**, circumstance or  event  could
         give rise to a **Claim** against an **Insured** or **Loss**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

*END 10*

## ENDORSEMENT# *11*

This endorsement, effective *12:01 am*      *April 30, 2015*      forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

### INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT
(Software IP Carveback)

#### This endorsement amends the SPL Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that, in Clause 3. **EXCLUSIONS**, paragraph (b) is deleted in its entirety and replaced with the following:

(b)     alleging, arising out of, based upon or attributable to any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right; provided, however, this exclusion shall not apply to infringement of copyright, trademark, or service mark of software or software technology in connection with the performance of **Professional Services**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
**END 011**

101666 (6/09)                    Page 1 of 1

ENDORSEMENT# *12*

This endorsement, effective *12:01 am*   *April 30, 2015*      forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by   *AIG Specialty Insurance Company*

**TECHNOLOGY SERVICES COVERAGE ENDORSEMENT**

**This endorsement amends the SPL Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that the SPL
Coverage Section of the policy is amended as follows:

1.   In Clause 2. **DEFINITIONS**, Paragraph (g), the definition of **"Professional Services"** is
     amended to include the following services:

     **Technology Services**.

2.   Clause 2. **DEFINITIONS** is amended by adding the following paragraph to the end
     thereof:

     TECH(a)  **"Technology Product"** means any computer hardware, firmware, software,
              or related electronic product, equipment or device, specifically designed or
              intended for use in connection with Sub-paragraphs TECH(b)(1) through
              TECH(b)(5) of the definition of **Technology Services.**

     TECH(b)  **"Technology Services"** means any computer or electronic information
              technology service, including without limitation:

              (1)  systems analysis, design, implementation and integration;
              (2)  software development and programming;
              (3)  data processing;
              (4)  management, repair, support and maintenance of software, computer
                   products, networks and systems;
              (5)  technology consulting services; and
              (6)  the creation, manufacture, development, distribution, license, lease,
                   sale or training in the use of any **Technology Product.**

3.   Solely with respect to the coverage afforded by this endorsement, Clause 3.
     **EXCLUSIONS** is amended by adding the following paragraph to the end thereof:

     This policy shall not cover **Loss** in connection with a **Claim** made against an
     **Insured:**

     TECH(a)  alleging, arising out of, based upon or attributable to any products liability,
              including without limitation, manufacturing defects or the failure to warn of
              such defects or product failures.

     TECH(b)  for any cost or expenses incurred by any person or entity to withdraw or
              recall **Technology Products** or **Technology Services** from the market place
              or from loss of use arising out of such withdrawal or recall.

◊ All rights reserved.
*END 012*

**ENDORSEMENT#** *12*   (continued)

TECH(c)  for the monetary value of any funds or securities transferred to or from any natural person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
**END 012**

ENDORSEMENT# *13*

This endorsement, effective *12:01 am     April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

### INTERNET PROFESSIONAL SERVICES COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector** ®
**SPL Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that the **SPL Coverage Section** of the policy is amended as follows:

1.   In Clause 2. **DEFINITIONS**, Paragraph (g), the definition of **"Professional Services"** is amended to include the following services:

**Internet Professional Services**.

2.   Clause 2. **DEFINITIONS** is amended by adding the following paragraph at the end thereof:

IPS(a)   **"Internet Professional Services"** means the following services provided by an **Insured**:

(1)   Internet hosting services;
(2)   e-commerce transaction services;
(3)   services provided as a Managed Service Provider (MSP) of computer network-based services;
(4)   services provided as an Internet Service Provider (ISP);
(5)   services provided as an Application Service Provider (ASP);
(6)   web portal services;
(7)   electronic exchange and auction services;
(8)   domain name services;
(9)   internet search engine services;
(10)  Public Key Infrastructure (PKI) services; and
(11)  cloud computing services.

