THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SS&C Technologies Holdings, Inc., | |
| *Plaintiff*, | Civil Action No. 19-cv-07859 (JSR) |
| | **ORAL ARGUMENT REQUESTED** |
| v. | |
| AIG Specialty Insurance Company, | |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Robin L. Cohen
(rcohen@mckoolsmith.com)
James H. Smith
(jsmith@mckoolsmith.com)
McKool Smith, P.C.
One Bryant Park, 47th Floor
New York, NY 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

*Attorneys for Plaintiff SS&C Technologies
Holdings, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

ARGUMENT ...................................................................................................... 4

       A.      THE STANDARDS APPLICABLE TO A MOTION TO DISMISS ............... 4

       B.      CHOICE OF LAW ........................................................................... 4

       C.      THE STANDARDS APPLICABLE TO THE INTERPRETATION
              OF AN INSURANCE POLICY ......................................................... 5

       D.      THE FRAUD EXCLUSION IS NOT APPLICABLE TO THE
              TILLAGE SETTLEMENT ................................................................ 7

              1.      The Fraud Exclusion only Applies to Fraudulent Acts
                      Committed by the Insured. ..................................................... 7

              2.      The Fraud Exclusion Requires a Final Adjudication to
                      Preclude Indemnity Coverage. ............................................. 11

       E.      SS&C PROPERLY PLED THAT AIG BREACHED THE IMPLIED
              COVENANT OF GOOD FAITH AND FAIR DEALING ........................... 13

       F.      SS&C'S CLAIM FOR DECLARATORY JUDGMENT IS PROPER .......... 15

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.,*
  60 N.Y.2d 390, 398 (1983) ...........................................................................................6

*Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004)…………………..…………………5

*ASARCO LLC v. Goodwin,*
  756 F.3d 191, 198 (2d Cir. 2014)................................................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009) .............................................................................................4

*AT&T v. Clarendon Am. Ins. Co.*, at *22 (Del. Super. Ct. Feb. 11, 2008) ...................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………………………4

*Burlington Ins. Co. v. NYC Transit Auth.,*
  29 N.Y. 3d 313 (2017)................................................................................................10

*Cragg v. Allstate Indem. Corp.,*
  17 N.Y.3d 118, 121 (2011) ..........................................................................................6

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.,*
  269 Conn. 424, 433 849 A.2d 382, 388 (2004) ...........................................................5

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.,*
  375 F.3d 168, 174 (2d Cir. 2004)................................................................................4

*Galper v. JP Morgan Chase Bank, N.A.,*
  802 F.3d 437, 443 (2d Cir. 2015)...........................................................................4, 14

*Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969)………………..8

*Hatfield v. 96-100 Prince St., Inc.,*
  No. 94 CIV. 3917, 1997 WL 151502 at *2 (S.D.N.Y. Apr. 1, 1997) (Rakoff,
  J.)............................................................................................................................6, 13

*Johnson v. Conn. Ins. Guar. Ass'n,*
  302 Conn. 639, 643 (2011) .........................................................................................13

*Kings Infiniti Inc. v. Zurich Am. Ins. Co.,*
  990 N.Y.S.2d 437 (Sup. Ct. 2014).............................................................................15

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.,*
  290 Conn. 767, 795-796, 967 A.2d 1, 21-22 (2009)........................................................5, 13

*Lincoln Gen. Ins. Co. v. Rodriguez,*
  No. CV085007513, 2010 Conn. Super. LEXIS 3009 at \*7 (Super. Ct. Nov. 16,
  2010) ..............................................................................................................................14

*Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.,*
  752 F. App'x 47 (2d Cir. 2018)......................................................................................10

*Maroney v. New York Cent. Mut. Fire Ins. Co.,*
  5 N.Y.3d 467, 472 (2005) ...............................................................................................10

*Matter of Allstate Ins. Co. (Stolarz),*
  81 N.Y.2d 219, 226 (1993) ...............................................................................................4

*Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,*
  88 N.Y.2d 347, 351 (1996) .............................................................................................10

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.,*
  171 F. Supp. 3d 107, 123 (S.D.N.Y. 2016).....................................................................15

*Nationwide Mut. Ins. Co. v. Pasiak,*
  327 Conn. 225, 244-245 (2017) ........................................................................................9

*Olin Corp. v. Ins. Co. of N.A.,*
  743 F. Supp. 1044, 1049 (S.D.N.Y. 1990).......................................................................5

*Pepsico, Inc. v. Cont'l Cas. Co.,*
  640 F. Supp. 656, 658-660 (S.D.N.Y. 1986) ..................................................................12

*Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.,*
  12 N.Y.3d 302, 307 (2009) ...............................................................................................6

*Purdue Frederick Co. v. Steadfast Ins. Co.,*
  801 N.Y.S.2d 781 (Sup. Ct. 2005)..................................................................................10

*R.T. Vanderbilt Co. v. Cont'l Cas. Co.,*
  273 Conn. 448, 468 (2005) ...............................................................................................9

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007)..............................................................................................3

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,*
  7 F.3d 1091, 1095 (2d Cir. 1993)......................................................................................9

*Soni v. Pryor,*
  139 A.D.3d 841, 843 (2d Dept. 2016) ............................................................................12

*Stamford Bd. of Educ. v. Stamford Educ. Asso.*,
    697 F.2d 70, 74 (2d Cir. 1982)..................................................................................................7

*Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*,
    47 F.3d 34, 38 (2d Cir. 1995)..................................................................................................9

*U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*,
    No. 12 CIV. 6811 CM JCF, 2014 WL 998358 at *5 (S.D.N.Y. Mar. 14, 2014)......................5

## STATUTES

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1

Plaintiff SS&C Technologies Holdings, Inc. ("SS&C") submits this memorandum of law in opposition to the motion of Defendant AIG Specialty Insurance Company ("AIG") to dismiss SS&C's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

AIG does not contest that the Tillage Action arose from SS&C's allegedly negligent performance of professional services. Nor does AIG contest that the Tillage Action represents the *exact* type of claim for which the Policy was intended to cover. Instead, AIG's sole basis for dismissing SS&C's breach of contract claim rests upon a tortured and unreasonable interpretation of Exclusion 3(a) (the "Fraud Exclusion"), and which lies contrary to AIG's original assessment of coverage.

Namely, AIG argues that the Fraud Exclusion bars indemnity coverage for an insured because of a third party's fraudulent act where (i) there was no allegation of fraud against the insured, (ii) the insured itself committed no fraud, and (iii) there has been no final adjudication determining that fraudulent conduct even occurred. Such an interpretation is inconsistent with the plain language of the Fraud Exclusion, which contains a clause requiring final adjudication of fraud or intentional misconduct *against the insured* before it can be applied. AIG's interpretation is also contrary to the intent of the parties, as made bare by AIG's own admissions. In its initial coverage analysis, AIG did not deny coverage on the basis of the Fraud Exclusion. Rather, AIG admitted that the Fraud Exclusion *would not apply* unless an employee of SS&C was found to have committed fraud, and only then if that fact was determined by a final adjudication. Neither has occurred, and AIG's desire to evade coverage cannot change the intended understanding of the Policy's provisions.

1

Further, as AIG's arguments related to SS&C's claims for the breach of the covenant of good faith and fair delaying are predicated on dismissal of SS&C's breach of contract claim, those arguments fail as well.  Moreover, AIG demonstrated bad faith by reversing its position on how the Fraud Exclusion should be applied after it became clear that its previous stance could no longer act to deny coverage.  Finally, SS&C's claim for declaratory judgment is not duplicative of its breach of contract claim because it seeks a broader declaration of rights than is at issue in the breach of contract claim.  AIG's motion to dismiss should be denied.

