**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SS&C Technology Holdings, Inc., <br><br> *Plaintiff*, <br><br> -against- <br><br> AIG Specialty Insurance Company, <br><br> *Defendant*. | Civil Action No. 19-cv-07859-JSR |

---

**REPLY IN SUPPORT OF DEFENDANT AIG SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

**GORDON REES SCULLY MANSUKHANI, LLP**
*Attorneys for Defendant AIG Specialty Insurance Company*
95 Glastonbury Boulevard, Suite 206
Glastonbury, Connecticut 06033
Phone: (860) 494-7503
Fax: (860) 560-0185

Of Counsel and on the Brief:
  Dennis O. Brown, Esq.
  Greil Roberts, Esq.
  Regen O'Malley, Esq.

**TABLE OF CONTENTS**

|      |                                                                                                                                                 | Page |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INDEMNITY COVERAGE IS BARRED BY EXCLUSION 3(a) ................................................................................................ | 2    |
| II.  | SS&C'S BAD FAITH CLAIM NECESSARILY FAILS GIVEN THE ABSENCE OF ANY BREACH OF THE POLICY ........................................................... | 9    |
| III. | SS&C'S CLAIM FOR DECLARATORY RELIEF IS DUPLICATIVE, AND SS&C CANNOT SEEK RELIEF AS TO SPECULATIVE "FUTURE LITIGATION" ............. | 10   |
| CONCLUSION ........................................................................................................................................... | | 10 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Acquista v. New York Life Ins. Co.*,
 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dept. 2001) ................................................................ 10

*AT&T v. Clarendon*,
 No. 04C-11-167-JRJ, 2008 Del. Super. LEXIS 220 (Feb. 11, 2008) ........................................ 7

*Beazley Ins. Co. Inc. v. Ace American Ins. Co. et al.*,
 No. 16-2812 (2d Cir. 2018) ....................................................................................................... 2

*Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*,
 791 A.2d 489 (Conn. 2002) ............................................................................................. 4, 8, 9

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*,
 67 A.3d 961 (Conn. 2013) ....................................................................................................... 10

*Connecticut Medical Ins. Co. v. Kulikowski*,
 286 Conn. 1 (2008) ................................................................................................................... 5

*Gen. Ins. Co. of Am. v. Okeke*,
 182 Conn. App. 83, 189 A.3d 158 (2018) ................................................................................. 2

*Granada Insurance Company v. Ricks*,
 12 So.3d 276 (3rd District, Fla Ct of Appeal, May 20, 2009) ................................................... 6

*H&H Envtl. Sys. v. Evanston Ins. Co.*,
 Docket No. 6:18-CV-06315 EAW, 2019 U.S. Dist. LEXIS 39700 (W.D.N.Y.
 Mar. 12, 2019) ........................................................................................................................ 10

*Int'l Cards Co. v. Mastercard Int'l Inc.*,
 2017 U.S. Dist. LEXIS 43789 (S.D.N.Y. Mar. 24, 2017) ......................................................... 5

*Kronholm v. Kronholm*,
 16 Conn. App. 124, 547 A.2d 61 (1988) ................................................................................... 5

*Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*,
 311 Conn. 29 (2014) ................................................................................................................. 9

*Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*,
 277 F.3d 232 (2d Cir. 2002) ...................................................................................................... 9

*Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*,
 88 N.Y.2d 347 (1996) ........................................................................................................... 2, 3

*Nationwide Mut. Ins. Co. v. Pasiak*,
   327 Conn. 225 (2017) ............................................................................................................. 3

*Okwedy v. City of N.Y.*,
   195 F. App'x 7 (2d Cir. 2006) ................................................................................................ 6

*Pepsico, Inc. v. Continental Casualty Co.*,
   640 F. Supp. 656 (S.D.N.Y. 1986) ..................................................................................... 7, 8

*Raymond Corp. v. National Union Fire Ins. Co.*,
   5 NY3d 157 (2005) ................................................................................................................ 4

*Readco, Inc. v. Marine Midland Bank*,
   81 F.3d 295 (2d Cir. 1996) ................................................................................................. 5, 9

*Scholastic, Inc. v. Harris*,
   259 F.3d 73 (2d Cir. 2001) .................................................................................................... 9

