USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x
SS&C TECHNOLOGY HOLDINGS, INC.,          :
                                         :
            Plaintiff,                   :        19-cv-7859 (JSR)
                                         :
            -v-                          :
                                         :        MEMORANDUM ORDER
AIG SPECIALTY INSURANCE CÓMPANY,         :
                                         :
            Defendant.                   :
-------------------------------------- x

JED S. RAKOFF, U.S.D.J.

Plaintiff SS&C Technologies Holdings, Inc. ("SS&C") brought
the instant action against defendant AIG Specialty Insurance
Company ("AIG"), alleging that AIG unjustifiably refused to
provide coverage under the insurance policy that SS&C had
purchased. Complaint, ECF No. 1 ("Complaint"). AIG has now moved
to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). ECF No.
22. For the reasons set forth below, the Court grants AIG's
motion to dismiss Count Two (as defined below) but denies the
motion in all other respects.

## Background

The following allegations are taken from the complaint and
are assumed true for the purposes of assessing the motion to
dismiss the complaint.

SS&C, a Delaware corporation with its principal place of
business in Windsor, Connecticut, is a global provider of
software and software-enabled services to thousands of clients,

including Tillage Commodities Fund, L.P. ("Tillage"). Complaint
¶ 2. In the course of its business, SS&C carries insurance to
protect losses resulting from claims against SS&C due to its
negligence, errors, or omissions relating to the performance of
its professional services. Id. ¶¶ 2, 11. The insurance policy at
issue, the Risk Protector Policy No. 01-274-16-88 (the
"Policy"), was purchased from AIG, an insurance company
organized under the laws of the State of Illinois with its
principal place of business in New York, New York. Id. ¶ 2.

In March 2016, unknown third parties using stolen
credentials sent transfer requests via e-mail to SS&C, falsely
claiming to be acting on behalf of Tillage. Id. ¶¶ 3, 19. SS&C
believed these requests to be from Tillage and processed those
requests. Id. ¶ 3. As a result, over the course of three weeks,
SS&C transferred over $5.9 million from Tillage's accounts to
certain bank accounts in Hong Kong, as requested by the
fraudsters. Id. ¶¶ 3, 20. Once SS&C discovered the scheme, it
alerted Hong Kong authorities and cooperated with Tillage and
relevant authorities to try to recover stolen funds. Id. ¶ 21.

On September 16, 2016, Tillage filed suit against SS&C in
New York Supreme Court, alleging that SS&C was grossly negligent
in handling Tillage's funds, breached its services contracts,
breached the implied covenant of good faith and fair dealing,

2

and violated certain provisions of the New York General Business
Law regarding deceptive trade practices. See Tillage Commodities
Fund, L.P. v. SS&C Technologies, Inc., No. 654765/2016 (Sup.
Ct., N.Y. Cnty.) (the "Tillage Action"). Subsequently, SS&C's
motion to dismiss the New York General Business Law claims was
granted, and its motion to dismiss the breach of contract claims
was denied. See id. Later, SS&C's motion for summary judgment
was denied. See id. Two weeks prior to the trial, the Tillage
Action was settled without any admission of liability or
wrongdoing by either party. See id.

On March 28, 2016, four days after the fraudulent scheme
was uncovered, SS&C timely notified AIG of the incident and
indicated that the incident might give rise to a covered loss
under the Policy (the "Claim"). Complaint ¶ 24.[1] By letter dated

---

[1] Specifically, the relevant provisions of the Policy state: "The
Insurer shall pay on an Insured's behalf all Loss in excess of
the applicable Retention that such Insured is legally obligated
to pay resulting from a Claim alleging a Wrongful Act." Policy,
ECF No. 1-1 ("Policy"), at 66 (Specialty Professional Liability
Insurance section). "Loss" is defined as "compensatory damages,
judgments, settlements, pre-judgment and post-judgment interests
and Defense Costs, including punitive exemplary and multiple
damages where insurable by the applicable law which most favors
coverage for such punitive, exemplary and multiple damages."
Policy 67. "Claim" is defined to include a "Suit," which is
defined as "a civil proceeding for monetary, non-monetary, or
injunctive relief, which is commenced by service of a complaint
or similar pleading." Id. "Wrongful Act" is defined as "any
negligent act, error or omissions, misstatement or misleading

