# McKool Smith

James H. Smith
Direct Dial: (212) 402-9418
jsmith@mckoolsmith.com

One Manhattan West
395 9th Ave., 50th Floor
New York, NY 10001

Telephone: (212) 402-940(
Facsimile: (212) 402-944.

December 6, 2019

*Via E-Mail*
The Honorable Jed S. Rakoff
United States District Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street Room 1340
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/9/19

Re:   *SS&C Technologies Holdings, Inc. v. AIG Specialty Insurance Company*,
      Civil Action No. 19-cv-07859-JSR

Dear Judge Rakoff:

SS&C respectfully submits this letter in response to AIG's letter dated December 5, 2019 requesting the production of three categories of documents.

**Application One: AIG's Request that SS&C Search the Email Records of Jason White**

AIG's request that SS&C search the email records of Jason White, its general counsel, is an unjustified attempt to create make-work for SS&C at an advanced stage in the case. As a preliminary matter, SS&C sent AIG a list of its proposed custodians over a month ago, on November 1, 2019. AIG sat silent on this proposal for nearly a month. Only two days before the Thanksgiving holiday did AIG propose additional ESI search terms and custodians, including its counterproposal that Mr. White be included as a custodian. For the custodians that SS&C had previously proposed, SS&C accepted AIG's new search terms wholesale. But agreeing to run a search of Mr. White's emails would only return potentially thousands of privileged documents that SS&C would be required to list on a privilege log.

This request is not aimed at furthering any legitimate discovery need of AIG. The only purpose it serves is to bog down SS&C in an already tight discovery schedule. To be clear, SS&C is not positing that all of Mr. White's documents would be protected by the attorney-client privilege. However, given his role as general counsel to SS&C and the nature of the documents requested, the overwhelming majority of them will be. To this point, AIG fails to identify any unique, non-privileged information that would be included in Mr. White's email records. AIG only asserts that Mr. White may have had "discussions with SS&C's insurance broker or [] other external entities related to the underlying matter." Neither justifies AIG's request. *First*, it's unclear what communications Mr. White would be having with external parties that concern an active litigation. *Second*, in this instance, where the company and the insurer have disputed coverage since the claim was first noticed, any discussions between SS&C and SS&C's insurance

1

broker would also be protected from discovery by the attorney-client privilege or the work product doctrine. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, 01 Civ. 9291 (JSM), 2002 U.S. Dist. LEXIS 10919, at *16 (S.D.N.Y. June 19, 2002) (documents prepared by insured or its counsel in anticipation of litigation were work product, despite being shared with insured's broker); *TC Ravenswood, LLC v. Nat'l Union Fire Ins. Co.*, 2013 WL 3199817 (N.Y. Sup. Ct. June 20, 2013) ("discussions between non-attorney employees of [the policyholder] and/or [the broker] discussing requests and advice from counsel" were privileged); *see also ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, 1998 U.S. Dist. LEXIS 8808, at *33 (S.D.N.Y. June 4, 1998) (holding that the protections of the work product doctrine apply to "to documents and tangible things prepared by or for another party or by or for the other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." (internal citations and quotations omitted)). *Third*, AIG has subpoenaed Aon, SS&C's insurance broker, seeking "[a]ll communications with SS&C concerning the Tillage Action." To the extent any non-privileged communications exist, AIG is already seeking them from Aon directly, obviating the need for SS&C to search Mr. White's email records.

AIG further asserts that SS&C's position regarding Mr. White conflicts with its prior agreement to search the email records of Paul Igoe, SS&C's prior general counsel. This argument is a red herring. SS&C agreed to run searches of Mr. Igoe's emails (over a month ago) because Mr. Igoe was present at the inception of the Tillage Action and was extensively involved in communications with AIG regarding the same. Mr. White, on the other hand, began his employment at SS&C only last year and well into the litigation of the Tillage Action. At that point in time, communications from SS&C to either Tillage or AIG went through SS&C's outside counsel at Davis Polk. Thus, virtually all communications from Mr. White to Davis Polk or others at SS&C regarding the Tillage Action would be protected by the attorney-client privilege. Accordingly, AIG's request to compel the search of Mr. White's email records should be denied.