3.   Solely with respect to the coverage afforded by this endorsement, Clause 3. **EXCLUSIONS** is amended by adding the following paragraph to the end thereof:

This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:

© All rights reserved.
*END 013*

## ENDORSEMENT# *13*

IPS(a)     for the monetary value of any funds or securities transferred to or from any
natural person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
**END 013**

103526 (12/09)                    Page 2 of 2

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am*      *April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

### MISCELLANEOUS PROFESSIONAL SERVICES ENDORSEMENT

#### This endorsement amends the SPL Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that, in
Clause 2. **DEFINITIONS** of the **SPL Coverage Section,** paragraph (g), the definition of
**"Professional Services"** is amended to include the following services:

1. *BUSINESS PROCESSING OUTSOURCING SERVICES INCLUDING FUND ADMINISTRATION
   SERVICES, REPORTING SERVICES, TRANSACTION PROCESSING SERVICES AND
   RECONCILIATION SERVICES*

2. *ACCOUNTING AND TAX CONSULTING SERVICES*

3. *MAINTENANCE OF ANTI-MONEY LAUNDERING COMPLIANCE PROCEDURES PREPARATION OF
   LOCAL AND STATUTORY TAX FILINGS*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
**END 014**

ENDORSEMENT# *15*

This endorsement, effective *12:01 am*     *April 30, 2015*          forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

### OTHER PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

#### This endorsement amends the SPL Coverage Section.

In consideration of the premium charged, it is hereby understood and agreed that, Clause
3. **EXCLUSIONS** of the **SPL Coverage Section** is amended to include the following
paragraph at the end thereof:

This policy does not cover **Loss** in connection with a **Claim** made against an
**Insured** alleging, arising out of, based upon or attributable to any **Insured's**
performance of or failure to perform the following professional services:

1.   *CPA SERVICES*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
*END 015*

103524  (11/09)                              Page 1 of 1

**ENDORSEMENT# *16***

This endorsement, effective *12:01 am*    *April 30, 2015*    forms a part of
policy number  *01-274-16-88*
issued to   *SS&C TECHNOLOGIES HOLDINGS INC*

by   *AIG Specialty Insurance Company*

**INITIAL PUBLIC OFFERING EXCLUSION ENDORSEMENT**

**This endorsement amends the CCP Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.
**EXCLUSIONS** of the **CCP Coverage Section** is amended by appending the following to the
end thereof:

> This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured
> Person** alleging, arising out of, based upon or attributable to any public offering of
> securities, including, but not limited to, any equity, debt or limited partnership
> interests, by a **Company** or any entity, or alleging, arising out of, based upon or
> attributable to any purchase or sale of such securities subsequent to such public
> offering.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*
_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT                                        *END 16*

**ENDORSEMENT#** *17*

This endorsement, effective *12:01 am*     *April 30, 2015*          forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

**INDEPENDENT CONTRACTOR ENDORSEMENT**

This endorsement modifies insurance provided under the following:

   **Specialty Risk Protector** ®
   **SPL Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that the definition of **"Insured"** in paragraph 2(d) of the **SPL Coverage Section** is amended to include the following at the end thereof:

   **"Insured"** also means any natural-person independent contractor, but only while acting on behalf of, or at the direction of, a **Company**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
**END 017**

105386 (4/10)                    Page 1 of 1

ENDORSEMENT# *18*

This endorsement, effective *12:01 am*     *April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

### NOTICE OF CLAIM PROVISION AMENDATORY ENDORSEMENT
### (SIXTY-DAY POST POLICY REPORTING PERIOD)

**This endorsement amends the General Terms and Conditions.**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 6. **NOTICE**, Paragraph (a), the second paragraph is deleted in its entirety and
replaced with the following:

Notwithstanding the foregoing and regardless of whether any personnel described in
(1) above has become aware, in all events each **Claim** under a **Claims-Made and
Reported Coverage Section** must be reported no later than either:

(1)   sixty (60) days after the end of the **Policy Period**; or
(2)   the end of any applicable **Discovery Period**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
***END 018***

ENDORSEMENT# *19*

This endorsement, effective *12:01 am*   *April 30, 2015*   forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by   *AIG Specialty Insurance Company*

**WRONGFUL COLLECTION COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**

**Security and Privacy Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that in Clause 2. **DEFINITIONS** of the **Security and Privacy Coverage Section**, Paragraph (l), the definition of **"Privacy Event"** is amended to include the following sentence at the end thereof:

**"Privacy Event"** also means the wrongful collection of **Confidential Information** by an **Insured** on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_(signature)_