## STATEMENT OF FACTS

SS&C is a financial technology company that provides, among other things, business processing management. (Dkt. 1, at ¶ 19.) Since 2012, SS&C acted as fund administrator for Tillage Commodities Fund, L.P. ("Tillage"),[1] an investment fund started that same year. (*Id.*) SS&C was responsible for, *inter alia*, holding Tillage's funds and dispersing the same only at Tillage's direction. (*Id.*)

Beginning on March 3, 2016, SS&C was the victim of a fraudulent scheme by an overseas third party, which used "spoof" email domains disguised to look as if they were coming from Tillage, to request wire transfers from Tillage's bank account. (*Id.* at ¶ 20.) Over the next twenty-one days, six fraudulent requests for transfers were made in this fashion, and as a result, SS&C transferred approximately $5.9 million of funds from Tillage's account to third-party bank accounts in Hong Kong. (*Id.*) After SS&C and Tillage discovered the fraud, SS&C immediately alerted Hong Kong authorities, submitted a report to the Hong Kong Police Force, and attempted to cooperate with Tillage and the relevant authorities to recover the stolen funds. (*Id.* at ¶ 21.) On

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as set forth in the Complaint.  (Dkt.  1.)

March 28, 2016, four days after the fraudulent scheme was uncovered, SS&C notified AIG that it may give rise to a covered Loss under the Policy. (*Id.* at ¶ 24.)

On September 16, 2016, Tillage filed suit against SS&C in New York Supreme Court, alleging breach of the Services Agreement, breach of the implied covenant of good faith and fair dealing, and deceptive business practices and false advertising in violation of New York Gen. Bus. Law §§ 349, 350, and 350a (the "Tillage Action"). (*Id.* at ¶ 22.) Specifically, Tillage alleged that, by allowing itself to be deceived by the fraudster, SS&C was grossly negligent in performing its fund administration services. (*See, e.g.*, Dkt. 1-2, at ¶¶ 42-45.)

On September 28, 2016, AIG sent a letter to SS&C denying indemnity coverage for the Tillage Action (the "Denial Letter"). (*Id.* at ¶ 25.)[2] Despite acknowledging that the Tillage Action fell within the Policy provisions, AIG denied indemnity coverage for any settlement or judgment and cited Exclusions 3(a), 3(h), 3(j)(5), 3(j)(7), 3(j)(10), 3(p), and INV(a) of Endorsement #5 as potentially applicable. (*Id.*)

Specifically, in the Denial Letter, AIG stated that the Fraud Exclusion *did not act to bar coverage*, but added the caveat that, because "[Tillage] alleges [SS&C employee] Mr. Martocci 'worked with the fraudster[,]' [a] final adjudication of that fact *could* exclude *defense and indemnity coverage* for this matter and trigger our right to recoup." (emphasis added) (Ex. A, at 4.) AIG did not state that the Tillage Action "arose" out of fraud by virtue of the fact that SS&C and Tillage were the victims of third-party fraud. (*Id.*)

On December 30, 2016, the court dismissed Tillage's claims alleging breach of New York General Business Law §§ 349, 350, and 350a, but denied SS&C's motion to dismiss the

---

[2] The Denial Letter is attached as **Exhibit A** to the Declaration of James H. Smith, filed contemporaneously with this Memorandum of Law.  The Court may consider the contents of the Denial Letter because it is incorporated in the Complaint by reference. (Dkt. 1, at ¶ 25); *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.").

breach of contract claims. (Dkt. 1, at ¶ 23.) On June 4, 2019, the Tillage Action settled on confidential terms without any admission of liability or wrongdoing on the part of any party. (*Id.*)

## ARGUMENT

### A.    THE STANDARDS APPLICABLE TO A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). In determining if a complaint meets this standard, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004). Further, "the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (internal quotation omitted).