*Soni v. Pryor*,
   32 N.Y.S.3d 236 (2d Dept. 2016) .......................................................................................... 7

*Trainum v. Rockwell Collins, Inc.*,
   Docket No. 16-cv-7005 (JSR), 2017 U.S. Dist. LEXIS 83260 (S.D.N.Y. May 30, 2017) ...... 10

*Tucker v. Am. Int'l Grp., Inc.*,
   No. 3:09 - CV - 1499 (CSH), 2015 U.S. Dist. LEXIS 9874 (D. Conn. Jan. 28, 2015) ............ 10

*Valls v. Allstate Ins. Co.*,
   919 F.3d 739 (2d Cir. 2019) ................................................................................................. 10

*White v. Cont'l Cas. Co.*,
   9 N.Y.3d 264 (2017) .............................................................................................................. 5

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) .................................................................................................. 8

Words matter.  SS&C Technologies Holdings, Inc. ("SS&C) bases its opposition to dismissal on cases interpreting substantively dissimilar exclusions that do not share the words contained in AIG Specialty Insurance Company's ("AIG Specialty") policy.  These arguments ignore the actual language of the policy at issue here and even the judicial admissions in SS&C's own Complaint.  Under the clear and unambiguous language of AIG Specialty's policy, indemnity coverage (the only coverage at issue in SS&C's Complaint) is excluded for claims "alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law[.]"  While the policy does provide coverage for defense costs in connection with such claims, which SS&C received and cannot in good faith allege have not been paid, there is no requirement in the policy that the alleged conduct be perpetrated by the policyholder or that a final adjudication take place as to SS&C's culpability.

In a desperate effort to evade the clear and unambiguous terms of its policy, and in an attempt to obtain more than the many millions of dollars already covered by AIG Specialty to defend the underlying claim, SS&C hangs its hat on documents outside of the four corners of its complaint and the insurance policy at issue here.  Specifically, SS&C points to purported conclusions reached by a claims analyst in a 2016 letter.  This evidence is patently extrinsic and inadmissible and is, therefore, inappropriate for the court to consider in connection with this motion.  Moreover, the purported conclusions on which SS&C relies are not only absent from the letter, in fact, those alleged conclusions are actually directly contradicted by the contents of the letter.  In any case, such statements would be irrelevant and inadmissible parol evidence.  Regardless, AIG Specialty's position now remains the same as before:  there is no indemnity coverage.  SS&C's transparent attempt to confuse the issues should be ignored and AIG Specialty's Motion to Dismiss should be granted.

## I. INDEMNITY COVERAGE IS BARRED BY EXCLUSION 3(a)

AIG Specialty issued Specialty Risk Protector policy number 01-274-16-88 to SS&C effective April 30, 2015 to April 30, 2016 (the "Policy"). (Dkt. 1-1, Ex. A to Pl.'s Compl.) The Policy has multiple coverage sections,[1] but the underlying claim implicates the Special Professional Liability Insurance coverage part, which contains an Errors and Omissions Insuring Agreement. (Compl. at ¶¶ 13; 15, Dkt. 1-1 at p. 66/124.) Exclusion 3(a) of the Special Professional Liability section excludes coverage for losses in connection with claims:

> alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law; provided, however, [AIG Specialty] will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit**, adverse finding of fact against an **Insured** in a binding arbitration proceeding or plea of guilty or no contest by an **Insured** as to such conduct, at which time the **Insureds** shall reimburse [AIG Specialty] for **Defense Costs**.

(*See* Dkt. 1-1, p. 68/124.) Here, it is undisputed that the crux of the underlying action is the alleged theft of funds as the result of fraudulent wire transfer scheme. (*See, e.g.*, Compl. at ¶¶ 3; 20; 21.) If no cause of action would exist but for the excluded conduct, the claim is based on the excluded conduct and the exclusions applies. *Beazley Ins. Co. Inc. v. Ace American Ins. Co. et al.*, No. 16-2812 (2d Cir. 2018) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 350 (1996). *See Gen. Ins. Co. of Am. v. Okeke*, 182 Conn. App. 83, 101-02, 189 A.3d 158, 170 (2018) (*per curiam*). The underlying claim against SS&C alleges, arises out of, is based upon or attributable to *dishonest, fraudulent, criminal or malicious act, error or omission, or an intentional*

---

[1] *See* Dkt. 1-1, Corporate Counsel Premier Insurance (p. 21/124); Cyber Extortion Insurance (p. 34/124); Event Management Insurance (p. 37/124); Media Content Insurance (p. 42/124); Network Interruption Insurance (p. 50/124); Security and Privacy Liability Insurance (p. 56/124); Special Professional Liability Insurance (p. 65/124); CrisisFund Insurance (p. 71/124); Bankers Professional Liability Insurance (p. 74/124).