3

September 28, 2016, AIG acknowledged that the Tillage Action fell within the Specialty Professional Liability Insurance provisions and agreed to cover SS&C's defense costs related to the Tillage Action. Id. ¶¶ 25-27. However, in the same letter, AIG denied indemnity coverage for any settlement relating to the Tillage Action, asserting that the allegations by Tillage implicated a number of coverage exclusions (the "September 2016 Letter"). Id. Throughout the pendency of the Tillage Action, AIG continued refusing to provide coverage for any settlement, based on the same exclusion provisions it cited in the September 2016 Letter. Id. ¶¶ 28-29.

On May 21, 2019, pursuant to the terms of the Policy, SS&C and AIG tried mediating their dispute, but the mediation did not succeed. Id. ¶ 31.

On August 21, 2019, SS&C brought the instant three-count action against AIG, making claims for (1) breach of contract ("Count One"), (2) declaratory judgment that there is coverage available for SS&C's Claim under the Policy ("Count Two"), and (3) breach of the implied covenant of good faith and fair dealing ("Count Three"). Complaint ¶¶ 32-54. AIG has now moved

---

statement in an Insured's performance of Professional Services for others occurring on or after the Retroactive Date and prior to the end of the Policy Period." Id. at 68.

4

to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). ECF No.
22.

## Analysis

In order to survive a motion to dismiss, plaintiff must
"state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2] "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. When
adjudicating a motion to dismiss, the Court "accept[s] all
factual allegations in the complaint and draw[s] all reasonable
inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v.
Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Under applicable Connecticut law,[3] an insurance policy "is
to be interpreted by the same general rules that govern the

---

[2] Unless otherwise indicated, in quoting cases all internal
quotation marks, alterations, emphases, footnotes, and citations
are omitted.

[3] The Court finds that Connecticut law governs the Policy at
issue. A federal court adjudicating a state law claim must apply
the choice of law rules of the forum state, in this case New
York. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,
496-97 (1941). New York courts apply a "center of gravity"
approach in choosing which state's law to apply in adjudicating
a contract claim. Lazard Freres & Co. v. Protective Life Ins.
Co., 108 F.3d 1531, 1539 (2d Cir. 1997). Under this approach,
specifically in matters of insurance coverage, "New York courts

construction of any written contract." Connecticut Med. Ins. Co.

v. Kulikowski, 942 A.2d 334, 338 (Conn. 2008). In accordance

with those principles, "[t]he determinative question is the

intent of the parties, that is, what coverage the . . .

[insured] expected to receive and what the [insurer] was to

provide, as disclosed by the provisions of the policy."

Schilberg Integrated Metals Corp. v. Continental Cas. Co., 819

A.2d 773, 789 (Conn. 2003).

## I.   Whether Settlement Coverage Is Barred by Exclusion 3(a) (Counts One and Two)

Exclusion 3(a) excludes coverage for losses in connection

with claims:

> alleging, arising out of, based upon or attributable
> to a dishonest, fraudulent, criminal or malicious act,
> error or omission, or any intentional or knowing
> violation of the law; provided, however, [AIG] will
> defend Suits that allege any of the foregoing conduct,
> and that are not otherwise excluded, until there is a
> final judgment or final adjudication against an
> Insured in a Suit, adverse finding of fact against an

have looked principally to the following factors: the location
of the insured risk; the insured's principal place of business;
where the policy was issued and delivered; the location of the
broker or agent placing the policy; where the premiums were
paid; and the insurer's place of business." Olin Corp. v. Ins.
Co. of N.A., 743 F. Supp. 1044, 1049 (S.D.N.Y. 1990). Based on
these factors, although the principal place of business of AIG
is New York, see Complaint ¶ 7, the Court finds that Connecticut
law governs the Policy: the Policy was issued and delivered in
Connecticut, see Policy 8; the location of the broker placing
the policy was in Connecticut, see Policy 123; and SS&C's
principal place of business and the location of the insured risk
are in Connecticut, see Complaint ¶ 7.