**Application Two: AIG's Request that SS&C Produce Correspondence with Davis Polk**

AIG's request that SS&C produce all its communications with Davis Polk is vastly overbroad as well as premature. To be clear, SS&C has not made a blanket refusal to produce its communications with Davis Polk. Rather, SS&C disagrees with AIG's position that it is entitled to *all* such communications by virtue of the common interest doctrine. In essence, AIG is requesting a categorical ruling that it shares an identical legal interest with SS&C with regard to every single communications SS&C had with Davis Polk concerning the Tillage Action, despite refusing to provide indemnity coverage of the same. This cannot be the case, and the law specially cautions against such rulings. *See North River Ins. Co. v. Columbia Cas. Co.*, 90 Civ. 2518 (MJL), 1995 U.S. Dist. LEXIS 53, at *11 (S.D.N.Y. Jan. 5, 1995) ("the determination of whether the common interest doctrine applies cannot be made categorically.").[1]

Notwithstanding its deficient form, AIG's application is wrong on substance. The crux of AIG's argument is that it shares a common interest with SS&C because "[t]here was a joint and coordinated legal strategy, and AIG [] funded Davis Polk's legal fees." Not so. Under New York law, the common interest doctrine will only apply when the parties share an *identical* legal interest. *See Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471

---

[1] At the very least, AIG's request is suited to identifying specific items on a privilege log it does not believe are protected from discovery, not a wholesale request for production of communications with counsel.

(S.D.N.Y. 2003) ("The key consideration is that the nature of the [common] interest be identical, not similar, and be legal, not solely commercial.") (quoting *North River*, 1995 WL 5792, at *3). Contrary to AIG's argument, the payment of defense costs alone does not create a common interest between the insured and the insurer. *See Go Med. Indus. Pty., Ltd. v. C. R. Bard, Inc.*, MISC DOCKET NO. 3:95 MC 522 (DJS), 1998 U.S. Dist. LEXIS 22919, at *9 (D. Conn. Aug. 14, 1998) ("An insurer's contractual obligation to pay its insured's litigation expenses does not, by itself, create a common interest between the insurer and the insured that is sufficient to warrant application of the common interest rule of the attorney client privilege."); *In re Pfizer Inc. Securities Litigation*, 1993 U.S. Dist. LEXIS 18215, No. 90 Civ. 1260(SS), 1993 WL 561125 at *8 (S.D.N.Y., Dec. 23, 1993) (rejecting argument that an insured and its insurer share common interest about a legal matter and holding that disclosure by insured to insurer waived the attorney-client privilege).

Here, SS&C and AIG never shared an identical legal interest. AIG denied indemnity coverage related to the Tillage Action prior to and since its inception. This denial created a divergence of interests between SS&C and AIG, precluding the possibility that the parties shared an "identical" legal interest. *See North River*, 1995 U.S. Dist. LEXIS 53, at *11 (holding there is no common interest where "the insurer's legal interest may directly conflict with that of the insured, as on questions of coverage."); *Vt. Gas Sys. v. United States Fid. & Guar. Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993) ("where there is an adversarial relationship between an insured and insurer as to whether coverage exists, . . . a common interest, at this time, does not exist beyond the formal designations of insured and insurer."); *see also Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 418 (D. Del. 1992) (the common interest doctrine should not apply where "the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by" the insured and insurer). Because there was no identical legal interest between AIG and SS&C regarding the settlement of the Tillage Action, the common interest doctrine cannot apply.[2]

### Application Three: AIG's Request that SS&C Produce Correspondence with Other Insurers

This request seeks facially irrelevant documents: SS&C's correspondence with its other insurers regarding the language of other policies. The actions of third parties regarding separate policies not at issue in this action have nothing to do with the instant case. As this Court has ruled, when interpreting an insurance policy, "[t]he determinative question is the intent of the parties[.]" Dkt. 28 at 6 (citing *Schilberg Integrated Metals Corp. v. Continental Cas. Co.*, 819 A.2d 773, 789 (Conn. 2003)(emphasis added). What is indisputably not at issue here is the intent of non-parties regarding different contracts, which may or may not even have similar language to the policy at hand. This request should be denied. *See Bernstein v. Principal Life Ins. Co.*, 2010 WL 4922093, at *2 (S.D.N.Y. Dec. 2, 2010) (denying discovery of insured's other life insurance policies because "documents concerning other policies are immaterial" as they "would not affect the validity of the policy [at issue]").

---

[2] Moreover, the defense of the Tillage Action cannot be severed from its settlement. Whether and for what amount to settle is a central factor in the underlying defense, and one on which AIG and SS&C were never aligned. AIG concedes this point by arguing the defense of the Tillage Action "encompassed settlement efforts." Even setting aside this inherent interconnectivity, any theoretical difference in defense communications, on the one hand, and settlement communications, on the other hand, is precisely the type of hairsplitting that requires a document-by-document determination of common interest rather than a categorical ruling. *North River*, 1995 WL 5792, at *11.

3

Respectfully submitted,

/s/ *James H. Smith*