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 019*

105163 (12/13)                            Page 1 of 1

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 am*     *April 30, 2015*      forms a part of
policy number  *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by    *AIG Specialty Insurance Company*

## E-DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**
**General Terms and Conditions**

In consideration of the premium charged, it is hereby understood and agreed that a **Company** may elect coverage for **E-Discovery Consultant Services**.  To provide such coverage, this policy is amended as follows:

### 1. E-DISCOVERY CONSULTANT SERVICES COVERAGE

The **Insurer** shall pay on a **Company's** behalf, the **E-Discovery Loss** of such **Company** arising from a **Suit** made against any **Insured** for a covered **Third Party Event**, for which **E-Discovery** is required or becomes necessary.

A **Company** may select a pre-approved **E-Consultant Firm** to perform **E-Discovery Consultant Services,** without further approval by the **Insurer,** at such time that it becomes necessary for such **Company** (or a natural person **Insured** employed by or affiliated with such **Company**) to respond to a discovery request.

Coverage for **E-Discovery Loss**, up to the **E-Discovery Sublimit of Liability**, shall not be subject to any Retention amount, provided that payment of any **E-Discovery Loss** pursuant to this endorsement shall not waive any rights of the **Insurer** under this policy or at law.

2. Clause 4. **LIMIT OF LIABILITY** of the **General Terms and Conditions** is amended by adding the following paragraphs to the end thereof:

The **Insurer's** maximum liability for all **E-Discovery Loss**, in the aggregate, arising from all **Suits** covered under this policy, shall be $25,000 (the **"E-Discovery Sublimit of Liability"**). This **E-Discovery Sublimit of Liability** shall be part of and not in addition to the **Limit of Liability** and will in no way serve to increase the **Limit of Liability**.

**E-Discovery Consultant Services** shall conclude once such services are no longer required or necessary or when the **E-Discovery Sublimit of Liability** has been exhausted, whichever comes first.

◊ All rights reserved.
**END 020**

ENDORSEMENT# *20*   (continued)

It is further understood and agreed that the coverage provided under this endorsement shall not waive the **Insurer's** obligation to pay **Defense Costs** (inclusive but not limited to **Defense Costs** for **E-Discovery Consultant Services**) subject to all other terms, conditions and exclusions of this policy, including any purchased **Coverage Sections**.

3. Solely with respect to the coverage afforded by this endorsement, the following definitions shall apply:

   (a) **"E-Consultant Firm"** means any firm on the **Insurer's** list of approved firms. The list of approved **E-Consultant Firms** is accessible at http://www.aig.com/us/panelcounseldirectory by clicking on the link for "e-Consultant Panel Members."

   (b) **"E-Discovery"** means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

   (c) **"E-Discovery Loss"** means the reasonable and necessary consulting fees for the **E-Discovery Consultant Services** provided solely to a **Company** by an **E-Consultant Firm**. Provided, however, **E-Discovery Loss** shall not include any costs of discovery other than **E-Discovery Loss**.

   (d) **"E-Discovery Consultant Services"** means solely the following services performed by an **E-Consultant Firm**:
      1. assisting the **Insured** with managing and minimizing the internal and external costs associated with **E-Discovery**;
      2. assisting the **Insured** in developing an **E-Discovery** strategy which may include interviewing qualified and cost effective **E-Discovery** vendors; and
      3. serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy.
      **E-Discovery Consultant Services** also includes any other services provided by the **E-Consultant Firm** that the **Insured**, **Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of a **Suit**.

4. Clause 5. **RETENTION** of the **General Terms and Conditions** is amended to include the following provision at the end thereof:

   No Retention shall apply to **E-Discovery Loss** covered under this endorsement.