### B.    CHOICE OF LAW

Where New York and Connecticut law conflict in this case, the Court should apply Connecticut law pursuant to New York's choice-of-law rules.[3]  The New York Court of Appeals

---

[3] In particular, New York and Connecticut law diverge on whether a claim for breach of the covenant of good faith and fair dealing is available where a breach of contract claim is also

has held that in contract cases, the "center of gravity" or "grouping of contacts" analysis is to be applied in choice-of-law determinations. *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226 (1993). Specifically, in matters of insurance coverage, "New York courts have looked principally to the following factors: the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." *Olin Corp. v. Ins. Co. of N.A.*, 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990).

Here, the center of gravity analysis requires an application of Connecticut law. The Policy was issued and delivered in Connecticut. (Dkt. 1-1, at 8/124.) The Policy contains a "Connecticut Cancellation/Nonrenewal Amendatory Endorsement." (*Id.* at 84/124.) The location of the broker placing the policy was in Connecticut. (Dkt. 1-1, at 123/124.) Further, SS&C's principal place of business is in Connecticut, which also represents the location of the insured risk. (Dkt. 1, at ¶ 7.)  The only fact connecting the case to New York is AIG's principal place of business.  (*Id*. at ¶ 7.)  Therefore, under these facts, New York's choice-of-law rules require an application of Connecticut law to SS&C's contractual claims arising from the Policy where New York and Connecticut law conflict.

## C.   THE STANDARDS APPLICABLE TO THE INTERPRETATION OF AN INSURANCE POLICY

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction." *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795–96, 967 A.2d 1, 21–22 (2009) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406, 848 A.2d 1165 (2004)). "The determinative question is the intent of the parties, that is,

---

asserted. *Compare U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2014 WL 998358, at *5 (S.D.N.Y. Mar. 14, 2014), *with De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382, 388 (2004).

what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." *Id.* (brackets in original). But when the terms of an insurance policy are susceptible to two equally reasonable interpretations, "that which will sustain the claim and cover the loss must, in preference, be adopted." *Id.* In other words, "any ambiguity is resolved in favor of the insured," and "[t]he court must conclude that the language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Id.* (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37, 610 A.2d 1296 (1992)).

The same principles apply under New York law, which provides that "[i]nsurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured." *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 121 (2011). Further, "exclusionary clauses in contracts will be construed against the insurer . . . [and] such exclusions will be enforced only when drafted in clear and unmistakable language." *Hatfield v. 96-100 Prince St., Inc.*, No. 94 CIV. 3917, 1997 WL 151502, at *2 (S.D.N.Y. Apr. 1, 1997) (Rakoff, J.) (internal citations and quotations omitted); *see also Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.,* 60 N.Y.2d 390, 398 (1983) ("The ambiguities in an insurance policy are . . . to be construed against the insurer, particularly when found in an exclusionary clause."). The burden of proving that a policy exclusion applies rests with the insurer, and exclusions are enforced only when they "have a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307 (2009).

**D.** **THE FRAUD EXCLUSION IS NOT APPLICABLE TO THE TILLAGE SETTLEMENT**

AIG argues that the Fraud Exclusion precludes indemnity coverage for the Tillage Action because it arose out of "the theft of Tillage funds by a third-party fraudster that tricked SS&C with 'spoof' emails." (Dkt. 18-1, at 7-8.) This argument fails.

*First*, the Fraud Exclusion contemplates only dishonest, fraudulent, or criminal acts committed by SS&C, not third parties. Indeed, this was AIG's initial interpretation of the Fraud Exclusion. In its September 28, 2016 Denial Letter, AIG admitted that the Fraud Exclusion applied only insofar as Tillage alleged a dishonest, fraudulent, or criminal act *by SS&C itself*, and explicitly stated it was not denying coverage on the basis of the Fraud Exclusion.

*Second*, the Fraud Exclusion does not apply because it requires a final adjudication of dishonest, fraudulent, or criminal conduct as a basis to deny coverage for either defense or indemnity costs. Because the settlement of the Tillage Action is not a final adjudication, AIG is required to provide coverage of the settlement costs.