*or knowing violation of the law*.² SS&C fully acknowledges the "but for" nature of the underlying claims, "[t]he Tillage Action was premised around the dishonest, fraudulent, or criminal act committed by a 'third-party fraudster[.]'" (Pl.'s Opp'n to Def's Mot. to Dismiss ("Opp.") at 8.) To avoid the actual wording of the exclusion, SS&C attempts to interpret it as if it included language that does not appear in Exclusion 3(a) (but that does appear in other provisions of the policy) that would require the conduct at issue to be by SS&C in order to preclude coverage. (Opp. at 7-11.) There is, of course, no such language in the actual terms of the operative exclusion. For the purposes of indemnity coverage, the plain language of the exclusion does not require that the alleged fraudulent conduct be perpetrated by the Insured. This is in contrast to other conduct exclusions in other separate coverage sections of the very same Policy, such as the Cyber Extortion coverage section, which explicitly and unequivocally *do* require conduct by the insured:

> The **Insurer** shall not be liable to make any payment for **Loss:**
> (a) alleging, arising out of, based upon or attributable to any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, <u>if committed by any of the **lnsured's:**</u>
>    (1) past or present directors, officers, trustees, general or managing partners or principals (or the equivalent positions), whether acting alone or in collusion with other persons; or
>    (2) past or present employees (other than those referenced in Sub-paragraph (1) above) or independent contractors employed by the **Insured** if any of those referenced in Sub-paragraph (1) above participated in, approved of, or knew or had reason to know prior to the act of, or acquiesced to the dishonest, fraudulent, malicious, or criminal act committed by such employee or independent contractor that caused a direct loss to an **Insured** or any other person.

---

² Both Connecticut and New York construe the term "arising out of" broadly in the context of an insurance policy exclusion. *See Nationwide Mut. Ins. Co. v. Pasiak*, 327 Conn. 225, 244-45 (2017); *Mount Vernon.*, 88 N.Y.2d at 351. AIG Specialty cited to a number of cases in its Motion to point out the broad interpretation by courts of the phrase "arising out of." SS&C tries distinguish these authorities by pointing out that those cases do not address conduct exclusions. (Opp. at 9-10.) This argument is a straw man, which does nothing to blunt the holding of those cases regarding the meaning of the phrase "arising out of" when it appears in an insurance contract.

3

(Dkt. 1-1, Cyber Extortion Insurance (p. 35/124); Event Management Insurance (p. 39/124); Network interruption insurance (p. 52/124); Security and Privacy Liability Insurance (p. 60/124)[3]; and CrisisFund Insurance (p. 72/124)). To ignore this difference in language between the two types of exclusionary clauses would render express language in the Policy superfluous and be contrary to the relevant case law. "[E]ach and every sentence, clause, and word of a contract of insurance should be given operative effect. Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction. . . ." *Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489 (Conn. 2002) (internal marks omitted). Likewise, in New York, the policy should be construed as a whole and in a way that affords a fair meaning to all language employed by the parties "and leaves no provision without force or effect." *Raymond Corp. v. National Union Fire Ins. Co.,* 5 NY3d 157, 162 (2005).

Looking at the coverage provided in the relevant Special Professional Liability Insurance coverage part, it should not be a surprise that Exclusion 3(a) does not require the insured to have engaged in the operative conduct. In fact, other Policy provisions are consistent, and confirm that the Policy does not cover funds lost to theft or fraud. Specifically, Exclusion INV(a) of Endorsement #5 excludes coverage for "the monetary value of any funds lost" even if a theft by another party is made possible by SS&C's negligent control of client accounts or funds. (Dkt. 1-1, p. 89/124.)