> Insured in a binding arbitration proceeding or plea of
> guilty or no contest by an Insured as to such conduct,
> at which time the Insureds shall reimburse [AIG] for
> Defense Costs.

Policy 68 (Specialty Professional Liability Insurance section).

AIG argues that plain reading of the first clause before
the "provided, however" clause dictates that Exclusion 3(a)
applies not only to "dishonest, fraudulent, criminal or
malicious act, error or omission, or any intentional or knowing
violation of the law" committed by SS&C, but also broadly to
such acts committed by third-party fraudsters, such as here.
Memorandum of Law in Support of Defendant AIG Specialty
Insurance Company's Motion to Dismiss Plaintiff's Complaint
Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 23-1 ("AIG Mem."),
at 6. Therefore, AIG argues, Counts One and Two must be
dismissed.

But even though reading the first clause in isolation might
support AIG's interpretation, this interpretation falters when
the sentence is read in its entirety. For coupling the first
clause with the "provided, however" clause of the same sentence
clearly indicates that Exclusion 3(a) applies only to dishonest,
fraudulent, criminal, or malicious acts committed by SS&C, and
not to these such acts committed by third-party fraudsters. This
is because the "provided, however" clause, which modifies the

first clause, refers specifically to "Suits that allege any of
the foregoing conduct" against SS&C. This reading also comports
with what the parties most likely intended when they entered
into the Policy. Indeed, the very rationale of such exclusionary
provisions is that "a tortfeasor may not protect himself from
liability by seeking indemnity from his insurer for damages,
punitive in nature, that were imposed on him for his own
intentional or reckless wrongdoing." Bodner v. United Servs.
Auto. Ass'n, 610 A.2d 1212, 1221 (Conn. 1992).

At the very least, ambiguity exists, and, under applicable
Connecticut law, the court must "construe the terms of an
insurance policy in favor of insurance coverage." Kelly v.
Figueiredo, 610 A.2d 1296, 1299 (Conn. 1992); see also Liberty
Mut. Ins. Co. v. Lone Star Indus., Inc., 967 A.2d 1, 21-22
(Conn. 2009).

In response, AIG points out that other coverage sections in
the Policy, such as the Cyber Extortion Coverage section,
contain almost identical language with respect to the first
clause and the qualifier "if committed by any of the Insured's
[directors, officers, etc.],"[4] whereas Exclusion 3(a) here does

---

[4] Specifically, the Cyber Extortion Coverage section states: "The
Insurer shall not be liable to make any payment for Loss: (a)
alleging, arising out of, based upon or attributable to any

8

not contain any such qualifier. But it was just to avoid such an argument that the Policy explicitly states: "The terms and conditions set forth in each Coverage Section shall only apply to that particular Coverage Section and shall in no way be construed to apply to any other Coverage Section of this policy." Policy 9.

In sum, AIG's motion to dismiss Counts One and Two based on its interpretation of Exclusion 3(a) is denied.[5]

## II.  Whether Claim for Declaratory Relief Should Be Dismissed for Being Duplicative (Count Two)

Under Count Two, SS&C seeks a declaratory judgment that "there is coverage available for SS&C's Claim under the Policy." Complaint ¶ 45. Once the actual controversy requirement is

---

dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by any of the Insured's [directors, officers, etc.]. . . ." Policy 36 (Cyber Extortion Insurance section) (emphasis added); see also id. at 40 (Event Management Insurance section); id. at 52 (Network Interruption Insurance section); id. at 61 (Security and Privacy Liability Insurance section); id. at 73-74 (Crisis Fund Insurance section) (emphasis added).

[5] As this is a sufficient ground to deny the motion in these respects, the Court does not reach the issue of whether the "provided, however" clause pertains only to AIG's defense coverage or to both AIG's defense coverage and settlement coverage.