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

✿ All rights reserved.
*END 020*

107376 (11/10)                                    2

ENDORSEMENT# *21*

This endorsement, effective *12:01 am     April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

**FAILURE TO MAINTAIN INSURANCE EXCLUSION DELETED ENDORSEMENT**

**This endorsement amends the SPL Coverage Section of the policy.**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 3. **EXCLUSIONS** of the SPL Coverage Section, paragraph (s) is deleted in its
entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 021*

**ENDORSEMENT#** *22*

This endorsement, effective  *12:01 am*     *April 30, 2015*      forms a part of
policy number    *01-274-16-88*
issued to    *SS&C TECHNOLOGIES HOLDINGS INC*

by    *AIG Specialty Insurance Company*

**CHOICE OF COUNSEL AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**
**General Terms and Conditions**

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

A.      With regard to any **Claim** under the **Specialty Professional Liability or Bankers
         Professional Liability** coverage sections for which an **Insured** seeks coverage, the
         initial choice of counsel (" **Chosen Counsel**") shall be made by such **Insured** from:
         (i) the **Insurer's** list of panel firms, which list is available upon request by an **Insured**;
              or
         (ii) the list of firms in the Schedule below, restricted to the jurisdictions listed on
              such Schedule, at maximum hourly rates:
                   (a) For Kobre & Kim LLP: **$740** per partner, **$500** per associate and **$263**
                        per paralegal;
                   (b) For Alston & Bird: **$440** per partner, **$440** per associate, and **$140** per
                        paralegal.
         provided, however, that any and all fees, costs, charges and billings of **Chosen
         Counsel** shall be paid and satisfied on an ongoing basis by the **Insureds** until all
         applicable Retention amounts have been satisfied.

         It is further understood and agreed that, with respect to **Claims** made against an
         **Insured** in jurisdictions not included in the Schedule below, the firm of Kobre & Kim
         may serve as co-counsel to the panel firm chosen pursuant to A.(i) above and all
         terms, conditions and limitations of this endorsement relative to **Chosen Counsel**
         shall apply to the retention of such co-counsel.

B.      With regard to any **Claim** for which an **Insured** seeks coverage, such **Insured** agrees
         that, as a condition precedent to coverage for **Defense Costs** incurred through
         **Chosen Counsel** in excess of the applicable Retention amount, such **Insured** and
         **Chosen Counsel** must comply with the **Insurer's** Litigation Management Guidelines
         (the " **Guidelines**"), which are attached to the policy as an addendum hereto and are
         a part of this policy. The responsibility for ensuring that the **Guidelines** are adhered
         to rests with the **Insureds** and not the **Insurer** or **Chosen Counsel**. The **Insureds**
         understand and agree that the **Guidelines** contain reasonable and necessary
         reporting and billing procedures to be followed by **Chosen Counsel**, including,
         without limitation:

              1. development of a litigation plan and litigation budget;
              2. acceptable rates for services;

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective *12:01 am*   *April 30, 2015*   forms a part of
policy number   *01-274-16-88*
issued to   *SS&C TECHNOLOGIES HOLDINGS INC*

by   *AIG Specialty Insurance Company*

3. pre-approval by the **Insurer** before designated legal services are provided; and
4. the required format for submitting **Defense Costs** to the **Insurer**.

The **Guidelines** also require that **Chosen Counsel** work closely and communicate regularly with the **Insurer's** assigned claims professional in coordinating defense efforts and that **Chosen Counsel** apprise the **Insurer** on a regular and timely basis as to significant case developments.

C.   In the event **Insured(s)** cannot select legal counsel from the Insurer's list of panel firms or from the list of **Chosen Counsel** in the Schedule below due to: (1) no firm is available in the jurisdiction in which such **Claim** is brought; (2) an actual conflict of interest; or (3) other circumstances in which the use of other counsel is both reasonable and necessary, the **Insurer** and the **Insured(s)** shall jointly agree upon such counsel who will defend the **Insured(s)** in such matter. If the **Insurer** and the **Insured** are unable to agree upon selection of defense counsel, the **Insurer** shall select defense counsel.

D.   Fees, costs, charges, billings and any other expense incurred through any law firm or other service provider, other than **Chosen Counsel** or a firm chosen pursuant to paragraph C above, shall not be recoverable under this policy as **Defense Costs** or otherwise.