**1.** **The Fraud Exclusion only Applies to Fraudulent Acts Committed by the Insured.**

In its Motion to Dismiss, AIG argues that the Fraud Exclusion precludes indemnity coverage for the Tillage Action because it arose out of "the theft of Tillage funds by a *third-party fraudster* that tricked SS&C with 'spoof' emails." (emphasis added) (Dkt. 18-1, at 7-8.) This interpretation of the Fraud Exclusion is at odds with the cases cited by AIG and the intent of both of the parties, as evidenced by the language of the Fraud Exclusion and AIG's own admissions to the contrary.

As an initial matter, the purpose of fraud and intentional wrongdoing exclusions is to prohibit an insured from insulating itself from the repercussions of its own wrongful or illegal conduct. *See Stamford Bd. of Educ. v. Stamford Educ. Asso.*, 697 F.2d 70, 74 (2d Cir. 1982)

("[A] party may not indemnify himself against his own willful, reckless or criminal misconduct.") (citing *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir. 1969)). Here, there is no dispute that SS&C was among the *defrauded*, and did not commit fraud itself. The Tillage Action was premised around the dishonest, fraudulent, or criminal act committed by a "third-party fraudster," not SS&C.  Tillage did not allege that SS&C defrauded it or otherwise misappropriated its funds, but rather that a third party deceived SS&C into wiring money from Tillage's accounts using "spoofed" email domains. (*See, e.g.*, Dkt. 1-2, at ¶¶ 42-45.) Tillage only alleges that SS&C "facilitated" this third party's scheme by ignoring what it characterized as "facially obvious" warning signs. (*Id*. at ¶ 45.) This does not rise to the level of dishonest, fraudulent, or criminal conduct.

As there no question that SS&C did not commit any "dishonest, fraudulent, or criminal conduct," the Fraud Exclusion does not apply.  The plain language of the Fraud Exclusion makes clear that it is only applicable to the conduct of the insured.  In full, the Fraud Exclusion precludes coverage of loss in connection with a claim against SS&C:

> (a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law; provided, however, the **Insurer** will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit**, adverse finding of fact against an **Insured** in a binding arbitration proceeding or plea of guilty or no contest by an **Insure**d as to such conduct, at which time the **Insureds** shall reimburse the **Insurer** for **Defense Costs**.

(emphasis in original) (Dkt. 1-1 at 68/124.)

As AIG itself argues, the Policy requires it to pay for the insured's defense costs unless fraudulent or criminal conduct is established by "final judgment or final adjudication *against an Insured*[.]" (emphasis added) (Dkt. 18-1, at 8.) Clearly, whether third parties committed fraud will never be established where there is no action against them. Thus, the final adjudication

provision in the Fraud Exclusion contemplates that the exclusion will only apply where the insured itself is accused of fraudulent or criminal conduct.   If the Fraud Exclusion was implicated due to the fraud or misconduct of third parties, the final adjudication provision would be rendered superfluous, which is anathema to the principles of insurance contract interpretation. *See R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 468, 870 A.2d 1048, 1062 (2005) (holding that it is a "canon of construction of insurance policies that a policy should not be interpreted so as to render any part of it superfluous") (internal citations and quotations omitted); *see also Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (Courts must "safeguard against adopting an interpretation that would render any individual provision superfluous.").

At the very least, this language renders the first clause of the Fraud Exclusion ambiguous as to whether it related to fraud committed by a non-insured third party, and thus must be construed in favor of coverage.  S*ee Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 38 (2d Cir. 1995) ("Any ambiguity is to be construed against the insurer, particularly when the ambiguity is in an exclusionary clause.").