SS&C asserts that Exclusion 3(a) fails to bar indemnity coverage because it applies only where there is "a final factual adjudication establishing fraudulent conduct," rather than a

---

[3] The exclusion in the Security and Privacy coverage part contains substantively similar language, but allows that the conduct can be committed by either an Insured's or an "Information Holder's" directors, officers, employees etc. (Dkt. 1-1, p. 60/124).

4

"settlement of the Tillage Action" as occurred here. (Compl. at ¶ 27(A); Opp. at 7; 13.) This again misreads the plain language of the exclusion. The "final adjudication" language has no effect with respect to *indemnity* coverage. Instead, it pertains only to AIG's *defense* of the Complaint (provided under an exception to the general exclusion), and SS&C's potential duty to repay those defense costs: "[AIG] will defend **Suits** that allege any of the foregoing conduct, and that are not otherwise excluded, until there is a final judgment or final adjudication against an **Insured** in a **Suit** . . . ." In keeping with this, AIG Specialty funded the entirety of the defense of the underlying action. (Compl. at ¶ 4; 25.)

Since the words of the exclusion are express and unambiguous, SS&C attempts to muddy the waters with irrelevant and inaccurate assertions. SS&C argues that AIG Specialty *itself* subsequently interpreted the exclusion in the same manner that SS&C now urges. (Opp. at 11.) This argument is improper on its face. Parol evidence is not admissible to create an ambiguity where none exists. *See Kronholm v. Kronholm*, 16 Conn. App. 124, 131, 547 A.2d 61, 65 (1988); *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 300 (2d Cir. 1996). Thus, the Court should not even consider the coverage correspondence.

Furthermore, even if the Court could consider the coverage correspondence, the opinion of a claim analyst is completely irrelevant to the interpretation of an insurance contract. Insurance coverage is a question of law. *Connecticut Medical Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008); *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2017). Opinions, whether set forth in correspondence or testimony, do not determine the meaning of an insurance contract. *See Int'l Cards Co. v. Mastercard Int'l Inc.,* 2017 U.S. Dist. LEXIS 43789, at *12 (S.D.N.Y. Mar. 24, 2017), *citing*

5

*Okwedy v. City of N.Y.*, 195 F. App'x 7, 9 (2d Cir. 2006).[4] Discovery will not change the words of the insurance contract.

Assuming *arguendo* that parol evidence and opinion testimony by a party were admissible on a question of law, SS&C's assertions about the conclusions in the correspondence are inaccurate. The coverage letter states clearly that there is no "indemnity coverage for the amounts at issue." It explains this conclusion, in part, by noting that exclusion 3(a) "operate[s] to exclude coverage for the relief Plaintiff seeks." (Dkt. 25-1, Ex. A to Smith Decl. at p. 5 of 8).

Tellingly, SS&C's Complaint *admits* that the September 28, 2016 correspondence expressly relied on Exclusion 3(a), among others, in concluding that there was no indemnity coverage. (Compl. at ¶ 25; Dkt. 25-1, Ex. A to the Declaration of James H. Smith ("Smith Decl.")).[5] However, in its opposition, SS&C contradicts itself by asserting that:

> [I]n its September 28, 2016 Denial Letter, AIG does not even raise the possibility that the Fraud Exclusion precluded coverage due to the third party's actions. Rather, AIG noted that the Fraud Exclusion was relevant *only* insofar as Tillage alleged that an SS&C employee, Tom Martocci, "worked with the fraudster," and even then, only if there was "a final adjudication of this fact." (Ex. A, at 4.)

(Opp. at 11.) This rendition of the coverage letter is not accurate, given that the coverage letter clearly states there is no "indemnity coverage for the amounts at issue."

Just as importantly, AIG Specialty expressly reserved all its rights under the policy and expressly advised: "This letter is not, and should not be construed as, a waiver of any terms,

---

[4] As succinctly explained by a Florida court, "the meaning of an insurance contract is a question of law, and [is] thus not subject to opinion testimony." *Granada Ins. Co. v. Ricks*, 12 So.3d 276, n.1 (Fla. Dist. Ct. App., May 20, 2009).

[5] Even SS&C's use of defined terms has a misleading element; it refers to the coverage letter as the "Denial Letter" even though the letter confirmed there was coverage for defense costs which proved substantial. "Please know that although there exists no indemnity coverage for this matter, AIG Claims, Inc. is pleased to offer the Insured defense coverage subject to the below analysis." (Dkt. 25-1, Ex. A to the Smith Decl. at p. 2 of 8).

conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by AIG Specialty or any of its affiliates." (Dkt. 25-1, Ex. A to Smith Decl. at p. 7 of 8).