9

satisfied under 28 U.S.C. § 2201 — as is the case here[6] — the
Court considers the following factors in deciding whether it
will exercise its discretion to entertain a request for
declaratory judgment: "(1) whether the judgment will serve a
useful purpose in clarifying or settling the legal issues
involved; and (2) whether a judgment would finalize the
controversy and offer relief from uncertainty." Duane Reade,
Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d
Cir. 2005).

The Court finds that both factors favor dismissing Count
Two. As AIG points out, the same conduct underlies causes of
action for both Counts One and Two, and Count Two is almost
entirely duplicative of Count One. AIG Mem. 11. In response,
SS&C contends that Count Two seeks a broader declaration of
rights than what would be resolved by Count One, as the
"declaratory relief would clarify the parties' legal obligations
to one another and offer relief from uncertainty" by determining
"AIG's liability for future costs arising from the settlement of
the Tillage Action and clearly define the applicability of the

_____

[6] In order to constitute an "actual controversy," the
disagreement between the parties "must have taken on fixed and
final shape so that a court can see what legal issues it is
deciding, what effect its decision will have on the adversaries,
and some useful purpose to be achieved in deciding them."
Jenkins v. United States, 386 F.3d 415, 417–18 (2d Cir. 2004).

10

Policy to future litigation involving similar conduct."
Plaintiff's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss, ECF No. 24 ("SS&C Opp."), at 15. However, the
Court disagrees with SS&C's assessment, because the settlement
expenses have already been incurred, and there does not appear
to be any pending or future litigation involving the present
issue. Therefore, the Court hereby dismisses Count Two in light
of "the better or more effective remedy" available under Count
One. Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 311,
312 (S.D.N.Y. 2010).

## III. Whether Claim for Implied Covenant of Breach of Good Faith and Fair Dealing Should Be Dismissed (Count Three)

Under applicable Connecticut law, "[t]o constitute a breach
of the implied covenant of good faith and fair dealing, the acts
by which a defendant allegedly impedes the plaintiff's right to
receive benefits that he or she reasonably expected to receive
under the contract must have been taken in bad faith." De La
Concha of Hartford, Inc. v. Aetna Life Ins. Co., 849 A.2d 382,
388 (Conn. 2004).

AIG argues that Count Three should be dismissed because it
rests on an allegedly false premise that AIG wrongfully denied
indemnity coverage in connection with the Tillage settlement,
whereas in AIG's view SS&C was not entitled to any contractual

11

rights or benefits as such to begin with. AIG Mem. 9. However, as discussed above, the so-called "false premise" is not false after all. If SS&C's allegations are true, AIG was wrong to invoke Exclusion 3(a) to deny coverage for the Tillage settlement, and AIG indeed impaired SS&C's contractual rights. If so, the fact that AIG engaged in allegedly pretextual reading of the Policy to deny coverage may qualify as an act of bad faith. In addition, AIG stated in its September 2016 Letter that "a final adjudication of the [allegation that SS&C worked with the fraudsters] could exclude . . . indemnity coverage for this matter and trigger our right to recoup,"[7] in contrast to its current position that allegations based on the conduct of the third-party fraudsters, even in the absence of any wrongdoing on SS&C's part, would exclude indemnity coverage. This alleged change in AIG's position adequately pleads that AIG has been acting in bad faith.

For these reasons, the Court denies AIG's motion to dismiss Count Three.

---

[7] SS&C attached a copy of the September 2016 Letter as an exhibit to its opposition brief to the instant motion. Because this letter was incorporated into the complaint by reference, the Court may consider the contents of this exhibit. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are . . . incorporated in it by reference are deemed part of the pleading and may be considered.").

12

## Conclusion

In sum, the Court grants AIG's motion to dismiss Count Two but denies the motion in all other respects.

The Clerk is directed to close the entry with the docket number 21.

SO ORDERED.

Dated:   New York, NY

November 5, 2019                    JED S. RAKOFF, U.S.D.J.

13