**SCHEDULE OF CHOSEN COUNSEL**          **Jurisdiction**

Kobre & Kim LLP                          NY, DC, CA, FL, Cayman Islands
800 Third Avenue
New York, NY 10022

Alston & Bird LLP                        GA
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*
_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.
**END 22**

ENDORSEMENT# *23*

This endorsement, effective *12:01 am     April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

**EVENT RESPONSE/ELECTRONIC DATA SUBLIMITS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**
**Event Management Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that the
**Event Management Coverage Section** is amended as follows:

1.   The following definitions are added to Clause 2. **DEFINITIONS**:

Sub(a)   "Electronic Data Sublimit" is *$10,000,000*

Sub(b)   "**Event Response Sublimit**" is     *$1,000,000*

2.   The following clause is added to the end of the **Event Management Coverage
Section**:

**COVERAGE SECTION SUBLIMITS OF INSURANCE**

Notwithstanding anything in the policy to the contrary:

(a)   The **Electronic Data Sublimit** is the **Insurer's** maximum liability for **Loss**
incurred:
(1)   to restore, recreate or recollect **Electronic Data**; and
(2)   to determine whether **Electronic Data** can or cannot be restored,
recollected or recreated.

(b)   The **Event Response Sublimit** is the **Insurer's** maximum liability for **Loss**
incurred:
(1)   to conduct an investigation (including a forensic investigation) to
determine the cause of the **Security Failure** or **Privacy Event**;
(2)   for a public relations firm, crisis management firm or law firm agreed to
by the **Insurer** to advise an **Insured** on minimizing the harm to such
**Insured**, including, without limitation, maintaining and restoring public
confidence in such **Insured**;
(3)   to notify those whose **Confidential Information** is the subject of the
**Security Failure** or **Privacy Event** and advise of any available remedy in
connection with the **Security Failure** or **Privacy Event**, including, without
limitation, those expenses and costs for printing, advertising and mailing
of materials;
(4)   for identity theft education and assistance, identity theft call center
services, credit file or identity monitoring and victim reimbursement
insurance made available to those persons notified about a **Security
Failure** or **Privacy Event** pursuant to subparagraph (3) above; and

◊ All rights reserved.
**END 023**

ENDORSEMENT# *23*   (continued)

(5)   for any other services approved by the **Insurer** at the **Insurer's** sole and
absolute discretion;

The **Electronic Data Sublimit** and the **Event Response Sublimit** are each part of and not
in addition to the **Limit of Liability** and, if provided in the Declarations, the **Sublimit of
Liability** for the **Event Management Coverage Section**, and shall in no way serve to
increase the **Limit of Liability** or any **Sublimit of Liability.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 023*

**ENDORSEMENT#** *24*

This endorsement, effective   *12:01 am       April 30, 2015*          forms a part of
policy number   *01-274-16-88*
issued to    *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

**RETROACTIVE DATE AMENDATORY ENDORSEMENT**

**This endorsement amends the Declarations to the policy.**

In consideration of the premium charged, it is hereby understood and agreed that the
Declarations to the policy is amended as follows:

1.   With respect to the first $1,000,000 of the **Sublimit of Liability** for the **BPL
     Coverage Section**, Column 4, " **RETROACTIVE DATE**," of Item 6 is amended by
     deleting the row entitled " **Bankers Professional Liability Insurance**," in its entirety
     and replacing it with the following:

| 6 |     | **COVERAGE SECTION** | **RETROACTIVE DATE** |
|---|-----|----------------------|----------------------|
|   | **BPL** | **Bankers Professional Liability Insurance** | 11/30/2008 |

2.   With respect to the  $1,000,000 in excess of the first $1,000,000 of the **Sublimit
     of Liability** for the **BPL Coverage Section**, Column 4, " **RETROACTIVE DATE**," of
     Item 6 is amended by deleting the row entitled " **Bankers Professional Liability
     Insurance**," in its entirety and replacing it with the following:

| 6 |     | **COVERAGE SECTION** | **RETROACTIVE DATE** |
|---|-----|----------------------|----------------------|
|   | **BPL** | **Bankers Professional Liability Insurance** | 11/30/2009 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT                                    ***END 24***

ENDORSEMENT# *25*

This endorsement, effective *12:01 am*     *April 30, 2015*        forms a part of
policy number    *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

## INFORMATION HOLDER'S SECURITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector** ®
**Security and Privacy Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.
**EXCLUSIONS** of the **Security and Privacy Coverage Section** of the policy is amended to
include the following paragraph at the end thereof:

> This policy shall not cover **Loss** in connection with **a Claim** alleging, arising out of,
> based upon or attributable to a failure or violation of the security of an **Information
> Holder's** computer system.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 025*

104119 (2/10)                         Page 1 of 1

**ENDORSEMENT#** *26*

This endorsement, effective *12:01 am*     *April 30, 2015*         forms a part of
policy number     *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

**FINES AND PENALTIES COVERAGE ENDORSEMENT**

**This endorsement amends the Security and Privacy Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that the **Security and Privacy Coverage Section** is amended as follows:

1.  In Clause 2. **DEFINITIONS**, Paragraph (h), "**Loss**," is amended to include the following sentence at the end thereof:

    **Loss** also includes civil fines or penalties imposed by a governmental agency and arising from a **Regulatory Action**, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty.

2.  In Clause 3. **EXCLUSIONS**, Paragraph (j) is amended by deleting Sub-paragraph (5) in its entirety and replacing it with the following:

    (5) civil or criminal fines or penalties imposed by law against an **Insured**  and any matters deemed uninsurable under the law pursuant to which this policy shall be construed, provided, however, this Sub-paragraph (5) shall not apply to:

        (a)    any monetary amounts an **Insured** is required by law or has agreed to by settlement to deposit into a consumer redress fund; or

        (b)    any civil fine or penalty imposed by a governmental agency arising from a **Regulatory Action**, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
**END 026**

104060 (06/12)                    Page 1 of 1

ENDORSEMENT# *27*

This endorsement, effective at *12:01 am    April 30, 2015*        forms a part of
Policy number *01-274-16-88*
Issued to: *SS&C TECHNOLOGIES HOLDINGS INC*

By: *AIG Specialty Insurance Company*

## CONFIDENTIAL INFORMATION DEFINITION AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

> **Specialty Risk Protector®**
> **Security and Privacy Coverage Section**
> **Event Management Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that the definition of **"Confidential Information"** in paragraph 2(d) of the **Security and Privacy Coverage Section** and in paragraph 2(c) in the **Event Management Coverage Section** is deleted in its entirety and replaced with the following:

> **"Confidential Information"** means any of the following in a **Company's** or **Information Holder's** care, custody or control or for which a **Company** or **Information Holder** is legally responsible:

(1) information from which an individual may be uniquely and reliably identified or contacted, including, without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, account histories and passwords;
(2) information concerning an individual that would be considered "nonpublic personal information" within the meaning of Title V of the Gramm-Leach Bliley Act of 1999 (Public Law 106-102, 113 Stat. 1338) (as amended) and its implementing regulations, or protected personal information under any similar federal, state, local or foreign law;
(3) information concerning an individual that would be considered "protected health information" or "electronic protected health information" within the Health Insurance Portability and Accountability Act of 1996 (as amended) (HIPAA) or the Health Information Technology for Economic and Clinical Health Act (HITECH Act), and their implementing regulations, or protected health-related information under any similar federal, state, local or foreign law;
(4) information used for authenticating customers for normal business transactions;
(5) any third party's trade secrets, data, designs, interpretations, forecasts, formulas, methods, practices, processes, records, reports or other item of information that is not available to the general public.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*[signature]*

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
◊ All rights reserved.

***END 027***

111310 (6/12)                    Page 1 of 1

**ENDORSEMENT#** *28*

This endorsement, effective *12:01 am*      *April 30, 2015*      forms a part of
policy number   *01-274-16-88*
issued to   *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

**BROKER-DEALER EXCLUSION ENDORSEMENT**

**This endorsement amends the SPL Coverage Section.**

In consideration of the premium charged, it is hereby understood and agreed that Clause 3.
**EXCLUSIONS** of the **SPL Coverage  Section** shall be amended  by addition of the  following
at the end thereof:

This policy shall not cover **Loss** in connection with a  **Claim** made against an **Insured**:

BD(a)  alleging, arising  out of, based  upon or  attributable to  any actual or  alleged
buying, selling,  trading  or failing  to trade in  any  market anywhere in  the
world, including any market for debt securities;