None of the cases cited by AIG support a different interpretation. Indeed, they do not even interpret fraud or wrongful conduct exclusions. Rather, the cases cited merely address interpretation of the phrase "arising out of" in wholly different contexts. For example, in *Nationwide Mut. Ins. Co. v. Pasiak*, 327 Conn. 225, 244-45 (2017), the primary case relied on by AIG, the insured sought coverage for losses related to a false imprisonment lawsuit brought against it by an employee.   The insurer sought to deny coverage based on an exclusion that precluded covered for losses that were "connected with, had its origins in, grew out of, flowed from, or was incident to [the insured's] business pursuits."   Critically, the conduct of an

unrelated third party was never at issue in *Pasiak*. Moreover, that case was on appeal after a judgment at trial, and the Court ultimately ordered a trial *de novo* on the issue of whether the underlying conduct arose out of "business pursuits," and thus implicated an exclusion containing the phrase "arising out of." Specifically, the Court stated that, although the phrase "arising out of" is broadly construed, "this court's application of this phrase indicates that the requisite causal nexus would not be met merely by a sequential relationship between the injury and the [excluded conduct]." *Id*. at 246. Therefore, while the case is inapposite, it at a minimum supports the position that SS&C's claims should proceed past the motion to dismiss stage. Similarly, the Court in *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005) simply held that an exclusion that barred coverage for losses "arising out of a premises . . . that is not an insured location" pertained "to both the physical condition of the premises and conduct related to the use of the uninsured premises[.]" This has no bearing on the Fraud Exclusion and whether it applies to the conduct of unknown third parties.[4]

Finally, AIG's newfound interpretation of the Fraud Exclusion is also at odds with the intent of the parties. Here, the Tillage Action represents the exact coverage scenario contemplated by the parties at the time the Policy was executed—a claim alleging a negligent

---

[4] The other cases cited by AIG are of no import. Further, both *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y. 3d 313 (2017) and *Purdue Frederick Co. v. Steadfast Ins. Co.*, 801 N.Y.S.2d 781 (Sup. Ct. 2005) interpret the phrase "arising out of" with regard to its placement in coverage provisions, not exclusions. It is well-established that exclusions are to "be accorded a strict and narrow construction." *Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*, 752 F. App'x 47, 49 (2d Cir. 2018) (internal citations and quotations omitted).

Finally, *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 351 (1996) is inapposite because the exclusion at issue in that case, unlike here, explicitly applied "whether or not [the excluded conduct was] committed by or at the direction of the insured." Moreover, the exclusion at issue was not a fraud exclusion, the purpose of which is to prevent the insured from benefiting from its own intentionally wrongful conduct.

act, error or omission by SS&C in its performance of professional services.  (Dkt. 1 at ¶¶ 11-18, 22.)  AIG does not deny this.

Neither AIG nor SS&C envisioned that such coverage would be precluded by any connection, however tenuous, with the dishonest, fraudulent, or criminal act of a third party. Indeed, in its September 28, 2016 Denial Letter, AIG does not even raise the possibility that the Fraud Exclusion precluded coverage due to the third party's actions. Rather, AIG noted that the Fraud Exclusion was relevant *only* insofar as Tillage alleged that an SS&C employee, Tom Martocci, "worked with the fraudster," and even then, only if there was "a final adjudication of this fact." (Ex. A, at 4.) Critically, AIG did not assert that the alleged fraud of unknown third parties had any impact whatsoever on its coverage analysis.  AIG cannot now claim that the Fraud Exclusion unambiguously precludes coverage on these facts where it previously interpreted the exclusion to mean the precise opposite.

Accordingly, pursuant to its plain terms and the intent of the parties, the Fraud Exclusion, properly read, precludes only claims that arise from the dishonest, fraudulent or criminal acts of SS&C. As there was no allegation that SS&C engaged in such conduct, the Fraud Exclusion is plainly inapplicable.

**2.      The Fraud Exclusion Requires a Final Adjudication to Preclude Indemnity Coverage.**

Even if Tillage had alleged that SS&C engaged in a fraudulent act such that the Fraud Exclusion might apply to the claims asserted in the Tillage Action, AIG is nonetheless required to provide coverage for such claims because there was no "final judgment or final adjudication against an Insured in a Suit." (Dkt. 1-1, at 68/124). The Tillage Action was settled, and thus the Fraud Exclusion cannot be a basis for withholding funds to provide coverage for the settlement.