SS&C contends that "AIG's interpretation is contrary to how courts have interpreted fraud exclusions with similar final adjudication requirements." (Opp. at 12.) However, it cites no case law on point. SS&C's reliance on *Soni v. Pryor* and *AT&T v. Clarendon* is wholly misplaced. Those cases interpreted insurance policies with language that was crucially different from the language in the case at bar. Specifically, the policies contained a provision, absent here, requiring a final adjudication to preclude "indemnity" coverage.

In *Soni v. Pryor*, the relevant exclusion precluded coverage "for loss in connection with any Claim made against any Insured . . . (a) arising out of, based upon or attributable to the committing of any criminal, fraudulent or dishonest act *if any final adjudication establishes that such criminal, fraudulent or dishonest act occurred*." 32 N.Y.S.3d 236, 238 (2d Dept. 2016) (emphasis in original). Similarly, in *AT&T v. Clarendon*, the insurer was not obligated to pay any claim "brought about or contributed to in fact by any deliberate dishonest, fraudulent or criminal act or omission, or any personal profit or advantage gained by any of the Directors and Officers to which they were not legally entitled *and providing any such finding is material to the cause of action so adjudicated.*" No. 04C-11-167-JRJ, 2008 Del. Super. LEXIS 220, at *5 (Feb. 11, 2008) (emphasis in original). These cases are not helpful to SS&C, as the policy language therein differs substantively from the policy wording here.

In further support of the same argument, SS&C relies heavily on *Pepsico, Inc. v. Continental Casualty Co.,* 640 F. Supp. 656, 657 (S.D.N.Y. 1986). SS&C notes that the policy in *Pepsico* covered "the costs of defending the directors and officers against alleged dishonesty 'unless a judgment or other final adjudication thereof adverse to the directors and officers shall

7

establish that acts of active and deliberate dishonesty committed by the Directors and Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated.'" (Opp. at 12.) SS&C argues that "[p]ursuant to this language, the court found that the insurer 'agreed to pay all costs for defending *and settling claims* for actual and alleged Wrongful Acts'" and that "[t]he exclusion for 'dishonesty' attaches *only after* a 'final judgment or other final adjudication' implicates the directors." (Opp. at 12.) SS&C ignores, however, that the policy excluded coverage for any payments "brought about or contributed to by the dishonesty *of the Directors or Officers*." *Pepsico,* 640 F. Supp. at 659 (emphasis added). Such exclusionary language is analogous to the other coverage sections of the AIG Specialty policy where the conduct is tied to specific individuals. Thus, the *Pepsico* reasoning is inapplicable, because the plain language of SS&C's policy *does not* require final adjudication to preclude indemnity coverage; final adjudication is only necessary to preclude defense costs.

To evade the motion to dismiss, SS&C now attempts to amend its pleading to allege ambiguity in the language of the exclusion.[6] But since no ambiguity exists, SS&C seeks to manufacture one. The law does not support SS&C's attempt to ignore the actual wording of its insurance policy. Under Connecticut law, "courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Buell Indus. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 501 (Conn. 2002) (citation omitted). Further, a "court will not torture words to import ambiguity, where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Id.* (citation omitted). "The fact that the parties advocate

---

[6] Notably, SS&C's Complaint contains no allegations of ambiguity. Such allegation in its Opposition cannot save its Complaint, as a party is not entitled to amend its complaint by way of motion papers. *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998).

8

different meanings of the exclusion clause does not necessitate a conclusion that the language is ambiguous." *Id.* (citation omitted). New York law is the same. "[N]o ambiguity exists where the alternative construction would be unreasonable." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir. 1996). Further, "if contractual terms have a definite and precise meaning and are not reasonably susceptible to differing interpretations, they are not ambiguous." *Scholastic, Inc. v. Harris,* 259 F.3d 73, 82 (2d Cir. 2001) (citation omitted.).