BD(b)  alleging, arising out  of, based  upon or  attributable to any  actual or  alleged
buying, selling,  trading  or failing  to  trade  commodities, debt  securities,
stocks, securities, bonds, derivatives, commodity futures contracts, any type
of option contract, or any other financial instrument;

BD(c)  alleging, arising  out of,  based  upon or  attributable to  any function of  any
insured as a  specialist or  market maker for  any securities  or arising  out of
failing to make a market  for any securities, including without  limitation debt
securities;

BD(d)  alleging, arising  out of,  based upon or  attributable to  the actual  or alleged
inability to  make  any payment by  any bank  or  banking firm  or  broker  or
dealer in securities or commodities;

BD(e)  brought by or on behalf of any clearing agent; or

BD(f)  alleging, arising out of, based upon or attributable to any function of you as a
clearing agency;

Provided, however, that  these exclusions  shall not apply  to any  **Claim**, **Wrongful Act**,  or
**Loss** arising  solely out of  the  failure of: (1) an  **Insured's Technoloy Product**, (2) an
**Insured's Technology Services,** or (3)  technology that is the basis  of an **Insured's Internet
Professional Services**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.
**END 28**

MNSCPT

**ENDORSEMENT#** *29*

This endorsement, effective *12:01 am      April 30, 2015*      forms a part of
policy number   *01-274-16-88*
issued to   *SS&C TECHNOLOGIES HOLDINGS INC*

by      *AIG Specialty Insurance Company*

## ENHANCED COMPUTER SYSTEM DEFINITION ENDORSEMENT
## (CLOUD COMPUTING AND MOBILE DEVICES)

This endorsement modifies insurance provided under the following:

**Specialty Risk Protector®**
**Security and Privacy Coverage Section**
**Event Management Coverage Section**

In consideration of the premium charged, it is hereby understood and agreed that the definition of " **Computer System**" in both paragraph 2(c) of the **Security and Privacy Coverage Section** and paragraph 2(b) of the **Event Management Coverage Section** is deleted in its entirety and replaced with the following:

" **Computer System**" means any computer hardware, software or any components thereof that are under the ownership, operation or control of, or leased by, a **Company** and are linked together through a network of two or more devices accessible through the Internet or an internal network or that are connected through data storage or other peripheral devices (including, without limitation, wireless and mobile devices).

" **Computer System**" also means "cloud computing" and other hosted resources operated by a third party service provider for the purpose of providing hosted computer resources to a **Company** as provided in a written contract between such third party and a **Company**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

115569 (06/13)          ***END 29***

ENDORSEMENT# *30*

This endorsement, effective *12:01 am     April 30, 2015*                 forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by     *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
| --- | --- | --- |
| MNSCPT | | SRP - DECLARATIONS - NONADMITTED (AIGSIC) |
| MNSCPT | | SRP GENERAL TERMS AND CONDITIONS - NONADMITTED |
| MNSCPT | | CORPORATE COUNSEL PREMIER COVERAGE SECTION |
| MNSCPT | | CYBER EXTORTION COVERAGE SECTION |
| MNSCPT | | EVENT MANAGEMENT COVERAGE SECTION |
| MNSCPT | | MEDIA CONTENT COVERAGE SECTION (OCCURRENCE) |
| MNSCPT | | NETWORK INTERRUPTION COVERAGE SECTION |
| MNSCPT | | SECURITY AND PRIVACY COVERAGE SECTION |
| MNSCPT | | SPL COVERAGE SECTION |
| MNSCPT | | CRISISFUND COVERAGE SECTION |
| MNSCPT | | BPL COVERAGE SECTION |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 77657 | 09/12 | CONNECTICUT CANCELLATION-NONRENEWAL ENDORSEMENT |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 113428 | 02/14 | CYBEREDGE LOSS PREVENTION SERVICES ENDORSEMENT |
| MNSCPT | | MODIFIED INVESTMENT ADVISOR EXCLUSION ENDORSEMENT |
| 105168 | 04/10 | OPTIONAL DISCOVERY PERIOD AMENDATORY ENDORSEMENT |
| 103519 | 11/09 | PERSONAL PERIL COVERAGE ENDORSEMENT |
| MNSCPT | | LISTED SUBSIDIARIES ENDORSEMENT |
| 101641 | 12/13 | SUBSIDIARY THRESHOLD AMENDATORY ENDORSEMENT |
| MNSCPT | | PENDING AND PRIOR LITIGATION EXCLUSION ENDORSEMENT |
| 101666 | 06/09 | INTELLECTUAL PROPERTY EXCLUSION AMENDATORY ENDORSEMENT (SOFTWARE IP CARVEBACK) |
| 103528 | 12/09 | TECHNOLOGY SERVICES COVERAGE ENDORSEMENT |

⊕ All rights reserved.