AIG argues that the Fraud Exclusion contains "no carve-out for indemnity costs" and that the final adjudication requirement is applicable only to AIG's duty to defend the Tillage Action. (Dkt. 18-1, at 8). But AIG does not cite a single case in support of this argument. It cannot, as AIG's interpretation is contrary to how courts have interpreted fraud exclusions with similar final adjudication requirements. *See, e.g.*, *Pepsico, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 659 (S.D.N.Y. 1986) (holding that an exclusion for "dishonesty" that contained a comparable carve-out for reimbursement of advanced defense costs attaches only after a "final judgment or other final adjudication"); *Soni v. Pryor*, 139 A.D.3d 841, 843, 32 N.Y.S.3d 236, 238 (2d Dept. 2016) (holding that a similar exclusion did not apply to preclude indemnity as a matter of law where there was no "final adjudication establish[ing] that [a] criminal, fraudulent or dishonest act occurred"); *see also AT&T v. Clarendon Am. Ins. Co.*, No. 04C-11-167-JRJ, 2008 Del. Super. LEXIS 220, at *22 (Del. Super. Ct. Feb. 11, 2008) (applying New York law) (denying application of fraud exclusion because underlying action was settled and thus "[i]t would seem obvious that there has been no adjudication or finding of deliberate, dishonest, fraudulent or criminal conduct in a case whose merits no finder of fact has ever decided").

The decision in *Pepsico* is instructive here. In that case, certain directors and officers were accused of securities fraud and sought coverage for losses related to the same. *Pepsico, Inc.*, 640 F. Supp. at 658. The policy at issue covered "the costs of defending the directors and officers against alleged dishonesty 'unless a judgment or other final adjudication thereof adverse to the directors and officers shall establish that acts of active and deliberate dishonesty committed by the Directors and Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.'" *Id.* at 659.  Pursuant to this language, the court found that the insurer "agreed to pay all costs for defending *and settling claims* for actual and alleged

Wrongful Acts" and that "[t]he exclusion for 'dishonesty' attaches *only after* a 'final judgment or other final adjudication' implicates the directors." *Id.* at 660 (emphasis added).

AIG offers no case law in support of its conflicting interpretation. AIG further fails to mention that it also intended that the Fraud Exclusion only apply to indemnity coverage after a final adjudication establishing fraud or intentional wrongdoing. (Ex. A, at 4) ("Here, [Tillage] alleges Mr. Martocci "worked with the fraudster." *A final adjudication of that fact* could exclude *defense and indemnity coverage* for this matter and trigger our right to recoup.") (emphasis added); s*ee Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795–96, 967 A.2d 1, 21–22 (2009) (When interpreting an insurance contract, "[t]he determinative question is the intent of the parties[.]") (internal citations and quotations omitted). AIG cannot walk back from the intended and well-established interpretation of the Fraud Exclusion simply because it now seeks to avoid payment.

AIG is well-aware that exclusions "will be enforced only when drafted in clear and unmistakable language[;]" thus, if it intended for the final adjudication provision in the Fraud Exclusion to apply solely to defense costs, it could have made this "clear and unmistakable." *Hatfield*, 1997 WL 151502, at *2; *see also Johnson v. Conn. Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011) ("We construe ambiguities in favor of coverage [and] [t]hat means that the exclusion at issue in the present case is read narrowly."). It did not. The Fraud Exclusion therefore cannot be found to apply absent adjudication that SS&C's conduct was in fact dishonest, fraudulent, or criminal.

## E.  SS&C PROPERLY PLED THAT AIG BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

AIG contends that SS&C's claim for breach of the covenant of good faith and fair dealing should be dismissed because the Fraud Exclusion "bars indemnity coverage for the

Tillage Action." (Dkt. 18-1, at 9.) This is baseless. As AIG admitted in the Denial Letter, AIG is required to indemnify SS&C's settlement costs from the Tillage Action absent a final adjudication of fraud against SS&C. Its new-found interpretation of the Fraud Exclusion is not justifiable under the law or predicated on a defensible reading of the Fraud Exclusion. Rather, AIG used a bad faith pretextual reading of the Policy to deny coverage under any and all circumstances.