SS&C also argues that AIG's position is "at odds with the intent of the parties." (Opp. at 10.) SS&C pretends to find the "intent of the parties" in the coverage letter. As discussed above, SS&C has ignored significant portions of that letter to argue for an ambiguity where none exists. (Dkt. 25-1, Ex. A to Smith Decl. at p. 5 of 8) (noting, in part, that exclusion 3 "operate[s] to exclude coverage[.]") In reality, as a matter of law the parties' intent is captured in the Policy. Where terms are clear and unambiguous, the Court is to look to the contract to ascertain the parties' intent, and the language must be "accorded its natural and ordinary meaning." *Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*, 311 Conn. 29, 37-38 (2014). New York law is no different. *See Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) ("The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract.") (internal quotation marks omitted).

There is no question that loss at issue "arose out of" dishonest, fraudulent and/or criminal conduct. Accordingly, based on the plain and unambiguous language of Exclusion 3(a) and SS&C's own admissions, AIG Specialty has no duty to indemnify SS&C as a matter of law and, as a result, SS&C has failed to state a claim upon which relief can be granted.

## II. SS&C'S BAD FAITH CLAIM NECESSARILY FAILS GIVEN THE ABSENCE OF ANY BREACH OF THE POLICY

SS&C's bad faith claim fails as a matter of law, because indemnity coverage is plainly

excluded by Exclusion 3(a). *Valls v. Allstate Ins. Co.,* 919 F.3d 739, 745 (2d Cir. 2019) (affirming entry of judgment as to bad faith claim as insurer did not breach policy); *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09 - CV - 1499 (CSH), 2015 U.S. Dist. LEXIS 9874, at *71 (D. Conn. Jan. 28, 2015), *following Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 987 (Conn. 2013); *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 78, 730 N.Y.S.2d 272 (1st Dept. 2001).

### III. SS&C'S CLAIM FOR DECLARATORY RELIEF IS DUPLICATIVE, AND SS&C CANNOT SEEK RELIEF AS TO SPECULATIVE "FUTURE LITIGATION"

This Court routinely dismisses duplicative declaratory judgment claims. *See H&H Envtl. Sys. v. Evanston Ins. Co.*, Docket No. 6:18-CV-06315 EAW, 2019 U.S. Dist. LEXIS 39700, at *11-15 (W.D.N.Y. Mar. 12, 2019); *Trainum v. Rockwell Collins, Inc.,* Docket No. 16-cv-7005 (JSR), 2017 U.S. Dist. LEXIS 83260, at *67-69 (S.D.N.Y. May 30, 2017) (citations omitted).

Although SS&C seeks adjudication of the singular issue that "there is coverage available for SS&C's claim under the Policy," and seeks relief that is subsumed by the relief sought for Coutn One's breach of contract – that AIG Specialty is "obligated to pay SS&C, up to the applicable limits of the Policy, for the Claim" – it attempts to argue that this count is not duplicative. (Opp. at 15.) Yet, SS&C's complaint fails to cite any pending litigation and there is but one claim at issue therein. Because Count Two is duplicative of Count One, it should be dismissed.

### CONCLUSION

Even accepting all well-pleaded facts as true, the Complaint fails to state a claim upon which relief may be granted as a matter of law. AIG Specialty respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

10

Dated: Glastonbury, CT
October 18, 2019

Respectfully submitted,

**ATTORNEYS FOR DEFENDANT, AIG SPECIALTY INSURANCE COMPANY**

By */s/ Dennis O. Brown*
Dennis O. Brown
Email: dbrown@grsm.com
Regen O'Malley
Email: romalley@grsm.com
Greil I. Roberts
Email: groberts@grsm.com
Attorneys for Defendant
(admitted *pro hac vice*)
95 Glastonbury Boulevard, Suite 206
Glastonbury, CT 06033
p: (860) 494-7503
f: (860) 560-0185

By: */s/ JoAnna M. Doherty*
JoAnna M. Doherty, Esq.
Gordon Rees Scully Mansukhani LLP
1 Battery Park Plaza, 28th Floor
New York, New York 10004
Email: jmdoherty@grsm.com

## **CERTIFICATE OF SERVICE**

The foregoing document was filed electronically on this, the 18th day of October, 2019, in accordance with the Court's ECF system. Notice of this filing will be sent to all parties by operation of the Court's ECF system.

By: */s/ Dennis O. Brown*
Dennis O. Brown