**END 030**

ENDORSEMENT# *30*

This endorsement, effective *12:01 am      April 30, 2015*                    forms a part of
policy number   *01-274-16-88*
issued to *SS&C TECHNOLOGIES HOLDINGS INC*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 103526 | 12/09 | INTERNET PROFESSIONAL SERVICES COVERAGE ENDORSEMENT |
| 103518 | 11/09 | MISCELLANEOUS PROFESSIONAL SERVICES ENDORSEMENT |
| 103524 | 11/09 | OTHER PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT |
| MNSCPT |  | INITIAL PUBLIC OFFERING EXCLUSION ENDORSEMENT |
| 105386 | 04/10 | INDEPENDENT CONTRACTOR ENDORSEMENT |
| 103456 | 11/09 | NOTICE OF CLAIM PROVISION AMENDATORY ENDORSEMENT (SIXTY DAY POST POLICY REPORTING PERIOD) |
| 105163 | 12/13 | WRONGFUL COLLECTION COVERAGE ENDORSEMENT |
| 107376 | 11/10 | E-DISCOVERY CONSULTANT SERVICES COVERAGE ENDORSEMENT |
| 101657 | 06/09 | FAILURE TO MAINTAIN INSURANCE EXCLUSION DELETED ENDORSEMENT |
| MNSCPT |  | CHOICE OF COUNSEL AMENDATORY ENDORSEMENT |
| 101660 | 12/13 | EVENT RESPONSE/ELECTRONIC DATA SUBLIMITS ENDORSEMENT (EM) |
| MNSCPT |  | RETROACTIVE DATE AMENDATORY ENDORSEMENT |
| 104119 | 02/10 | INFORMATION HOLDER'S SECURITY EXCLUSION ENDORSEMENT |
| 104060 | 06/12 | FINES AND PENALTIES COVERAGE ENDORSEMENT |
| 111310 | 06/12 | CONFIDENTIAL INFORMATION DEFINITION AMENDATORY ENDORSEMENT |
| MNSCPT |  | BROKER-DEALER EXCLUSION ENDORSEMENT |
| 115569 | 06/13 | ENHANCED COMPUTER SYSTEM DEFINITION ENDORSEMENT |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 030*



## CLAIM REPORTING FORM

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number: __*01-274-16-88*__          Date: _____

Type of Coverage: D&O _____  E&O _____  Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

__*SS&C TECHNOLOGIES HOLDINGS INC*_____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: __*WILLIS OF CONNECTICUT, LLC*_____

Address: *185 ASYLUM STREET, 25TH FLOOR*_____

Address: *HARTFORD, CT 06103-3708*_____

Contact: *JANET MARSHALL-TATE*_____     Phone: _____

eMail: _*janet.marshalltate@willis.com*_____

Send Notice of Claims to:     AIG                              Phone: (888) 602-5246
                              Financial Lines Claims          Fax:   (866) 227-1750
                              P.O. Box 25947                  Email: c-Claim@AIG.com
                              Shawnee Mission, KS 66225



**CLAIM REPORTING FORM**
**FIDELITY SUPPLEMENTAL**
(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number:  *01-274-16-88*

Date of Discovery: —————————   Estimated Amount of loss: —————————

Cause of Loss:   Employee Dishonesty _____      Computer Fraud _____

Funds Transfer _____      Robbery/Burglary _____

ID Theft _____      Forgery _____

Client Property _____      In Transit _____

ERISA _____      Credit Card Forgery _____

Other _____   if Other, describe: _____

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:    (866) 227-1750
Email:  c-Claim@AIG.com

*centralized Customer Link and Information Management*