Under Connecticut law, "[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Lincoln Gen. Ins. Co. v. Rodriguez,* No. CV085007513, 2010 Conn. Super. LEXIS 3009, at *7 (Super. Ct. Nov. 16, 2010) (denying motion to strike breach of the covenant of good faith and fair dealing claim where insured also asserted a breach of contract claim). Here, the Complaint alleges precisely that. AIG wrongfully denied indemnity coverage and refused to approve reasonable settlement offers within Policy limits, which included an unreasonable reliance on inapplicable exclusions in the Policy. (Dkt. 1, at ¶ 51.) This denial was "not due to negligence or mistake, but rather was deliberate and calculated to further AIG's own economic interests at the expense of SS&C, denying SS&C the benefits of the Policy." (*Id.* at ¶ 52.) At the motion to dismiss stage, these facts must be accepted as true and considered in the light most favorable to SS&C. *See Galper*, 802 F.3d at 443.

Moreover, AIG's bad faith is laid bare by the fact that AIG initially agreed with SS&C's interpretation of the Fraud Exclusion. As set forth above, in its Denial Letter (which this Court can consider in determining AIG's Motion), AIG asserted that the Fraud Exclusion would only apply in the event that (i) SS&C committed fraudulent or criminal conduct and (ii) such conduct

was determined by a final adjudication. (*See* Ex. A, at 4.) That AIG subsequently changed its position to adopt precisely the opposite reading (and is now urging this Court to do the same) in an effort to deny coverage is concrete evidence of its bad faith.

Because the Complaint alleges that AIG's conduct impaired SS&C's ability to enforce benefits to which it was entitled under the Policy, AIG's motion to dismiss Count Three should be denied.

## F.     SS&C'S CLAIM FOR DECLARATORY JUDGMENT IS PROPER

AIG argues that SS&C's claim for declaratory judgment should be dismissed as duplicative of its claim for breach of contract. Not so. Contrary to AIG's statement that "[a] resolution for the breach of contract claim will answer the questions SS&C raises in its declaratory judgment claim," (Dkt. 18-1, at 11), the declaratory judgment claim seeks a broader declaration of rights than will be resolved by the breach of contract claim. Indeed, declaratory relief in this instance would clarify the parties' legal obligations to one another and offer relief from uncertainty because it would determine AIG's liability for future costs arising from the settlement of the Tillage Action and clearly define the applicability of the Policy to future litigation involving similar conduct. *See, e.g.*, *Kings Infiniti Inc. v. Zurich Am. Ins. Co.*, 990 N.Y.S.2d 437 (Sup. Ct. 2014) (holding that a declaratory judgment claim regarding the operative exclusion in an insurance policy was not duplicative of a claim for breach of the policy); *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 123 (S.D.N.Y. 2016) (holding that a declaratory judgment claim was not duplicative of a breach of contract claim where the two causes of action sought distinct relief). Accordingly, AIG's motion to dismiss SS&C's claim for declaratory judgment should be denied.

## CONCLUSION

For all the reasons above, the Court should deny AIG's motion to dismiss.

Dated: New York, New York
       October 11, 2019

                                        MCKOOL SMITH, P.C.

                                        By: */s/ Robin L. Cohen*
                                        Robin L. Cohen
                                        (rcohen@mckoolsmith.com)
                                        James H. Smith
                                        (jsmith@mckoolsmith.com)
                                        One Bryant Park, 47th Floor
                                        New York, NY 10036
                                        Telephone: (212) 402-9400
                                        Facsimile: (212) 402-9444

                                        *Attorneys for Plaintiff SS&C Technology
                                        Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matter:


*/s/ James H. Smith*
James H. Smith